**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALEX REINIG *individually and on behalf of those similarly situated* <br> 223 Inverness Drive <br> Moon, PA 15108 <br><br> and <br><br> KEN GRITZ *individually and on behalf of those similarly situated* <br> 1913 Teal Trace <br> Pittsburgh PA 15237 <br><br> and <br><br> BOB SODA *individually and on behalf of those similarly situated* <br> 415 Fairborough Court <br> Coraopolis, PA 15108 <br><br>         Plaintiffs, <br><br>     v. <br><br> RBS CITIZENS, N.A. <br><br>        Defendant. | CIVIL ACTION COMPLAINT <br><br> CIVIL ACTION NO: <br><br><br><br> **JURY TRIAL DEMANDED** |

## INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT

Plaintiff Alex Reinig (hereinafter "Plaintiff Reinig"), Plaintiff Ken Gritz (hereinafter "Plaintiff Gritz"), Plaintiff Bob Soda (hereinafter "Plaintiff Soda"), (hereinafter collectively "Plaintiffs"), by and through their undersigned attorneys, bring this action against Defendant RBS Citizens, N.A. (hereinafter "Defendant"), individually and on behalf of themselves and all others similarly situated, for overtime compensation and other relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. In addition to their nationwide FLSA claims, Plaintiffs also

seek relief on behalf of themselves and all others similarly situated under the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. §333.101, et seq., and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Stat. § 260.1 et seq. Plaintiffs' FLSA claims are asserted as a collective action pursuant to 29 U.S.C. §216(b), and the Pennsylvania State Law Claims are asserted on a class wide basis pursuant to Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## **INTRODUCTION**

## **JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this action pursuant to the terms of the FLSA (29 U.S.C. §216(b)) and 28 U.S.C. §1331.

2.      This Court also has original jurisdiction over the State Law Claims in this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which: (1) there are 100 or more members in Plaintiffs' proposed classes; (2) at least some members of the proposed classes have different citizenship from Defendant; and (3) the claims of the proposed class members, upon information and belief, exceed $5,000,000 in the aggregate. In addition or in the alternative, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiffs' State Law Claims because those claims derive from a common nucleus of operative fact.

3.      Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. §1391 because a substantial part of the events forming the basis of this action occurred in this district and the parties have agreed to this venue.

## **PARTIES**

2

4.     Defendant is a subsidiary of the Citizens Financial Group, Inc., ("CFG") a Delaware corporation with its principal place of business/headquarters located at One Citizens Plaza, Providence, Rhode Island.

5.     Defendant operates bank branches under the name "Citizens Bank" in Pennsylvania, Rhode Island, Vermont, New Hampshire, Massachusetts, Connecticut, New York, New Jersey, and Delaware.

6.     Defendant also operates bank branches under the name "Charter One" in Illinois, Michigan, and Ohio.

7.     CCO Mortgage is a division of Defendant that services loans made by CFG's subsidiary banks in thirteen states, and has loan offices in two additional states.

8.     Defendant sells mortgage loans and other financial products in multiple states, including Pennsylvania. On information and belief, Defendant's annual sales of same has been greater than $500,000 at all relevant times.

9.     Defendant was/is at all times material hereto, an "Employer," as that term is defined in the FLSA and the PMWA, to Plaintiffs, and similarly situated Plaintiffs.

10.     Plaintiff Reinig is a former employee of Defendant as defined by 29 U.S.C. §203(e). Plaintiff Reinig was employed by Defendant as a Mortgage Loan Officer ("MLO") in Pittsburgh, PA from December 16, 2013 until on or around July 1, 2015, and worked over 40 hours per week and was not paid overtime. Plaintiff resides in Pennsylvania.

11.     Plaintiff Gritz is a former employee of Defendant as defined by 29 U.S.C. §203(e). Plaintiff Gritz was employed by Defendant as a MLO in Pittsburgh, PA from November 21, 2014

until on or around October 2, 2015, and worked over 40 hours per week and was not paid overtime. Plaintiff Gritz resides in Pennsylvania.

12.     Plaintiff Soda is a current employee of Defendant as defined by U.S.C. §203(e). Plaintiff Soda was employed by Defendant as a MLO in Pittsburgh, PA from February 1, 2014 and remains employed as of the date of this instant action. Plaintiff worked and continues to work over 40 hours per week and was/is not paid overtime. Plaintiff Soda resides in Pennsylvania.

