UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX REINIG, KEN GRITZ, and BOB SODA, individually and on behalf of those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>RBS CITIZENS, N.A.<br><br>Defendant. | CIVIL ACTION NO: 2:15-cv-01541-AJS |

### BRIEF IN SUPPORT OF PLAINTIFFS' OMNIBUS *MOTION IN LIMINE*

**I.    Motion in Limine # 1 to Exclude "Cherry Picked" Interrogatory Responses.**

Fed. R. Evid. 106 provides: "[i]f a party introduces all or part of a writing. . . an adverse party may require the introduction, at that time, of any other part — or any other writing. . . — that in fairness ought to be considered at the same time." Plaintiffs here seek an Order precluding Defendant from introducing "cherry-picked" responses selected from the discovery opt-in plaintiffs, without providing proper context.

Defendant has listed as Exhibits #37 and #38 the Interrogatory Responses of Plaintiffs and Opt-In Plaintiffs, and a Summary of Interrogatory Responses #2, #12, and #13. The evidence in the entire corpus of Interrogatory Responses demonstrates that the overwhelming majority of Discovery Plaintiffs who were able respond—if not all such individuals—testified they worked off-the-clock because of either the policies of management or the instructions of management.

Nevertheless, Plaintiffs believe that Defendant will attempt to introduce certain responses from a select few Discovery Reponses to create a false impression to the jury of what the representative discovery uncovered. Allowing the introduction of such evidence without the

-1-

appropriate context, as Fed. R. Evid. 106 requires, would be far more prejudicial than probative and would leave the jury with a false sense of what the representative discovery uncovered. *Phx. Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) ("The common-law doctrine of completeness, on which Rule 106 is based, likewise requires that a full document or set of documents be introduced: '[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible.'") (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)); *United States v. Coughlin*, 821 F.Supp.2d 8, 30 (D.D.C. 2011) ("regardless of whether this evidence is inadmissible hearsay or not, he can introduce it under the rule of completeness"); United States v. Sutton, 801 F.2d 1346, 1368 (D.D.C. 1986); see also United States v. Green, 694 F.Supp. 107, 110 (E.D. Pa. 1988) ("the Rule [of completeness] permits the introduction of evidence that is otherwise inadmissible under other Federal Rules").

Plaintiffs request pursuant to Rule 106 that the Court preclude Defendant from introducing excerpted interrogatories and admissions without requiring Defendant to also introduce the responses from all other opt-in Plaintiffs. To ensure such may occur expeditiously at trial, Plaintiffs intend to call a summary witness, Robert Speakman, to testify regarding the contents of the interrogatories.

Moreover, Defendant's Summary of Interrogatory Responses lists individuals who did not provide interrogatory responses. Some of these individuals opted-out of the lawsuit. Others were unable to respond because Defendant chose to compress its discovery—both written and depositions—in a short period stretching from late January to Mid-March 2017 despite Plaintiffs' attempts to begin class discovery as soon as the notice period ended in September 2016. As such,

appropriate context, as Fed. R. Evid. 106 requires, would be far more prejudicial than probative and would leave the jury with a false sense of what the representative discovery uncovered. *Phx. Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) ("The common-law doctrine of completeness, on which Rule 106 is based, likewise requires that a full document or set of documents be introduced: '[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible.'") (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)); *United States v. Coughlin*, 821 F.Supp.2d 8, 30 (D.D.C. 2011) ("regardless of whether this evidence is inadmissible hearsay or not, he can introduce it under the rule of completeness"); United States v. Sutton, 801 F.2d 1346, 1368 (D.D.C. 1986); see also United States v. Green, 694 F.Supp. 107, 110 (E.D. Pa. 1988) ("the Rule [of completeness] permits the introduction of evidence that is otherwise inadmissible under other Federal Rules").

Plaintiffs request pursuant to Rule 106 that the Court preclude Defendant from introducing excerpted interrogatories and admissions without requiring Defendant to also introduce the responses from all other opt-in Plaintiffs. To ensure such may occur expeditiously at trial, Plaintiffs intend to call a summary witness, Robert Speakman, to testify regarding the contents of the interrogatories.

Moreover, Defendant's Summary of Interrogatory Responses lists individuals who did not provide interrogatory responses. Some of these individuals opted-out of the lawsuit. Others were unable to respond because Defendant chose to compress its discovery—both written and depositions—in a short period stretching from late January to Mid-March 2017 despite Plaintiffs' attempts to begin class discovery as soon as the notice period ended in September 2016. As such,

allowing Defendant to communicate to the jury that certain individuals did not provide discovery responses may wrongly imply that such discovery Plaintiffs did not agree with the allegations in this case, and would accordingly, be more prejudicial than probative. Accordingly, Defendant should be precluded from telling the jury that certain Discovery Plaintiffs did not respond to interrogatories, since it is likely that these few individuals simply needed an extension of time to respond to such interrogatories, but no extension could be granted because Defendant chose to conduct written discovery exclusively within the final two months of the discovery period.

