IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEX REINIG, et al., *Individually and on behalf of those similarly situated,*

Civil Action No.: 2:15-cv-01541-AJS

      Plaintiffs,

v.

RBS CITIZENS, N.A.,

      Defendant.
_____/

### PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO CITIZENS' OMNIBUS MOTION IN LIMINE

Plaintiffs file their Memorandum of Law in Opposition to Citizens' Onnibus Motion in Limine (ECF Doc. 185), supported by Defendant's Memorandum of Law in Support (ECF Doc. 188) and states as follows: Defendant brings seven (7) Motions in Limine.

Plaintiffs do not oppose to Defendants' Motions in Limine Nos. 1 and 3. Plaintiffs oppose Defendants' remaining Motions in Limine, (2, 4, 5, 6 and 7) for the reasons briefed below.

### Responses to Disputed Motions in Limine

**I.**    **Defendant's First Motion in Limine**

For this phase of the trial only, Plaintiffs consent to Defendant's first motion in limine.

**II.**    **Defendant's Second Motion in Limine**

Defendant's second Motion in Limine requests the Court preclude any information regarding (1) the number of Defendant's employees; (2) Defendant's financial condition; and (3) Defendant's performance.

1

Defendant's motion should be denied because the information Defendant seeks to preclude is directly relevant to the off-the-clock claims.  First, the number of employees and Defendant's size is relevant, as Plaintiffs assert Defendant maintained an unofficial policy of encouraging off-the-clock work; whereas Defendant asserts the information Plaintiffs will present is anecdotal and does not constitute a policy.  To demonstrate such evidence is beyond anecdotal, the size of Defendant and the number of employees Defendant employs is relevant.

Furthermore, the testimony demonstrates one of the *motivating* factors for Citizen's off-the-clock policy was its financial performance.  For example, Matthew Egan, head of Mortgage Fulfillment Operations, testified as a result of its upcoming IPO, Citizens made significant cuts to its processing staff, which increased the amount of time it takes for a loan to be processed and closed. Dep. Of Egan at 69-71, Ex. C.

Finally, because the issue for the jury is whether PNC knew or should have known about the off-the-clock work, its size, sophistication, and myriad of resources, including its HR resources and technical prowess, are relevant for the jury's consideration.

Thus, because Citizens' financial condition and performance impacted the amount of hours MLOs were required to work, Plaintiffs should be permitted to discuss Citizen's financial condition and performance at trial.

**III.    Defendant's Third Motion in Limine**

Plaintiffs consent to Defendant's third Motion in Limine.

**IV.    Defendant's Fourth Motion in Limine**

Plaintiffs partially oppose Defendant's Fourth Motion in Limine to the extent Defendant seeks to exclude Plaintiffs from raising the *Ginter v. RBS Citizens, N.A.* (S.D. Oh.) case ("*Ginter*").  The *Ginter* case was filed in 2012 and asserted Citizens' MLOs were misclassified

as exempt employees, but instead were non-exempt hourly employees entitled to overtime pay. A settlement was reached in *Ginter* which affects the time periods at issue in the instant litigation. Moreover, *Ginter* provides important background explaining *why* Citizens implemented an unofficial policy to encourage off-the-clock work. After being forced to change their compensation structure in light of the U.S. Department of Labor Administrative Interpretation No. 2010-1 and court decisions, Citizens intentionally reclassified its MLOs as non-exempt and enacted policies so that changes had little to no impact on MLOs' total compensation. Plaintiffs' theory for trial is that Citizens implemented overtime neutralization schemes specifically designed to evade the requirements of the FLSA and implemented same in response to *Ginter*.

Additionally, Plaintiffs should be permitted to introduce evidence relating to Defendant's dishonest and deceptive conduct, which it Defendant stipulated to, in *Re: RBS Citizens Financial Group, Inc. (n/k/a Citizens Financial Group, Inc.), RBS Citizens, N.A. (n/k/a Citizens Bank, N.A.) and Citizens Bank of Pennsylvania*, United States Consumer Financial Protection Bureau, File. No. 2015-CFB-0020 (the "CFPB Complaint"). In the CFPB Complaint, Defendant stipulate that it, *inter alia*, engaged in deceptive acts in violation of 12 U.S.C. §§ 5531 and 5536 and utilized such deception to unlawfully retain $12.3 million that rightfully belonged to its consumers. (*See* Consent Order, attached hereto as Ex. A at ¶¶ 18, 30). Such evidence is admissible as character evidence pursuant to Fed. R. Evid. 608 and Plaintiffs should be able to utilize such evidence to impeach the character of corporate designees at trial.