## COLLECTIVE ACTION ALLEGATIONS

13.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

14.     Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), on behalf of all Mortgage Loan Officers ("MLOs") who were employed by Defendant nationwide within the last three years (members of this putative class are referred to as "Nationwide Collective Plaintiffs").

15.     Plaintiffs' claims are typical of the claims of Nationwide Collective Plaintiffs, because Plaintiffs, like all Nationwide Collective Plaintiffs, were employees of Defendant whom Defendant failed to pay minimum wage and overtime compensation as required by the FLSA in the last three years.

16.     Plaintiffs will fairly and adequately protect the interests of Nationwide Collective Plaintiffs, because Plaintiffs' interests are coincident with, and not antagonistic to, those of the class.  Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

4

17.     No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action.   The class will be easily identifiable from Defendant's records.

18.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records. Plaintiffs do not know the exact size of the potential class, as such information is in the exclusive control of Defendant; however, on information and belief, the number of potential class members is estimated to be in excess of 1,000 individuals.

19.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.   Among the questions of law and fact that are common to the class are whether Defendant failed to pay the Plaintiffs and putative class members minimum wage and overtime for all hours worked by: (1) unlawfully requiring significant off-the-clock work; (2) deducting overtime and wages previously paid to employees in subsequent weeks, thereby evading the requirements of the FLSA; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due.

20.     Therefore, Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. §216(b).

## CLASS ACTION ALLEGATIONS

21.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

22.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Plaintiffs bring their claims for relief on behalf of themselves and those similarly situated.

23.     Specifically, Plaintiffs seek to represent a class of all persons who worked for Defendant as Mortgage Loan Officers ("MLOs") in the last three years in Pennsylvania.

24.     The class is so numerous that the joinder of all class members is impracticable. Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendant; however, on information and belief, the number of potential class members is estimated to be in excess of 1,000 individuals.

25.     Plaintiffs' claims are typical of the claims of the putative class members, because Plaintiffs, like all putative class members, were denied overtime and minimum wage under the Pennsylvania Minimum Wage Act and were subject to unlawful deductions under the Pennsylvania Wage Payment and Collection Law.

26.     Plaintiffs will fairly and adequately protect the interests of the putative class because Plaintiffs' interests are coincident with, and not antagonistic to, those of the class. Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

27.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendant's records.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to

prosecute their common claims in a single forum simultaneously. Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendant. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendant.

29.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class are whether Defendant failed to pay Plaintiffs and the putative class minimum wage and overtime for all hours worked by: (1) unlawfully requiring significant off-the-clock work; (2) deducting overtime and wages previously paid to employees in subsequent weeks, thereby evading the requirements of the PMWA and violating the PWPCL; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due.

## FACTUAL BACKGROUND

30.     For many years, Defendant has employed MLOs to sell residential mortgage loans to customers throughout the United States through Defendant's offices and branches located in Pennsylvania, New Jersey, New York, Rhode Island, and other States in the United States of America.

31.     Prior to 2012, Defendant misclassified all of its MLOs as "exempt employees" pursuant to the overtime provisions of the FLSA and the PMWA: That is, Defendant only paid MLOs on a pure commission basis, with a monthly draw subject to recapture by Defendant, and Defendant paid no overtime to any MLOs for hours worked over 40 hours in a workweek, despite

the fact that Defendant had regular and specific knowledge that its MLO's were regularly engaged in non-exempt work and were regularly working far in excess of 40 hours per week for Defendant's benefit.

32.     On information and belief, on or around April 15, 2012, Defendant reclassified all MLOs as non-exempt employees eligible for overtime.

### Defendant's Post-Reclassification Failure to Pay Overtime

33.     Plaintiffs and all other similarly situated current and/or former MLOs frequently worked over 40 hours in a workweek while employed by Defendant without receiving overtime compensation.

34.     Plaintiffs and all other similarly situated current and/or former MLOs performed work for Defendant as MLOs and were not paid one and one-half times their appropriate regular hourly rate for hours they worked over 40 in a workweek ("overtime compensation").

35.     Defendant required Plaintiffs and all other similarly situated MLOs to attend residential open houses on the weekend to network with realtors and did not pay for such time.

36.     Defendant required Plaintiffs and all other similarly situated MLOs to engage in E-Learning modules after work hours, and did not pay for such time.

37.     From on or around February 2015 until October 2015, Defendant required Plaintiffs and all other similarly situated MLOs to engage in after-hours training on Defendant's new software system.

38.     Defendant was further aware that Plaintiffs and all other similarly situated MLOs worked with clients and customers after-work hours, and Defendant did not pay for such time.