Similarly, Defendant's cherry-picking of interrogatory responses must not be permitted under Fed R. Evid. 106 because the interrogatory responses of each proposed opt-in Plaintiff have been manipulated to ensure the jury is given an incomplete understanding even of the specific individual in question. Defendant has selected Interrogatory Questions No. #2, #12, and #13 for its summary, which deals with individuals who instructed Plaintiffs that they were prohibited from working more than 40 hours in a workweek, the supervisors to whom they reported, and whether they had an assistant. However, in addition to these Interrogatories, Defendant also asked how many hours Plaintiffs estimated they worked, whether Plaintiffs informed managers of off-the-clock work or whether managers knew of off-the-clock without Plaintiffs specifically informing them, the policies Defendant instituted that caused Plaintiffs to work off-the-clock, and estimates of the time Plaintiffs spent working at various different locations. Defendant's cherry-picking of Interrogatory Responses would allow it to suggest to the jury that the only relevant information in the Interrogatories is the specific instructions Plaintiffs received from managers about working 40-hours per week or working off-the-clock, when in fact, the Overtime Minimization Scheme was primarily executed not by specific illegal directives to work off-the-clock, but rather, through the institution of policies and practices that as a practical matter required or encouraged off-the-clock

work without Defendant, and Defendant's managers' actual or constructive knowledge of off-the-clock work coupled with Defendant's managers failures to stop the off-the-clock work.

Accordingly, under the rule of completeness, and in order to alleviate the prejudice that would accompany such "cherry picking," if Defendant is allowed to introduce **any** Interrogatory Responses for a given Discovery Plaintiff, Plaintiffs must be afforded the opportunity to introduce the remaining Interrogatory Responses.

### II. Motion in Limine #2 precluding Defendant from calling Lance Fultz as a witness at trial.

Defendant has listed Lance Fultz as one of its witnesses at trial. Defendant should be precluded from calling Mr. Fultz as a witness because he was not disclosed by Defendant on Defendant's Initial Rule 26 Disclosures, he was first brought to the attention of Plaintiffs as merely one of hundreds of managers in response to an Interrogatory asking the names of managers of Discovery Plaintiffs on January 17, 2017, *after* the parties had agreed on a deposition schedule, and was not disclosed as a potential witness in a Supplemental Rule 26 disclosure until March 17, 2017, the final day of fact discovery, at which point, Defendant chose to disclose **181 managers** as potential witnesses/individuals with discoverable information. *See* Defendant's Rule 26 Disclosures and First Amended Rule 26 Disclosures, *attached hereto as* Exhibit 1.

Under the Federal Rules of Civil Procedure, each party is required to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(2)(i). Under Fed. R. Civ. P. 26(e), a party must timely supplement its initial disclosures and discovery responses if the party learns that its initial response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A).

The Federal Rules prohibit a party from calling an individual at trial if he or she was not properly disclosed. Fed. R. Civ. P. 37(c) ("if a party fails to ... identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that ... witness... at a trial…") When a party fails to timely disclose information or a witness, the court considers the following four factors in determining whether a party should be prohibited from using such information at trial: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *see also, e.g.*, *Kelly-Fleming v. City of Selma*, 2013 U.S. Dist. LEXIS 160790, *1 (W.D. Tex. Nov. 12, 2013) (concluding plaintiff's failure to timely disclose certain fact witnesses was not harmless because the discovery period had run and the defendant could not depose those individuals).

All four factors weigh against allowing Mr. Fultz to testify. Other than Lance Fultz's name, Defendant gave no indication or notice that it intended to rely on the testimony of Lance Fultz as one of its few trial witnesses until after discovery was over. Moreover, in its final-day disclosures, Mr. Fultz's name was buried in a list of 181 managers. Accordingly, Plaintiffs could not even negotiate with Defendant to take Mr. Fultz's deposition after the formal end of discovery, as Plaintiffs clearly could not go to the time and expense of deposing 181 managers who Defendant might choose to call to testify at trial.

Accordingly, it would be unfair and unduly prejudicial to allow Mr. Fultz to testify at trial when the disclosure of him was plainly untimely and deficient. Furthermore, Defendant has disclosed other managers who were deposed by Plaintiffs, such that Mr. Fultz's testimony would

likely be cumulative of properly disclosed and named trial witnesses. Thus, Defendant will not be unduly prejudiced by the exclusion of Mr. Fultz at trial.