Plaintiffs are further permitted to introduce evidence of criminal conviction of Defendant pursuant to Fed. R. Evid. 609(a)(1), Plaintiffs may present at trial evidence of criminal convictions to attack a witness's character of truthfulness where such convictions occurred

within the last 10 years and where the crime convicted of could result in a sentence of at least 1 years in prison. Fed. R. Evid. 609(a)(1) ("for a crime that, in the convicting jurisdiction, was punishable by death or imprisonment for more than 1 year, they evidence **must** be admitted, subject to Rule 403, in a civil case…"). Furthermore, "for any crime, regardless of punishment, the evidence **must** be admitted if the court can readily determine that establishing the elements of the crime required proving – of the witness admitting – a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

Plaintiffs should be able to attack the truthfulness of a designee witness testifying as RBS Citizens at trial by utilizing RBS's guilty plea to violations of the Sherman Antitrust Act, 15 U.S.C. § 1, which resulted in RBS[1] being fined $395 million, and which carries a maximum sentence of 10 years in prison. The guilty plea was entered on May 20, 2015, just over 2 years ago. In the plea, RBS admits that it engaged in significant criminal actions, including actions involving dishonesty and false statements. For example, RBS admits that it intentionally altered rates provided by the US government and "misrepresent[ed] market conditions and trading to the client." Guilty Plea at pp. 16-17. A copy of the guilty plea is attached hereto as Exhibit B.

Because such evidence must be admitted, and because *Ginter* is directly relevant to the claims at issue, Plaintiffs oppose Defendants' fourth motion in limine in that Plaintiffs should be permitted to introduce evidence of the *Ginter* litigation and should be permitted to introduce character evidence relating to Defendant's deceptive conduct and criminal conviction and plea.

---

[1] At the time of the plea agreement and the criminal conduct referenced therein, RBS was the corporate parent and owned and controlled Defendant.

V.   **Defendant's Fifth Motion in Limine**

At trial, Speakman will summarize the representative discovery undertaken by Defendant which is relevant to the off-the-clock claims. Specifically, Speakman will summarize the hours worked data, the pay data, data relating to when emails were sent and received data, data relating to when MLOs sent loan applications, and the attendance data of MLOs. Speakman will testify regarding the number of MLOs who block reported their time (*i.e.* showing 9-5, M-F, with no variation), the percentage of workweeks where time was block reported The summary will assist the factfinder because the datasets contain over 100,000 records and without summary, they are too voluminous to be presented at trial; *see also* Defendants' Motion at pp. 2-3 ("Citizens produced thousands of pages of documents and voluminous electronically stored information…"). *See* Fed. R. Evid. 1006.

Moreover, because Speakman is not testifying in the role of an expert when he is called a summary witness, there is no potential prejudice, and Defendants have not cited one authority for such a proposition. *See also* Order Denying Motion in Limine, *Bland v. PNC Bank, N.A.*, 15-1042, ECF Doc. 347, pp. 9-10 (denying motion to exclude Dr. Speakman from testifying as summary witness and allowing Dr. Speakman to summarize documents or other exhibits which would otherwise be admissible).

VI.   **Defendant's Sixth Motion in Limine**

Defendant further objects to "any introduction of 'representative' evidence of liability and damages." The Court should deny the motion outright as the motion is vague and ambiguous, and Defendant failed to articulate what evidence, would be precluded and/or permitted if the motion is granted. Further, the Special Master Report and Recommendation certifying this matter as a class action (ECF Doc. No. 180) and on the off-the-clock claims,

denying FLSA decertification on the off-the-clock claims, and the Parties have clearly contemplated a trial regarding a class-wide policy or practice of Citizens causing off-the-clock work.

For example, much of the data is representative evidence providing information for all class members and can be utilized as representative evidence to demonstrate the experience of class members. Moreover, emails sent from management, as well as managerial testimony, may be utilized to infer knowledge and policies and practices of Citizens. Furthermore, the FLSA allows factfinders and the Court to extrapolate the experiences of a few class members to the larger class. *Id*. *Anderson v. Mt. Clemens Pottery*, 328 U.S. 686, 686-688 (1946).