39.     Defendant issued Plaintiffs and all other similarly situated MLOs laptops computers so Plaintiffs and all other similarly situated MLOs could work from home and other locations, with the intention that Plaintiffs and all other similarly situated MLO's work from home after hours and on weekends to process their loans towards closing.

40.     Plaintiffs and all other similarly situated MLOs were compensated by receiving a "non-refundable draw" of $24,000.00 per year to ensure a minimum wage was paid to the MLO's for 40 hours of work per workweek, i.e. an hourly rate of pay of $11.50 ("base hourly rate").

41.     Plaintiffs and all other similarly situated MLOs were paid a commission based on the loans Plaintiffs and other MLOs originate.

42.     Defendant paid this commission to Plaintiffs once per month.

43.     In paying this commission, Defendant deducted the amount of money that had already been paid in salary and overtime over the prior month ("salary and overtime deductions").

44.     Plaintiffs and all other similarly situated MLOs were told by Defendant's Managers that they could only report overtime hours if same were pre-authorized.

45.     Defendant's Managers regularly refused to pre-authorize Plaintiffs and all other similarly situated MLOs to report overtime work.

46.     On the rare occasions when Plaintiffs and all other similarly situated MLOs worked and were authorized to report on their timesheets hours in excess of 40 hours per week, they were initially paid in the one-and-a-half times their base hourly rate of $11.50 per hour, i.e., 17.25 per hour ("overtime payments"). However, such overtime payments were illusory, as at least two thirds of same were deducted from Plaintiffs' monthly commission payments.

47.     Defendant actively instructed Plaintiffs and all other similarly situated MLO's not to report any and/or to reduce any reporting of actual overtime hours worked by the MLOs by refusing to accept overtime hours submitted by MLOs to Managers. Instead, Defendant's Managers frequently and affirmatively instructed Plaintiffs and all other similarly situated MLOs not to submit their true overtime hours worked, despite knowing that Plaintiffs were engaged in substantial at-home overtime work.

48.     This off-the-clock work involved attending open-houses hosted by realtors on the weekend, which all Plaintiffs and those similarly situated were expected to and did do.

49.     This off-the-clock also involved answering their phones, speaking with clients, and processing loans after hours and at home on their company-issued laptops, which was suffered, permitted, and known by Defendant.

50.     Moreover, Plaintiffs and those similarly situated were expected to complete continuing education credits and train in Defendant's new "dotnet" computer system off-the-clock and after-hours.

51.     Moreover, as discussed below, Defendant deducted at least 2/3 of the overtime compensation which it paid to any MLO in subsequent weeks, thereby discouraging Plaintiffs and all other similarly situated MLOs from accurately reporting their time to Defendant.

52.     The wages and compensation paid by Defendant to Plaintiffs and all other similarly situated MLOs are substantially similar, if not identical, at all of Defendant's locations where MLOs work.

53.     Defendant and its Managers knowingly and intentionally affected the manner in which overtime was to be recorded and reported and as such failed to pay all overtime due to Plaintiffs and all other similarly situated MLOs in violation of the FLSA and the PMWA.

54.     Defendant's conduct has been both willful and in bad faith and especially designed to avoid its legal obligations pursuant to the FLSA and the PMWA. Plaintiffs and all other similarly situated MLOs are entitled to liquidated damages for such conduct pursuant to the FLSA and the PMWA. Defendant's practice is in deliberate violation of FLSA and the PMWA requirements.

55.     Plaintiffs are/were present or former MLOs who were classified by Defendant's written Employment Agreements with individual Plaintiffs, as well as Defendant's own policy and procedure manual and other internal documents, as "non-exempt" from the overtime provisions of the FLSA and Pennsylvania laws described below.

56.     The primary job of Plaintiffs and the Nationwide Collective Plaintiffs is selling, originating, and producing home loans in Defendant's offices in accordance with Defendant's policies and procedures.

57.     Upon information and belief, Defendant uses the same Employment Agreements, compensation practices, operating policies and procedures for its MLOs in all of its branches throughout the United States.

58.     Plaintiffs and those similarly situated regularly and customarily, with the actual or constructive knowledge of Defendant, worked overtime hours (*i.e* worked more than 40 hours per workweek), and were entitled to compensation at one and one half times their regular hourly rate ("overtime compensation") for those hours.

59.     Defendant regularly and willfully refused to pay Plaintiffs and those similarly situated the required overtime compensation for overtime hours worked, and Defendant has failed to keep accurate time records of the hours they worked as required by law.