**III. Motion in Limine #3 precluding Defendant from introducing evidence or referring to the total annual compensation and total commissions earned by Plaintiffs.**

Pursuant to Fed. R. Evid. 401 and 403, Plaintiffs request an Order precluding Defendant from introducing into evidence or referring to the total annual compensation paid to MLOs or the amounts MLOs received in commissions. Such information is not relevant to any issue for trial and is more prejudicial than probative.

**IV. Motion in Limine #4 precluding Defendant from introducing evidence or referring to performance issues of Plaintiffs unless it involved attendance, timekeeping, overtime usage, or commission deficits.**

Pursuant to Fed. R. Evid. 401 and 403, Plaintiffs request an Order precluding Defendant from introducing into evidence or referring to any performance issues of any of the Plaintiffs unless the issue involved attendance, timekeeping, overtime usage, or commission deficits. Other sorts of performance issues are not relevant to any issue for trial, and is more prejudicial than probative.

**V. Motion in Limine #5 precluding Defendant's expert from testifying about statistical variances between overtime reported at different locations, as Defendant did not provide any of the underlying data, calculations, or formulas he used to reach such opinion either prior to or after his deposition, but rather provided information about a single location in a single year.**

Plaintiffs also seek the Court to preclude Defendant's expert Dr. Stephen Bronars from testifying that "recorded hours" vary significantly across MLOs, time periods, and work locations. Bronars stated in his Report's Summary of Conclusions that his analysis found that "the number of weeks that included recorded overtime and the average number of recorded overtime hours differ significantly across MLOs, time periods, and work locations. *See* Bronars Report, ECF Doc. No. 159-1 at 6, ¶ 9.

Bronars, however, did not provide any details to support this "Summary of Conclusions." Bronars does not set forth anywhere in his report, or in any supporting documentation, or at his deposition, **how** recorded hours vary by MLO, time period, or work location, or the extent of such variation. Accordingly, to the extent Bronars has this "opinion," he did not adequately disclose it in either his report, accompanying materials, or his deposition, and hence, he should be precluded from testifying as such.

### VI. Motion in Limine #6 precluding Defendant's expert from testifying that Plaintiffs' estimates of off-the-clock work is unrealistic based on overtime hours recorded by MLOs.

Likewise, Plaintiffs seeks to exclude pursuant to Rule 402 and 403 testimony from Dr. Bronars that an assumption/conclusion that MLOs actually worked an average of 55 hours per week is inconsistent with the records of MLOs who reported more than 45 hours per week and whose workweeks are therefore excluded from Dr. Speakman's off-the-clock damage calculators.

In his report, Dr. Bronars falsely states that Plaintiffs assume that an individual who reported more than 45 hours per week is recording all his or her time accurately. Plaintiffs and Dr. Speakman made no such assumption, but instead excluded such workweeks from Plaintiffs' off-the-clock damages calculation because some such weeks with recorded overtime might be accurate, and determining which such weeks are or are not accurate would be difficult to do based on class-wide evidence, whereas Plaintiffs believe that class-wide evidence can demonstrate that for weeks in which 40-45 hours were recorded, it is more likely than not that MLOs worked off-the-clock during such weeks.

However, there is substantial evidence in the record demonstrating that even high-performing individuals who were allowed to report overtime were counseled against recording more than 50 hours per workweek, while Plaintiffs' testimony demonstrates that the discovery

plaintiffs estimated they worked an average of 57 hours per week. More importantly, Dr. Bronars does not rely on any evidence to demonstrate that MLO time-records in which more than 5 overtime hours were recorded are accurate or reliable such that they can be used to estimate the number of off-the-clock hours an MLO worked. Accordingly, allowing Dr. Bronars to testify that it is his opinion that a 55 or 57 hour workweek is inconsistent with the reported overtime of MLOs who did report more than 5 hours of overtime is both irrelevant and unduly prejudicial, as it would imply that those time records are accurate when Defendant has produced no evidence to suggest same.

        Respectfully Submitted,

        */s/ Joshua Boyette* _
        Joshua S. Boyette, Esq.
        Justin L. Swidler, Esq.
        **SWARTZ SWIDLER LLC**
        1101 Kings Hwy N. Ste 402
        Cherry Hill NJ 08034
        Tel: 856-685-7420
        Fax: 856-685-7417

        Robert D. Soloff, Esq.
        **ROBERT D. SOLOFF, P.A.**
        7805 S.W. 6th Court
        Plantation, FL 33324
        Tel: 954-472-0002

        *Counsel for Plaintiffs*

Dated:   August 7, 2017