Granting Defendant's motion would require Plaintiffs to call many more witnesses which they could not do in the limited time the Court has allotted for Plaintiffs case. Defendant's request ignores FLSA jurisprudence authorizing representative evidence. In *Mt. Clemens*, the Supreme Court authorized a burden-shifting scheme to facilitate the ability of plaintiffs to prove an FLSA violation where the employer failed to maintain proper records (such as how many hours its employees worked and the amount of pay). To prevent workers from being penalized by the employer's failure to keep adequate records, the Supreme Court held plaintiffs could meet their burden by utilizing representative evidence. *Id*. at 687. Relying on *Mt. Clemens*, this year the Supreme Court affirmed a jury verdict and approved of plaintiffs' use of "a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records..." *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1047 (2016).

Thus, the Court should deny Defendants' Motion in Limine Number 6.

**VII.     Defendant's Seventh Motion in Limine**

Defendant further requests Plaintiffs be prohibited to introduce testimony or witnesses not identified in their list of witness. Defendants' motion appears to be based on a false premise; namely, that Plaintiffs failed to disclose certain witnesses upon whom Plaintiffs served trial subpoenas through Defendant's counsel.[2]

Defendant argues that Plaintiff did not disclose "Messrs. Egan, Gamache, Gundlach, Kraus, Nard, Mathieson, Ocko, and Sutton." In support of such claim, Defendant cites the Court to ECF Doc. No. 179, which is entitled "Plaintiffs' **Supplemental** Witness Designations." In the supplemental designation, which was filed within the deadline set by the Court to identify trial witnesses, Plaintiffs "incorporate[d] by reference the witnesses already disclosed in Plaintiffs' Pretrial Statement (ECF Doc. No. 155)" and "**supplement[ed]** the witness list" by identifying additional witnesses.

Plaintiffs identified that although they would not call "all the witnesses" listed on Plaintiffs' Pretrial Statement, they "may call the additional witnesses listed on the Plaintiffs' Pretrial Statement in either the first or subsequent stages of the trial…" (ECF Doc. No. 178).

Plaintiffs' Pretrial Statement, identifies all the allegedly omitted witnesses. (*See* ECF Doc. No. 155 at pp. 16 (Sutton, Egan); 19 (Kraus, Ocko); 20 (Gundlach); 21 (Gamache, Nard, Mathieson)). Additionally, Defendants' witness list includes the names of Gamache, Matheison, Ocko, and Sutton. (*See* ECF Doc. No. 182).

When considering a motion to exclude testimony for a failure to disclose, a motion to exclude should be denied when the failure to disclose substantially justified or harmless. *See* Fed.

---

[2] The trial subpoenas were served via email service, with Defendant's counsel accepting service, on August 4, 2017.

R. Civ. P. 37(c)(1).  "The inadvertent failure to disclose the name of a potential witness known to all parties or the failure to list as a trial witness a person listed by another party is 'harmless'" and should not result in exclusion.  *See Joy Glob., Inc. v. Wis. Dep't of Workforce Dev. (In re Joy Glob., Inc.)*, 423 B.R. 445, 451 (D. Del. 2010), citing (citing Advisory Committee Note to the 1993 Amendments to Rule 37(c).

Here, Defendant's assertion of an alleged failure to disclose is *false*, and, in any event, is harmless and substantially justified.  First, any alleged failure is harmless because (1) Plaintiffs disclosed the witnesses as trial witnesses in their Pretrial Statement prior to the deadline to disclose; (2) the witnesses are known to Defendants, were deposed in this matter, and many are on Defendants' witness list; and (3) Plaintiffs served their trial subpoenas within a week of filing their Supplemental Witness List, therefore reaffirming to Defendants that Plaintiffs had incorporated their witness list from the Pretrial Statement into their Supplemental Witness List.  Second, any allegedly failure is substantially justified as Plaintiffs' counsel disclosed the witnesses in their Pretrial Statement and incorporated such witnesses by reference in their witness list.

Finally, Defendant's motion should be denied because Plaintiffs are permitted to call undisclosed witnesses for purposes of impeachment, and to the extent Plaintiffs intend to call an undisclosed witness, the Court must examine whether the failure to disclose was harmless or substantially justified.  Accordingly, the Court should deny the motion, or in the alternative, reserve ruling until Plaintiffs call a witness who Defendant contends was undisclosed, and Defendant moves to exclude such witness.

Respectfully Submitted,

*/s/ Justin L. Swidler*
Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER LLC**
1101 Kings Hwy N. Ste 402
Cherry Hill NJ 08034
Tel: 856-685-7420
Fax: 856-685-7417

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**
7805 S.W. 6th Court
Plantation, FL 33324
Tel: 954-472-0002

*Counsel for Plaintiffs*

Dated:   August 14, 2017