60.     Even when Defendant paid Plaintiffs and those similarly situated some or all of their overtime compensation, the "straight time amount" paid as overtime, i.e. overtime hours paid x $11.50 per hour, was deducted from their commissions earned in subsequent weeks.

61.     As a result of the deductions stated in the preceding paragraph, and the use of the improper regular hourly rate which failed to include commission and bonus pay, Defendant's pay system evaded the overtime requirements of the FLSA even during workweeks where Defendant allegedly paid Plaintiffs and those similarly situated overtime compensation.

62.     Additionally, Defendant improperly paid overtime hours worked because the hourly rate upon which overtime pay was based failed to properly include commissions and bonus pay earned.

63.     Defendant regularly deducted the wages, straight time, and overtime pay previously earned and paid to Plaintiffs and all other similarly situated MLOs in subsequent weeks from their commissions earned.

64.     Defendant's practices violate the FLSA and the PMWA. Plaintiffs and those similarly situated seek declaratory relief, overtime compensation for all overtime work required, suffered, or permitted by Defendant, wages and overtime pay Defendant improperly deducted from Plaintiffs and Nationwide Collective Plaintiffs, commissions, liquidated damages and other damages and penalties permitted by applicable law, interest, costs, and attorneys' fees.

65. Other MLOs employed by Defendant have been the victim of Defendant's pattern, practice, and policies that are intentionally in violation of the FLSA.

66. Plaintiffs are aware that the illegal practices and policies of Defendant set forth herein above have been imposed on other similarly situated workers and seek to send notice to such other aggrieved current and former employees to give them an opportunity to join this action.

67. Defendant promulgated compensation policies and practices that uniformly violated the wage and hour rights of the Plaintiffs and Nationwide Collective Plaintiffs under the FLSA and PMWA by requiring them to perform integral and indispensable job activities without compensation, also known as "off-the-clock" work.

68. Defendant further promulgated compensation policies and practices that uniformly evaded the requirements of the FLSA and the PMWA including paying overtime premiums by deducting the "straight time" pay, i.e. overtime hours paid x salary hourly rate, from the overtime compensation previously paid to Plaintiffs and all other similarly situated MLOs in subsequent weeks. These same policies further constitute unlawful deductions under the PWPCL.

69. Defendant further promulgated compensation policies and practices that uniformly violated the requirements of the FLSA and the PMWA to pay overtime premiums at a rate of one-and-one half times the regular rate by failing to account for commission payments when determining the overtime premium due.

70. Defendant further promulgated compensation policies and practices that uniformly evaded the requirements of the FLSA and the PMWA to pay at least the federal and state minimum wage by deducting all salary paid to Plaintiffs and all other similarly situated MLOsin subsequent pay periods. These same policies further constitute unlawful deductions under the PWPCL.

71.     Plaintiffs were non-exempt MLOs employed by Defendant during the relevant time period who were entitled to, but did not receive, minimum wages for all hours worked and/or all overtime wages for all hours that they worked in excess of 40 hours in a workweek.

72.     Defendant uses the same or very similar job description, job qualifications, operating policies, human resources policies, job functions and pay practices for its MLOs, including Plaintiffs, at all Defendant banking facilities nationwide.

73.     Defendant's MLOs who constitute the Nationwide Collective Plaintiffs, are non-exempt employees who are purportedly paid on an hourly basis pursuant to Defendant's uniform policies, procedures, and practices nationwide.

74.     Defendant's business operations, and the job duties, working conditions, wages and compensation of Plaintiffs and all other MLOs are substantially similar, if not identical, at all of Defendant's locations throughout the country.

75.     Plaintiffs can and will fairly and adequately represent and protect the interests of those members of the class of similarly situated to wit: the Nationwide Collective Plaintiffs.

76.     Plaintiffs' jobs as MLOs, as well as the jobs of those other similarly situated MLOs as putative class members and Nationwide Collective Plaintiffs, consist of preparing loan applications, collecting credit/financial documentation from potential borrowers, and engaging in customer contact through telephone and email.

77.     During their employment, Plaintiffs, Nationwide Collective Plaintiffs, and the putative class were required to log into Defendant's computer system and engage in the origination and production of home loans using Defendant's loan origination system.

78.     During their employment, Plaintiffs, Nationwide Collective Plaintiffs, and the putative class had no discretion to change rates or to offer products that did not satisfy Defendant's criteria, and had no authority to independently approve potential mortgage applications.

79.     In the 3 years prior to the filing of this action, Plaintiffs, Nationwide Collective Plaintiffs, and the putative class performed non-exempt duties for Defendant.

80.     Defendant purportedly compensated Plaintiffs, Nationwide Collective Plaintiffs, and the putative class on a non-exempt salary basis for 40 hours of work per workweek, but in fact deducted the salary/wages paid for 40 hours of work weekly from future monthly commissions, treating the purported "salary as a "draw."

81.     Defendant also purported to pay Plaintiffs, Nationwide Collective Plaintiffs, and the putative class overtime, based solely on their hourly rate as determined from their "salary" and deducted the "straight time" rate of the "overtime" paid from future monthly commissions.

82.     Defendant compensated all of its MLOs, the Plaintiffs, Nationwide Collective Plaintiffs, and the putative class, in the same way pursuant to uniform corporate policies, practices, procedures, and standards throughout the United States as evidenced Defendant's annual "Incentive Compensation Plan."

83.     The work performed by Plaintiffs, Nationwide Collective Plaintiffs, and the putative class was an integral part of Defendant's business because it brought residential mortgage customers to Defendant.

84.      Plaintiffs, Nationwide Collective Plaintiffs, and the putative class regularly and customarily worked in excess of 40 hours per week, typically 50 to 60 (or more) hours per workweek, during their employment with Defendant.

15

85.     Defendant failed to pay the Plaintiffs, Nationwide Collective Plaintiffs, and the putative class time-and- one-half wages for overtime hours worked.

86.     Defendant intentionally, willfully and unlawfully failed to pay the Plaintiffs, Nationwide Collective Plaintiffs, and the putative class their regular rate for all hours worked and failed to pay proper overtime pay for all overtime hours worked.

## COUNT I
## FLSA CLAIM FOR UNPAID OVERTIME

87.     All previous paragraphs are restated and re-alleged as though fully set forth herein.

88.     The FLSA requires that covered employees be compensated at least the minimum wage for every hour worked in a workweek. See 29 U.S.C. § 206(a)-(b).

89.     The FLSA requires that covered employees be compensated one-and-one-half times their regular rate for hours worked over 40 per workweek. 29 U.S.C. § 207.

90.     Defendant is a covered "employer" required to comply with the FLSA's mandates.

91.     Plaintiffs, and the Nationwide Collective Plaintiffs, are/were covered employees, i.e. non-exempt employees, entitled to the FLSA's protections.

92.     Defendant failed to maintain accurate time records of Plaintiffs' and Nationwide Collective Plaintiffs' actual start times, actual stop times, hours worked each day and total hours worked each workweek, within the three (3) year statute of limitations period.

93.     Defendants' violations of the FLSA include, but are not limited to: failing to pay for overtime worked, failing to pay one and one half times Plaintiffs' and the National Collective Plaintiffs' regular rate, and unlawfully evading the overtime requirements of the FLSA by deducting the "straight time" or regular rate of pay for overtime hours worked, from Plaintiffs' and National Collective Plaintiffs' overtime previously earned and paid.

16

**COUNT II**
**FLSA CLAIM FOR UNPAID MINIMUM WAGES**

94.     All previous paragraphs are restated and re-alleged as though fully set forth herein.

95.     The FLSA requires that covered employees be compensated at least the minimum wage for every hour worked in a workweek. See 29 U.S.C. § 206(a)-(b).

96.     Defendant is a covered employer required to comply with the FLSA's mandates.

97.     Plaintiffs, and the Nationwide Collective Plaintiffs, are/were covered employees, i.e. non-exempt employees, entitled to the FLSA's protections.

98.     Defendants' violations of the FLSA include, but are not limited to: failing to pay Plaintiffs and the Nationwide Collective Plaintiffs minimum wage for all hours worked in each work week, as such wages were deducted from commissions and other compensation in subsequent weeks.

**COUNT III**
**VIOLATIONS OF PWPCL**
**(Pennsylvania Wage Payment and Collection Law, 43 P.S. §§260.1 – 260.12)**

99.     The foregoing paragraphs are re-alleged and reasserted as if set forth in full.

100.    At all times relevant herein, Defendant has and continues to be an "employer" within the meaning of the PWPCL.

101.    At all times relevant herein, Defendant was responsible for paying wages to the Pennsylvania Class.

102.    At all times relevant herein, the Pennsylvania Class were employed with Defendant as "employees" within the meaning of the PWPCL.

103.    Under the PWPCL, an employer must pay an employee all wages due and may not fail to pay an employee for all hours worked.

104.    Defendant's violations of the PWPCL include, but are not limited to not paying Pennsylvania Plaintiffs for time worked on pre-shift and post-shift activities.

105.    Also Defendant violated the PWPCL by deducting wages previously earned in subsequent pay periods by deducting such wages from the Pennsylvania Class Commission earnings. Also, Defendant violated the PWPCL by deducting the "straight" time or regular rate of pay for overtime hours worked, which previously had been paid, in subsequent pay periods from Pennsylvania Plaintiffs' commission earnings.

106.    Defendant's conduct in failing to pay the Pennsylvania Class properly was willful and was not based upon any reasonable interpretation of the law.

107.    As a result of Defendant's unlawful conduct, the Pennsylvania Class have suffered damages as set forth herein.

## COUNT IV
## VIOLATIONS OF PMWA
### (Pennsylvania Overtime and Minimum Wage Violations, 43 P.S. §333.101-333.115)

108.    The foregoing paragraphs are re-alleged and reasserted herein as if set forth in full.

109.    At all times relevant herein, Defendant has been and continues to be an employer within the meaning of the PMWA.

110.    At all times relevant herein, Defendant was responsible for paying wages to Named Plaintiffs and Pennsylvania Plaintiffs.

111.    At all times relevant herein, the Pennsylvania Class were employed with Defendant as "employees" within the meaning of the PMWA.

112.    Under the PMWA, an employer must pay an employee at least one and one-half times his or her regular rate of pay for each hour worked in excess of 40 hours per workweek and must pay at least $7.25 per hour for all hours worked.

113.    Defendant failed to maintain accurate time records of Plaintiffs' and Nationwide Collective Plaintiffs' actual start times, actual stop times, hours worked each day and total hours worked each workweek, within the three (3) year statute of limitations period.

114.    Defendant's violations of the Pennsylvania Minimum Wage Act, include, but are not limited to: failing to pay for overtime worked, failing to pay one and one half times the regular rate to Plaintiffs' and those similarly situated, and unlawfully evading the overtime and minimum wage requirements of the Pennsylvania Minimum Wage Act by deducting from Plaintiffs' and National Collective Plaintiffs' wages previously earned.

115.    Defendant's violations of the PMWA include, but are not limited to, not paying the Pennsylvania Class for time worked on pre-shift and post-shift activities.

116.    Defendant's conduct in failing to pay the Pennsylvania Class properly was willful and was not based upon any reasonable interpretation of the law.

117.    As a result of Defendant's unlawful conduct, the Pennsylvania Class have suffered damages as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Nationwide FLSA Collective Action, pray for relief as follows:

A.    Designation of this action as a collective action on behalf of the Nationwide FLSA Collective Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C.

§ 216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Lost overtime wages and improperly deducted wages and overtime, to the fullest extent permitted under the law;

C.      Liquidated damages, prejudgment interest, and monetary penalties to the fullest extent permitted under the law;

D.      Litigation costs, expenses, and attorney's fees to the fullest extent permitted under the law; and

E.      Such other and further relief as this Court deems just and proper; and

F.      A trial by jury.

**WHEREFORE**, the Pennsylvania State Law Class Representatives, on behalf of themselves and all members of the Pennsylvania State Law Class they seek to represent, pray for relief as follows:

A.      Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the proposed Pennsylvania State Law Class;

B.      Appropriate equitable and injunctive relief to remedy Defendant's violations of state law, including but not necessarily limited to an injunction prohibiting Defendant from engaging in future violations;

C.      Lost overtime wages, improperly deducted wages, and overtime, to the fullest extent permitted under the law;

D.     Liquidated damages, prejudgment and post-judgment interest, and any other monetary penalties to the fullest extent permitted under the law;

E.     Litigation costs, expenses, and attorneys' fees; and

F.     Such other and further relief as this Court deems just and proper; and

G.     A trial by jury.


                                        Respectfully Submitted,

                                        */s/ Justin L. Swidler*
                                        Justin L. Swidler, Esq.
                                        Richard S. Swartz, Esq.
                                        Joshua S. Boyette, Esq.
                                        **SWARTZ SWIDLER, LLC**
                                        1101 Kings Highway N, Ste. 402
                                        Cherry Hill, NJ 08034
                                        Telephone: (856) 685-7420
                                        Facsimile: (856) 685-7417
                                        E-mail: jswidler@swartz-legal.com
                                        E-mail: rswartz@swartz-legal.com
                                        E-mail: jboyette@swartz-legal.com

November 23, 2015