IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEX REINIG, et al., *Individually and on*
*behalf of those similarly situated,*

            Civil Action No.:  2:15-cv-01541-AJS

    Plaintiffs,

v.

RBS CITIZENS, N.A.,

    Defendant.

_____/

**OBJECTIONS TO SPECIAL MASTER'S FIRST REPORT**
**REGARDING RECAPTURE CLAIMS**

   Plaintiffs ALEX REINIG, et al., by and through their undersigned counsel, file the following

Objections to Special Master's First Report regarding Certification Motions and Cross-Motions for

Summary Judgment as to Recapture Claims (ECF Doc. 179, hereinafter, the "Report") by Special

Master David R. Cohen (the "Special Master" or "SM") and state as follows:

   Plaintiffs only are objecting to the Special Master's findings and conclusions in his Report

and, concerning the substantive issue of Plaintiffs' Recapture Claims.  *See* ECF Doc. 179, p. 35-47.

Specifically, the SM accepted the principal question proposed by Defendant Citizens Bank

("Citizens") regarding the Mortgage Loan Officer ("MLO") Commission Formula: When were

[MLO] commissions earned?  Report, p. 35.  However, that question is incorrect because it raises a

purely contractual question, while ignoring the proper issue: whether Citizens Commission Formula

for non-exempt, hourly paid MLOs is lawful under the FLSA, and State Wage Protection and

Collection Act laws.

   In addition to addressing the wrong question, the Special Master fundamentally erred in

determining the Draw Amount (the hourly pay and overtime pay up to forty-five (45) hours per

week deducted from Gross Commissions which Citizens acknowledges to be a Draw) – was actually paid wages. Further, the SM erred in failing to acknowledge: (1) a commission formula can violate the FLSA; and (2) non-exempt hourly paid employees cannot have their commissions reduced based on paid wages and overtime earnings. Because of the SM's failure to recognize the FLSA expressly prohibits Citizens Commission Formula, his Report should not be followed, and instead the Court should enter an Order granting Plaintiffs' Motion for Summary Judgment as to the Recapture Claims and denying Defendant's Motion for Summary Judgment as to the Recapture Claims.

## I. <u>Introduction</u>.

No material facts are in dispute regarding the Recapture Claims. Report, p. 35. However, by accepting Citizens incorrect issue about "when" commissions were earned, the SM ignored or misapplied the applicable law and rendered a wholly unsupported recommendation. Citizens' proposed question fails to recognize the two (2) threshold legal issues to be determined <u>before</u> looking to language of the Commission Formula: (1) whether Citizens Commission Formula for non-exempt hourly paid MLOs violates the FLSA by deducting wages paid from gross commissions; and (2) whether the deduction formula as applied to non-exempt hourly paid MLOs violates the FLSA by improperly failing to fully pay all overtime earnings?

Because the answer to both of these questions is "yes," the SM should not have reached the question proposed by Citizens, which calls solely for a contractual interpretation of the Commission Formula. Because the MLOs are non-exempt, hourly employees entitled to overtime pay at the rate of one and one-half times their "regular rate," which under the FLSA includes all commissions, Citizens' Commission Formula violated the FLSA which prohibits a "commission" formula for non-exempt employees which purports to pay wages, overtime and commissions, but in fact fully recaptures all wages and up to five (5) hours of overtime per week, thereby: (1) failing to pay wages

"free and clear," as required by the FLSA; (2) failing to pay overtime, as all straight time wages must be fully paid in any week in which the employee works overtime hours, and (3) failing to pay overtime at the proper rate – one and one-half times the "regular" rate - because the Citizens' formula results in reduction of the MLOs overtime rate when there is a delay in earning sufficient commissions to overcome the accrued "deficit" from prior deductions in months where gross commissions did not exceed wages and overtime paid.

II.    **Background.**

The Special Master's confusion in raising the wrong issue and in reaching the wrong conclusion is demonstrated through a review of key FLSA principles, including the fundamental precepts of the FLSA, the distinction between non-exempt and exempt status, the FLSA status of MLOs, and the distinction between lawful and illegal commission formulas for non-exempt, hourly employees. As we will establish, a commission formula can be subjected to a purely contractual analysis, as performed by the Special Master, only <u>after</u> first determining that the commission formula does not violate the FLSA. And here, the Citizens Commission Formula as set forth in the Comp-Plans for non-exempt, hourly paid MLOs, violates the FLSA because it provides illusory wages and overtime which Citizens directly recovers by deducting those payments from commissions, and for which Citizens expressly asserts its right in the Comp-Plans to recover from MLOs terminated when gross commissions do not exceed previously paid wages and overtime. Simply put, under its Commission Formula scheme, Citizens effectively only pays its MLOs commissions, after an initial period of employment where a recoverable draw is paid. That Commission Formula scheme violates the FLSA when used for non-exempt, hourly employees, such as the Plaintiffs.

**A.** __Fundamental Rules of the FLSA__.

The FLSA mandates payment by covered employers (who have over $250,000.00 gross annual revenues) to employees the minimum wage, 29 U.S.C. §206, and overtime pay at one and one-half the "regular rate" for hours worked over forty (40) hours in a week.  29 U.S.C. §207. Wages paid to an employee must be made "free and clear," without any direct or indirect kickback to the employer.  29 C.F.R. §531.35.  Commissions may be paid to employees, either exclusively, or in addition to wages.  29 C.F.R. §778.117.  Different rules, however, apply to payment of commissions to non-exempt employees as compared to exempt (salaried) employees because of the difference in the character of such compensation and because exempt employees are so-called as they are "exempt" from overtime pay.  The rules governing commission formulas depends on the particular employment status of the employee under the FLSA, exempt or non-exempt, in large part because of the FLSA overtime pay requirements for non-exempt employees, detailed below.

**B.** __Non-Exempt and Exempt Employees FLSA Distinction__.

As a general rule under the FLSA, employees must be paid for all hours worked, at least at the minimum wage.  29 U.S.C. §206.  Such hourly paid employees are "non-exempt," and must receive overtime pay for all hours worked over forty (40) hours in a week at one and one-half times their regular rate.  29 U.S.C. §207.  Limited exemptions are available if an employee meets both a salary test and a job duties test.  For the so-called "white collar" exemption (administrative, executive and professional) that requires a salary of at least $455.00 per week ($23,680.00 per year) and performance of specific job duties to establish entitlement to the particular exemption.  *See generally*, 29 CFR Part 541.

The major distinction between non-exempt and exempt employees under the FLSA is that non-exempt employees must be paid overtime for all hours worked over forty (40) hours in a week.

The overtime calculation must be made on a weekly basis only. *See* 29 U.S.C. §207. "Exempt" employees are exempt from overtime and only are entitled to their salary, and, if applicable to their commissions. Exempt employees are <u>not</u> entitled to overtime pay, either based on their salary or their commissions.

That distinction between non-exempt and exempt employees, particularly due to overtime pay entitlement, is detailed by the Department of Labor ("DOL") in its regulations, including in the DOL regulations applying to non-exempt employees paid by commissions. Specifically, as detailed below, the DOL, in its Field Operations Handbook, highlights that distinction between non-exempt and exempt employees compensation, in whole or in part, by commission. [1]

**C.  <u>MLO Misclassification as Exempt Under the FLSA.</u>**

Most banks and mortgage lenders historically classified MLOs as exempt employees, principally based upon the administrative exemption. As exempt employees, MLOs were not entitled to overtime, nor were their employers required to keep records of their hours worked. As a result, most banks and mortgage lenders paid MLOs on a pure commission basis, often with advances or draws on a weekly or bi-weekly basis which draws were deducted or offset against subsequent monthly commissions. After years of significant litigation over whether MLOs were subject to the FLSA administrative exemption, on March 24, 2010, the Department of Labor issued its Administrator's Interpretation 2010-1 entitled: "Application of the Administrative exemption under Section 13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. §213(a)(1), to Employees who Perform the Typical Job Duties of a Mortgage Loan Officer." ("Administrator's Interpretation"). The DOL, after analyzing the typical job duties of the loan officers, the duties test required for

---

[1] Citizens devotion to its "commissions only" pay model is further established by its refusal to accept actual overtime worked and reported. Add best 3 or 4 e-mails re: overtime. As shown, the only "exemption" or permitted overtime is where the MLO is having high production rates. Presumably, as a higher producer, in lieu of a higher commission rate, some overtime – and it is important to note: such overtime is only paid at the half time rate – may be permitted.

administrative exemption under the FLSA and a comprehensive review of relevant case law regarding MLO FLSA classification, concluded:

> Based upon a thorough analysis of the relevant factors, the Administrator has determined that mortgage loan officers who perform the typical duties described above have a primary duty of making sales for their employers and, therefore, do not qualify as bona fide administrative employees exempt under section13(a)(1) of the Fair Labor Standards Act, 29 U.S.C. §213(a)(1).

Administrator's Interpretation, p. 8.

Subsequent to the issuance of the DOL's Administrator's Interpretation, significant litigation ensued over the "exempt" status of MLOs working for banks and mortgage companies throughout the country. The Mortgage Bankers Association filed suit against the Secretary of Labor challenging the Interpretation, which ultimately resulted in the Supreme Court overwhelmingly (8 to 1) upholding the DOLs Administrator's Interpretation, *Perez v. Mortgage Bankers Association*, 1355 S.Ct. 1199 (2015). Apparently in recognition of their potential liability for continuing to treat MLOs as "exempt" employees, in approximately December 2011, Citizens issued a memorandum to its MLOs advising that Citizens was going to reclassify MLOs as non-exempt employees entitled to overtime effective February 2012. *Ginter v. RBS Citizens Bank*, Case 1:12-cv-00008-M-PAS, January 9, 2012 (D.R.I.), Complaint, ¶37. Upon reclassifying MLOs as "non-exempt," hourly employees entitled to overtime, Citizens initiated its new Comp-Plans which included the new Commission Formula scheme, as detailed below.

**D. Commission Pay Formulas under the FLSA:**

Under the FLSA, an employer may compensate employees wholly or in part through payment of commissions. 29 C.F.R. §778.117. However, a non-exempt hourly employee receiving commissions must be paid overtime based on his "regular rate," which must include the hourly rate, plus any additional pay, as a result of commission earnings. *Id.* The Department of Labor further

provides guidance which expressly distinguishes between commissions paid to exempt employees, i.e., employees not entitled to overtime, and commissions paid to non-exempt hourly employees who must receive overtime pay.  Specifically, most commission paid employees are properly classified as exempt employees under Section 213(a)(1) (as interpreted in § 29 C.F.R. Part 541); the retail sales exemption, 29 U.S.C. §207 (as interpreted in 29 C.F.R. § 779.401-421); or the administrative exemption, 29 U.S.C. §213(a); or limited exemptions such as for amusement park employees and automobile sales employees.  29 U.S.C. §213(a)(3) and (a)(10). Special rules exist to compute commissions under the retail sales exemption authorized by Section 7(i) of the FLSA, 29 U.S.C. §207(i).  *See also* 29 C.F.R. §779.410-420.  To be entitled to the retail sales commission exemption, the employee must: (1) work for a retail service establishment selling retail goods or services; (2) be paid on a commission basis; (3) receive a regular rate of pay greater than one and on-half times the minimum wage rate; and (4) must receive more than half of the employee's compensation in less than one month, from commissions from goods or services sold. 29 C.F.R. §779.412. Notably, the retail sales exemption does not apply to MLOs because the sales of financial products (here, mortgages) do not constitute the sales of goods or services.  *Mitchell v. Kentucky Finance Co., Inc.*, 359 U.S. 290, 294-295 (1959).

Other employees who typically receive commissions may be subject to an administrative exemption.  Such employees must meet both the salary test, i.e., a minimum weekly salary of $455.00, as well as the "duties" test which sets out the duties such employees must principally perform.  As explained in the DOL's Administrator's Interpretation, administrative employee must perform work which is directly related to the management and general business operations of the employer.  29 C.F.R. §541.200(a)(2).  Further, the administrative exemption is "limited" to those employees whose primary duty is "to the administrative as distinguished from the production

operations of the business." Administrator's Interpretation, p. 6. Employees who meet the administrative exemption, are not entitled not overtime, but must be paid a weekly minimum salary, currently $455.00 per week.

Non-exempt hourly employees under the FLSA, also may be paid, in whole or in part, based on commissions. 29 C.F.R. §778.117. However, the DOL has specific rules which must be followed regarding the payment of commissions to non-exempt employees to ensure those employees receive overtime paid on the correct "regular rate," which must include commissions in addition to any weekly pay, regardless of the time period in which the commissions are actually dispensed, e.g., on a monthly basis. To that end, the DOL has issued regulations governing payment of commissions to non-exempt employees, 29 U.S.C. §778.117 through 121, which specify the proper payment of commissions to non-exempt hourly employees and expressly mandate the calculations for "deferred commission payments," i.e., commission payments paid other than on a weekly basis. 29 C.F.R. §778.119.

Further DOL regulations detail the required computations to provide additional overtime payments attributable to commission earnings for non-exempt employees who work overtime, where those commissions cannot be identified as having been earned in a particular work week. 29 C.F.R. §778.120. Additional DOL regulations authorize employers to make limited adjustments to previously paid commissions as a result of later reported sales or reductions in sales which accordingly affect the computation of previously paid commissions. 29 C.F.R. §778.121. Particularly as it refers to deferred commissions payments, the DOL regulations make clear that prior to the calculation of deferred commissions, the employer should "pay compensation for overtime at a rate not less than one and on-half times the hourly rate paid the employee, exclusive

of commissions." 29 C.F.R. §778.119.  Further, the DOL regulations for commissions paid to non-exempt, hourly paid employees provide:

> When the commission can be computed and paid, **additional** overtime compensation due by reason of the inclusion of the commission in the employee's regular rate must also be paid.  To compute this **additional** overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was warned.  The employee must then receive **additional** overtime compensation for each week during the period which he worked in excess of the applicable maximum hours standard.  The **additional** compensation for that workweek must not be less than one-half of the increase in the hourly rate of pay attributable to the commission for that week multiplied by the number of hours worked in excess of the applicable maximum hours standards in that work week.

29 C.F.R. §778.119 (emphasis added).

**E.  Distinction Between Exempt and Non-Exempt Employee Commission Formulas:**

Because of the different treatment between exempt and non-exempt employees who earn commissions, discussed in further detail below, the Department of Labor has expressly directed that non-exempt employees, who of course are entitled to overtime, must receive all of their straight time compensation at the rate agreed upon in order to be paid fully for a particular work week. Specifically, the DOL Field Operations Handbook provides as follows:

> **Straight-Time compensation to be paid in full**.
>
> If an employee who is paid an hourly rate works statutory overtime hours (whether or not the employer recognized them as overtime hours), the employer must pay the employee for all hours worked at the agreed rate plus at least an extra one-half time that rate for all overtime hours less the total wages actually paid.   Before an employee can be said to be paid overtime compensation due, he/she must be paid his/her straight-time compensation due for all hours worked under any express or implied contract or under any applicable statute.  *See* 29 C.F.R. §778.315…

Field Operations Handbook, DOL, §32j02.

The DOL also has made expressly clear of the distinction in treatment between exempt and non-exempt employees as it concerns proper commission formulas. On this issue, the DOL instructs as follows:

**Employee compensated on a commission basis.**

**(a)** Many employers, especially in retail enterprises, compensate certain employees wholly or in part on a commission basis. The methods of computation and payment involving commissions vary widely (S*ee* 29 CFR 779.413) and the determination of minimum wage/overtime compliance must be made on the facts of each case. The general principles (except in circumstances where section 7(i) [retail sales exemption] is applicable) are as follows:

**(b)** **If an employee paid wholly or in part on a commission basis is subject to overtime, the principles set out in 29 CFR 778.117 -.122 shall be followed.**

**(c)** **If an employee paid on a commission basis is exempt from overtime**, such as salespersons referred to in Section 13(b)(10) of the FLSA, the following shall be used in determining **whether the employee is paid in compliance with minimum wage requirements**:

  **(1)**                                   * * * * *

  **(2)**                                   * * * * *

  **(3)** Periodic draws against commission earnings within the pay (settlement) period need not equal the minimum wage. **Employers may credit these draw or guarantee payments against their minimum wage obligation when settling out the amount due employees at the end of the pay (settlement) period.** The following examples illustrate this principle. Assume a 4-week month and that a commission salesperson exempt from overtime works 50 hours a week (50 x $3.35 - $167.50):

  a. The employer has established payment of a weekly draw against commissions and a monthly pay (settlement) period. The salesperson draws $125 a week against earned commissions. By the pay (settlement) date, the commission salesperson has earned $950 in commissions. The employer pays the salesperson $450 ($950 - $500 previously paid by weekly draw). This commission salesperson has been paid in compliance with the monetary requirements of the FLSA by being paid at least the minimum wage for all hours of work during the pay (settlement) period.

* * * * *

Field Operations Handbook, DOL, §32b05 (emphasis added).

Based on the principle of "expression unius est exclusion alterius," i.e. that which is not included should be inferred to be expressly excluded, the DOL has made clear that a draw against commission where weekly pay is deducted from monthly gross commissions to bring the net weekly pay below the minimum wage is lawful for <u>exempt</u> employees, but <u>not</u> for non-exempt employees.

**III.    The Citizens MLO Commission Formula:**

**A.    Citizens Misclassification of MLOs as "Exempt" and Paid Solely Commission**

Prior to February 2012, Citizens classified MLOs as exempt employees, i.e. not entitled to or "exempt" from overtime payment, and Citizens kept no records of the hours worked by MLOs. MLOs received a "draw" against future commissions.  In other words, MLOs only net compensation was commissions.  *See* 2012 HLS Compensation Plan, *attached as* Exhibit 1, at CITIZENS0000680.  Monthly, Citizens calculated commission sales and deducted all draws paid from those commissions, and if, commissions did not cover the draw amount, Citizens carried over the "deficit" to reduce future commissions. [2] *Id.*

On March 24, 2010, the Department of Labor issued its Administrator's Interpretation No. 2010-1, determining Mortgage Loan Officers were not exempt employees under the FLSA administrative exemption.

---

[2] Of course, Citizens was required to comply with the FLSA regarding exempt employees, and had to ensure if an MLO generated low or no commissions, that the employee received on a monthly basis at least the minimum required salary to meet the exemption.

Apparently, as a result of the DOL March 2010 Administrator's Interpretation (and likely recognizing its future liability), and recognizing the MLOs were not otherwise exempt[3], Citizens re-classified all MLO employees as "non-exempt" effective February 2012. *See Ginter v. RBS Citizens, N.A.*, Case 1:12-cv-0008-M-PAS, p. 37 (January 9, 2012, D.R.I). As a result, as non-exempt employees under the FLSA, time worked by MLOs had to be recorded, Citizens was required to pay an hourly pay rate of at least the minimum wage to MLOs, and also was required to pay overtime for hours worked over forty (40) in a work week, at the rate of one and one-half times the regular rate of pay. *See* 29 U.S.C. §206 and §207.

Despite the change in classification of MLOs from exempt to non-exempt employees (requiring hourly pay and overtime pay), Citizens did not want to pay MLOs more than they had been paid when they were exempt employees, and were only paid commissions. To achieve as much of its goal as possible, Citizens created a new pay scheme whereby the new commission formula for the now non-exempt classified MLOs effectively eliminated all of the hourly pay earned by MLOs for 40 hours work and first 5 hours overtime. *See* 2013 HLS Compensation Plan, *attached as* Exhibit 2, at CITIZENS0000671. Plaintiffs will establish that this new Commission Formula is a pay scheme to evade FLSA requirements and, therefore, it violates the FLSA and State wage payment collection laws.

B. **Citizens Current Payment Scheme: Effectively Pure Commissions, Plus Minimal Half-Time for Overtime.**

As set out in the Offer Letter to MLOs and the Citizens Compensation Plan ("Comp. Plan"), Citizens provides an hourly wage to MLOs of $11.50 per hour, plus overtime for hours worked over forty (40) hours in a work week at one and one-half times $11.50 per hour, i.e., $17.25 per overtime

---

[3] Additionally, as salespersons of financial products – mortgage loans - MLOs are not eligible for the retail sales exemption under the FLSA, *See Mitchell v. Kentucky Finance Co., Inc.*, 359 U.S. 290 (1959).

hour worked. *See* Gary Brown Offer Letter, *attached as* Exhibit 3, at CITIZENS0001037.  Citizens pays MLOs their draw (regular hours and overtime) weekly. *Id.* At the end of every month, Citizens calculates the gross commissions generated by each MLO (mortgages x loan rate) and then deducts first forty (40) hours of weekly pay and 2/3 of the overtime up to 5 hours previously provided as a draw to the MLO during that month, as well as other deductions.  *See* Ex. 2, at CITIZENS0000671. Under Citizens' scheme, i.e., Commission Formula, the MLO then receives "net commissions," called "earned commissions."  Report, p. 37.  While the offer letters refers to the base compensation as an hourly wage, the post-2012 compensation plans refer to this amount as both base compensation and "Draw Amount." *See* Ex. 2, at CITIZENS0000671.

Based on Citizen's Commission Formula, the "Draw Amount" all wages and 2/3 overtime for the first five (5) hours of overtime per week earned (or paid as a "draw") during the commission month is "recaptured" by Citizens.  "The Draw Amount in its entirety shall be offset against Gross Commissions prior to a Participate earning any incentives under this Plan." (ECF Doc. 115, Ex. D, CITIZENS0000660, quote in Report, at 37).  Additionally, based on the net or "earned" commissions, purportedly in an effort to comply with DOL Regulations, Citizens calculates additional overtime due to the MLO based on the net commissions earned for that month.

However, when the MLO's gross commissions generated in the month are <u>less</u> than the wages and 5 hours overtime earned and paid for that month, then the MLO receive no commissions, as no "net" or "earned" commissions have been generated under the Citizens Commission Formula. And, where there is a negative difference between the gross commissions and the wages and 2/3 overtime deducted from gross commissions in that month, i.e., a "deficit" under the Commission Formula, the deficit carries over to the next month's MLO commission calculation.  In that following month, the Commission Formula is calculated based on the gross commissions generated

13

by the MLO in that month, reduced by the wages and 2/3 overtime for the first five (5) hours worked per week paid in that month, and then is further reduced by any "deficit" amount, i.e., any negative balance, from all of the MLOs prior months' commissions calculations.  See Report, p. 38, quoting Citizens Comp-Plan re "deficit" carry over to the following months commission calculations; *see also* Ex. 2 at CITIZENS0000671.

It is undisputed that Citizens Commission Formula deducts from gross monthly commissions all wages ("draw") earned and paid for the first forty (40) hours of work per week and 2/3 of the first five (5) hours of overtime earned and paid per week during the month.  Id.

Thus, through the operation of Citizens commission formula an MLO receives payment only of net or "earned" commissions, plus the half or overtime rate of their overtime pay (.5 x $11.50 for overtime hours only), plus one-half of their monthly commission overtime rate.  Other than the minor amount of one-half overtime under the Citizens scheme (or overtime in excess of 45 hours), MLOs are only paid commissions. The entire amount of the hourly wage up to 45 hours is kicked back to Citizens.

As a result, the new Citizens commission scheme is nearly the same as the Citizens prior commissions formula when MLOs were classified as exempt, were not paid any overtime and only were paid net commissions, less previous draws paid.  Simply put, before 2012 Citizens MLOs worked solely for commissions, and under the new Commission Formula, since 2012, other than minor, half-time rate overtime pay, the now non-exempt classified MLOs – who ostensibly receive hourly wages and overtime pay – work solely for commissions, plus minimal half-time pay for overtime hours, unless MLOs have reported hours over 45 in a week.  These facts are undisputed.

**IV.    <u>Citizens' MLO Payment Scheme is Unlawful under the FLSA</u>**

The correct question raised by the parties' competing motions for summary judgment is:

Whether Citizen's Commission Formula scheme for non-exempt MLOs, which deducts all previously paid wages and 2/3 overtime for the first 5 hours overtime worked, is lawful under the FLSA and State wage payment and collection acts?

As set forth below, the Citizens MLO pay scheme is unlawful because the wage recapture portion of the Commission Formula violates a fundamental tenet of the FLSA: an hourly employee must receive their wages "free and clear" without a direct or indirect "kick-back" to the employer. 29 C.F.R. § 531.35.

Citizens argument that an employer may use any formula to calculate commissions, regardless of complexity, percentage qualifications, etc., misses the essential requirement that no contract for wages <u>can</u> violate the FLSA and state laws setting for minimum wages due. *See, e.g., Genesis Healthcare Corp. v. Symczyk,* 133 S.Ct. 1523, 1537 (2013) (noting the non-controversial conclusion that FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract). Citizens' commission formula does just that, and all of the law and cases relied upon by Citizens does not alter the Comp Plan's illegality.

All of Citizens' argument is inapposite, as all of the law, DOL opinion letters and cases upon which it relies, only apply to exempt employees. Since February 2012, Citizens has classified – and understood – that its MLO employees are non-exempt employees who must receive hourly wages and overtime pay for all hours worked over forty (40), and Citizens makes no argument that the MLOs remained exempt from FLSA's overtime provisions despite its reclassification decision. As set forth below, Citizens scheme to create a compensation plan that effectively only paid commissions to non-exempt employees – by deducting or recapturing wages and 2/3 overtime for

the first five (5) hours of weekly overtime - violates the principles of the FLSA and state wage payment and collection laws.[4]

**A.** **Citizens Payment Scheme Unlawfully Deducts Wages and Overtime Pay from Gross Commissions**

Based on the DOL distinction, explained above, between non-exempt and exempt employees, certain commission plans, lawful for exempt employees, are violative of the FLSA when used for non-exempt employees. That is the case here. As the DOL example above establishes for <u>exempt employees</u> i.e., employees exempt from overtime, an employer lawfully may deduct a weekly draw against monthly gross commissions. *See* U.S. Dept. of Labor Opinion Letter WH-129, 1971 WL 33066 at *1 (March 4, 1971 (determining an exempt employee may be paid a "guaranteed payment of a <u>salary</u> and/or draw plus extra compensation from commissions earned and paid in accordance with a formula" as long as "any commissions held back as a reserve are paid to the employee (or any deficits cancelled) in an end of the year settlement."); *See*, *also* U.S. Dept. Of Labor Opinion Letter, FLSA 2006-43 (November 27, 2006) (explaining employees with administrative exemptions may be paid based on a formula consisting of a guaranteed salary plus commission from which the salary is deducted because the "regulations allow payment in addition to the minimum salary amount to **exempt** employees" and because "the employment arrangement includes a guarantee of at least the required amount paid on a **salary** basis, the [employees] compensation structure, as described, <u>meets the salary basis requirements for exemption</u>." *See* 29 C.F.R. §541.604(a)…(Emphasis added).

---

[4] Its worth noting further that because Citizens' drawn amounts and commission payments were themselves subject to recapture and recoupement even after an employee's termination, **none** of the money provided to Plaintiffs was paid "free and clear." *See* Ex. 2, at CITIZENS0000670 (noting that any payments, including advances, i.e., draw amounts, that are never "earned" constitute overpayments and can be recovered either from the employee's final paycheck **or independently**).

As the DOL makes clear in the above determination, a commission formula used for <u>exempt</u> employees which provides a <u>guaranteed salary</u> may be deducted from gross commissions earned.

Distinguished from these lawful commission formulas utilized for employees who are <u>exempt</u> from overtime and who are paid a salary, the DOL also makes clear, that hourly non-exempt employees <u>cannot</u> be paid using a formula which deducts a "guaranteed draw" from gross commissions. In the only DOL guidance related to the interplay between minimum wage and commission payments for non-exempt employees, the DOL has made clear that a "recoverable draw" does not satisfy FLSA's minimum wage requirements. The facts in the DOL Opinion Letter are remarkably similar to the Citizens MLO Commission Formula.

The DOL determined, as follows:

Your letter indicates that your sales personnel are compensated by a method known as "draw versus commission". You state that under this method of compensation you "guarantee a salesperson" $40.00 for each 40-hour workweek, which the salespersons get "each week regardless of their sales". Their total compensation is actually computed, however, on the basis of a commission of 5% for all goods sold. Your practice is to compute the commissions earned in a given week and subtract therefrom the $40.00 amount paid, provided there were sufficient commissions earned. In weeks where there are insufficient commission earned, you pay the $40 and subtract the deficit in subsequent weeks.

\*\*\*\*\*

Your method of computing commission earnings does not meet the Act's minimum wage requirement.

\*\*\*\*\*

. . . the compensation paid for each workweek, by whatever method computed, must provide not less than the specified minimum wage for every such hour in that workweek. Thus, it has long been the rule that an employee paid on a commission or piece rate basis cannot in any workweek be considered to have earned less than the amount specified in the law for the hours worked in that workweek, and that payment for such hours at not less than the statutory rate must be made <u>free and clear</u> on the pay day for that week. Accordingly, where the employee is entitled under the law to more pay for any workweek than the commission or piece rate earnings allocated to that workweek under the method of computation used, the additional amount must be paid him on the pay day when it is due and may not be

recovered by the employer through any offset method by which commission or piece rate earnings due the employee for another workweek are correspondingly reduced.

Obviously, in the specific fact situation set out in your letter, the requirements of this rule could not be satisfied by any arrangement under which a draw or offset against commission earnings due for other workweeks is used as the method of making up the amounts required under the statute for any workweek with respect to which the commission earnings as calculated are insufficient to yield the amount which the law requires.

It is clear that commission payments computed weekly (or monthly, if more convenient) may be used as the sole method of compensation if the situation is one in which, unlike your example, the payments for each workweek are sufficient to meet the minimum wage requirement for that workweek. If it is not certain that this will always be so, compliance with the Act would be assured by a guarantee that for any workweek when they are not, the employee will be paid an additional amount sufficient to make up the difference without any corresponding reduction in payments allocable to any other workweek.

Dept. of Labor Opinion Letter (August 14, 1962), 1962 DOLWH LEXIS 187 at *3-4 (emphasis added).

In other words, the DOL makes clear that an employer may use a draw on commission payments to satisfy the minimum wage, only where an employee is guaranteed to receive that commission. If the employee is not guaranteed a commission payment or is not eligible for a commission payments that will be retroactively attributable to that week, **the employee must be paid an additional amount sufficient to satisfy the minimum wage for that week which is not subject to recovery by the employer through any offset method by which commission or piece rate earnings due the employee for another workweek are correspondingly reduced.** Dept. of Labor Opinion Letter (August 14, 1962), 1962 DOLWH LEXIS 187 at *4 (emphasis added).

In other words, the DOL's opinion letter makes clear that an hourly employee's weekly minimum wage entitlement may only be satisfied with a draw on commission when the draw

amount up to the minimum wage entitlement is guaranteed. Without such a guarantee, i.e., if the entire amount of the draw is subject to recovery, the minimum wage requirements would not be met.

The court in *Perez v. Westchester Foreign Autos, Inc.,* reached the same conclusion, holding that a weekly draw paid to employees in addition to a sub-minimum wage could not be used to help satisfy the minimum wage obligation, because "a minimum wage must be paid free and clear of any deductions or kickbacks to the employer."  2013 U.S. Dist. LEXIS 35808 *26 (S.D.N.Y. 2013).

In *Perez*, commissioned employees filed suit against their employer alleging, inter alia¸ violations of the FLSA minimum wage provisions.  The employees were paid $150 in salary per week, "plus a draw of $150 against future commissions.  In the event that a sales consultant was paid a $150 draw during a week for which their sales were under $150, that draw would later be deducted from their commissions in the next week they made commissions of $150 or more." *Perez,* 2013 U.S. Dist. LEXIS 35808 at *4-5.  "To illustrate . . . for the pay period ending on December 19, 2010, Perez was paid $150 in salary, plus $61.54 in commissions, plus $88.46 as a draw, totaling the weekly minimum of $300.  The following week, for the pay period ending on December 26, 2010, Perez was paid $150 in salary, plus $934 in commission, less the $88.46 paid to Perez as a draw in the previous pay period, totaling $995.54 in gross wages." *Id*. The Southern District of New York held that because the draw was required to be paid back, it was not provided free and clear, and thus did not constitute wages for purposes of FLSA minimum wage compliance.  Thus, the court found that the draw did not constitute wages for purposes of minimum wage compliance.  *Id*. at 27-28.

As further explained below, the weekly Commission Formula found unlawful here by the DOL is precisely the same Commission Formula used by Citizens, on a monthly basis.

**B.  The Special Master Erred in Concluding Citizens MLO Commission Formula Does not Violate the FLSA.**

The Special Master accepted Citizens posited question, then analyzed Citizens Comp-Plan based on when commissions are "**earned**."  He found that MLOs commission are only "earned" after gross commissions have been "adjusted" by the deduction of previously paid wages and the first five (5) hours of overtime.  Report, p. 38.  Then based on this definition of "earned" commissions, the Special Master concludes all of Plaintiffs' arguments are without merit.  Report, p. 41.

The Special Master's focus on "earned" commissions is misplaced and tautological.  Where gross commissions have been generated, specifically, loans sold and closed, those commissions are "earned" by the MLOs in the common sense meaning of that word, i.e., all labor necessary to obtain the sale of the loans has been concluded.  Citizens Comp-Plan uses the term "earned" commission to mean "payable."  A much more accurate – and consistent – way to analyze Citizens Comp-Plan is to distinguish between "gross" commissions and "net" commissions, i.e., commissions payable (or "earned" in Citizens parlance).

Further, the Special Master's analysis missed the point: Is Citizens Comp-Plan – the Commission Formula – lawful for non-exempt MLOs? Or, more specifically, can Citizens lawfully deduct the "Draw Amount" of $11.50 per hour and the first five (5) hours of overtime paid from Gross Commissions, and only pay MLOs net commissions ("earned commissions" in Citizens Parlance), plus half-time for hours worked over forty-five (45) per week.  Instead of looking to the actual application of the Commission Formula, the Special purely performs a surface "analysis,"

looking at Citizens definition of "earned" commissions, while ignoring the actual mechanism of the Commission Formula to see if it complies with the FLSA.

Under Citizens Comp-Plan, MLOs are solely paid as hourly employees. Further, the Special Master errs in finding that Citizens has not actively sought to recover any "deficits", i.e., wages paid in excess of commissions. ("Every MLO was paid an hourly wage and never had to repay that wage." Report, p. 42; *see also* p. 36-37.) First, as explained above, Citizens' Offset of wages when calculating net commissions violates the FLSA because wages were not paid "free and clear." Instead they were deducted from gross commissions, **or** added to a running and accumulating deficit owed to Defendants.

Second, Citizens expressly reserves the right in the Comp Plan to recover any "deficit" after the MLO terminates employment. *See* Ex. 3, at CITIZENS0000670. ("If the participant receives any incentives or payments (including advances) under the plan and Citizens management subsequently determines that the participant did not satisfy the conditions identified in this plan or any addendum for earning the payment, the participant will have been overpaid and will have received monies which were not earned and to which the participant was not entitled… In the event a participant's employment with Citizens terminates for any reason, any monies to be paid to the participant will be subject to an adjustment for any prior overpayments, in accordance with applicable law. Furthermore, the participant agrees that Citizens may make an adjustment from his/her future earnings, including from the participant's final paycheck in accordance with applicable law, or recover such overpayments.").  And Citizens did claw back or recapture all wages, every month MLOs generated sufficient commissions to do so.[5]  That is how the Comp-Plans operated.

_____

[5] While it is not necessary for a recoverable draw to be recapturable post-termination in order for it unlawful to use that draw to satisfy the minimum wage requirements under the DOL's guidance, *Perez,* and 29 C.F.R. § 531.35, Plaintiffs

Also, the Special Master asserts that because gross commissions are not earned compensation, Plaintiffs recapture claims fail. Report at 41-46. Again, the Special Master missed the mark. The issue is not how the Commission Formula labels "commissions," rather it is whether the Draw Amount – hourly wages and five (5) hours of overtime – lawfully may be deducted from gross commissions earned by non-exempt MLOs in order to satisfy the requirement that minimum wages be paid free and clear. And the answer is: No.

First, none of the cases relied upon by Citizens supports such a deduction or offset in commission to non-exempt hourly employees entitled to overtime. Second, the Special Master errs in failing to distinguish between exempt and non-exempt employee commission formulas, and instead focuses on Citizens self-definition of "earned" commissions. Specifically, the Special Master erred in finding:

> No portion of this [the MLOs] hourly wage pay was "kicked back" to Citizens because the "Draw Amount" was not an offset to **earned** commission. Thus, contrary to Plaintiffs' assertion, hourly pay did not "operate as a draw" even if it was labeled as such in the Comp Plan.

Report, p. 43.

But ultimately, the issue of gross versus net commission is as contract argument, not a statutory one. All of the Opinion Letters of the DOL—including those relied on by Defendants—distinguishes between plans which include a "guaranteed minimum wage" and those which do not. Because Defendants used the "draw amount" as a running and accumulating deficit, regardless of whether an MLO earned enough in gross or net commissions to repay the draw, the draw amount was not guaranteed—it was a rather a continuing and accumulating deficit owed to Defendants under the compensation plans. The Special Master misses the issue of whether Citizens deduction

---

certainly did not concede that such never occurred, and the only evidence in the record as to that fact are the Compensation Plans which provide Citizens with the right to recover unearned payments—including draw amounts—post-termination. *See* Ex. 2, at CITIZENS0000670.

of the Draw from earned (used with the common sense definition) gross commissions was lawful, because the Special Master focuses on whether the draw was deducted from gross versus net commissions, rather than focusing on the relevant factor—whether or not the payment of the "draw amount" resulted in a debt or deficit to Defendants. Because it did, the logic of the 1961 Opinion letter, *Perez,* and *Takacz* hold that the weekly pay was not paid "free and clear" and cannot be used to satisfy the minimum wage obligation.

Contrary to the Special Master's reading of *Perez, Perez* did not turn on whether the kickback came from a commission that had already been "earned" under a compensation plan versus whether the kickback came in the form of a deduction from a gross commission amount that was only deemed "earned" after the kickback was made. Rather, *Perez* made clear that a kickback is unlawful whether or not it is done ***directly***—i.e., from earned commissions—or ***indirectly,*** i.e., from commissions in which all conditions precedent for earning the commission— i.e., the closing of sales—have been completed. *Perez,* 2013 U.S. Dist. LEXIS 35808 at *28. *Perez* does not address whether the Defendant considered the commissions from which the draw was deducted earned before or after the deductions were made, because this distinction is irrelevant to whether the amount in question was paid free-or-clear. *Id.* at *4-6. This is because such a distinction would **<u>invite</u>** savvy employers to make all deductions from a commission **<u>before</u>** the contract stated that the commission was earned, while less-savvy employers would admit that the commission was earned once the sales underlying the commission were completed, then make any deductions, and that employer would have committed a minimum wage violation. While there are a few provisions in FLSA that can be waived or modified by contract, the obligation to pay minimum wages free and clear is not one of them. An employer cannot avoid a minimum wage obligation through clever contract drafting. Either a wage is paid free and clear, or it is not. Here,

because the hourly wage was a recoverable draw that would remain an obligation to the employer even if the employee closed no loans and was eligible for no commissions, the Defendant did not pay any "guaranteed wage" and the draw amount could not be used to satisfy the minimum wage obligation.

The Special Master exclusively relies on the language of Citizens Comp-Plans ("earned" commissions) and purports to distinguish the 1962 Department of Labor Opinion letter, first by failing to understand the FLSA legal principles identified and the express reasoning set out by the DOL, and second, by attempting to create distinctions between the Compensation Plan interpreted by the DOL, labeling it as addressing "earned" commissions, instead of recognizing that Plan is the exact same as the Citizens Comp-Plans, and, third, by relying on a 1971 DOL Opinion Letter which approves a lawful commission formula for salaried, exempt employees, permitted under the FLSA, in which the payment of a guaranteed salary plus an additional fluctuating commission did not violate the "salary basis" test for purposes of finding an administrative exemption. There is simply no reason to apply the 1971 Opinion Letter which deals with exempt employees and the effect of a recoverable draw on the "salary basis" test with the instant scheme in which Citizens lowers the amount of commission paid if an employee works overtime, which has the undeniable effect of decreasing an employee's pay when they work overtime in order to offset the overtime pay requirement and frustrate the purpose of FLSA's overtime pay requirement.

To avoid the confusion raised by the Special Master in his Report, below is a table comparing the DOL Unlawful Plan in the 1962 Opinion Letter with the Citizens Compensation Plan:

| Component | DOL Unlawful Plan | Citizens MLO Comp. Plan |
|---|---|---|
| Pay Method | Draw versus Commissions | Draw versus Commissions |
| Base Pay Rate | $1.00 per hour | $11.50 per hour |

| Gross Commission Rate | 5% goods sold per week | Xx Bass Points per sale per month |
|---|---|---|
| Commission Formula "Net Commissions" | Gross commissions minus wages paid (now base total monthly rate)[6] | Gross commissions minus wages paid (now ex base total monthly rate) |
| Commission Formula When gross commissions less than wages paid | If Gross commissions – wages zero or less, no commission paid. "Deficit" carried over to future. | If Gross commissions – wages zero or less, no commission paid. "Deficit" carried over to future. |
| Commission Formula When gross commissions exceed wages paid | Gross commissions (5% of sales) – wages = amount greater than zero, "earned" commission paid | Gross commissions – wages and other deductions = amount greater than zero, "earned" commission paid |

And, for further assistance, below is the table exactly as set out by the DOL with additional 4 columns, noted by asterisks.

| DOL UNLAWFUL COMP PLAN | | | | | | | |
|---|---|---|---|---|---|---|---|
| Week | Sales | Gross Commissions (5% of Sales) | Guaranteed Wages* | Paid | Commission Formula* | Net Add'l Commission | Deficit (Carry Over)* |
| 1 (A) | 1,000 | $50.00 | $40.00 | $50.00 | *50-*40 | *10 | * |
| 2 (B) | 400 | $20.00 | $40.00 | $40.00 | *40-*20 | 0 | -20 |
| 3 (C) | 1,000 | $50.00 | $40.00 | $40.00 | *50-*40-*10 | 0 | *-10 |
| 4 (D) | 1,000 | $50.00 | $40.00 | $40.00 | *50-*40-*10 | 0 | 0 |
| 5 (E) | 1,000 | $50.00 | $40.00 | $50.00 | 50-40-10 | *10 | 0 |

As the above from the DOL Opinion Letter makes clear, the employer in that case deducted the "guaranteed" weekly wages ($40.00) from the gross commissions in each week. Where the commissions were less than the guaranteed wages, the employer found a "deficit" or offset, which

---

[6] "Your practice is to compute the commissions earned in a given week and subtract therefrom the 40 amount paid ([the "draw"] based on 40 wages for each 40 hour work week) provided there were sufficient commission earned.

was carried over to the future weeks.  Thus, although the employee in week 2 only had $20.00 in gross commissions, he received the "guaranteed" wages of $40.00, and a $20.00 deficit was carried over to weeks 3 and 4, and again deducted from commissions earned in those subsequent weeks. This is the Commission Formula the DOL determined failed to pay the employee "free and clear."

Citizens Commission Formula is precisely the same as the above commission formula found by unlawful by the DOL, except Citizens calculates its Commission Formula monthly, instead of weekly. By having the base pay serve as a recoverable and non-forgivable draw, Citizens failed to pay Plaintiffs the minimum wage free and clear, and accordingly, Plaintiffs request that the Court reject  the Special Master's Report and Recommendation as to the Plaintiffs' FLSA minimum wage recapture claims.

C. **The Special Master Erred in Failing to Find Citizens Scheme of Deducting Hourly Pay and 2/3 Overtime from Gross Commissions Did Not Violate the FLSA**

The Special Master found, again based on Citizen's definition of "earned commissions," that the deduction of wages and the first five (5) hours of overtime from gross commissions was lawful under the FLSA and did not "artificially depress [ ] the regular rate."  Report, p. 45. Accordingly, the Special Master concluded, "Citizens compensation policies paid overtime pay at a single rate that did no vary with overtime hours worked, and the overtime pay was later supplemented with commissions attributable to earned commissions, using a framework consistent with federal regulations."  Report at 46.  Although the Special Master is correct that Citizens initially paid overtime based on the $11.50 per hour agreed pay, and then purported to supplement overtime pay based on commissions "earned," the method used by Citizens violated the FLSA because it resulted in an overtime rate that decreased in inverse proportion to the hours worked.[7]

---

[7] Defendants also violated the overtime provisions in two additional ways: First, for the same reason it violated the minimum wage requirement, First, by deducting 2/3 of overtime, i.e., straight pay of overtime from gross commissions, Citizens failed to pay overtime free and clear in violation of 29 C.F.R. § 531.35.  Second, by deducting the first forty

The FLSA requires employer to compensate employees at least 1.5 times their regular rate for each hour worked beyond 40 per workweek.  Defendants' compensation plan violates the Act because it reduces the commissions earned by two-thirds of the overtime earned by an employee, thereby reducing the pay for regular hours to make up for the 150% overtime rate that must be paid. Such a compensation plan is unlawful. *See Reich v. Midwest Body Corp*., 843 F. Supp. 1249, 1251 (N.D. Ill. 1994) ("Overtime rates cannot be avoided by manipulating the pay for regular hours or otherwise reducing the pay for regular hours to make up for the 150% overtime rate that will have to be paid."); *Frank v. McQuigg*, 950 F.2d 590, 595 (9th Cir. 1991) (an employer may not "arbitrarily mandate lower basic wages in order to pay statutorily required overtime wages").

Since FLSA was enacted, employers have attempted to evade the overtime requirement through the use of creative accounting and other measures which have the practical effect of reducing or eliminating the obligation to pay 1.5 times the regular rate for each hour worked over 40 hours per workweek. To prevent this, the DOL has issued regulations 29 C.F.R. §§ 778.500-502, providing examples of "Devices to Evade the Overtime Requirements.

One such example is the pseudo bonus, in which an employer sets a low hourly rate but provides a bonus which decreases as the number of hours worked increases. 29 C.F.R. §778.503. The Department of Labor has similarly made clear that an employer may not make deductions from pay when such deductions only occur during overtime workweeks.  Dept. of Labor Advisory Opinion, February 16, 2001, 2001 DOLWH LEXIS 17, *9. ("Deductions made only in overtime workweeks, or increases in [wage deductions] during overtime workweeks compared to non-

---

(40) hours pay in any overtime week, Citizens violated the FLSA which requires that straight time compensation – at the agreed rate, i.e., $11.50 not the minimum wage rate, first must be <u>paid in full</u> in any overtime week.  29 C.F.R. §778.315, Dept. of Labor Field Operations Handbook, §32j02 ("If an employee who is paid an hourly rate works statutory overtime hours…, the employer must pay the employee for all hours worked at the agree rate plus overtime.")

overtime workweeks, are considered manipulations to evade statutory overtime requirements which are prohibited.") (emphasis added); see also 29 C.F.R. §537.37(a).

In *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945), an employer attempted to evade the overtime requirements of the FLSA by setting an artificially low rate along with time and one-half of the low rate for overtime hours. However, the employees were also paid on a piece rate basis where the average pay from being paid on a piece-rate basis was higher than both the guaranteed regular and overtime earnings. The employer then paid the difference between the piece rate pay and the "guarantee" pay (including both regular and overtime compensation) as additional piece-rate compensation. But as a consequence of paying employees the additional compensation, regardless of whether they worked overtime or not, employees were not actually paid 1.5 times their regular rate for all hours worked. Instead, their compensation came from the piece-rate system, which paid the same regardless of the number of hours worked in a workweek. Despite the fact that the employer labeled certain pay overtime (i.e. the employer paid overtime on the lower artificial rate), the overtime did not actually increase the net pay of the employee because the piece-rate pay which the employee received, which was actually the true basis for the employee's pay, was reduced by an amount equal to the straight time and overtime earnings provided pursuant to the artificially low rate. Such a system "allow[ed] respondent to escape completely the burden of a 50% premium for the [overtime] hours so worked and prevents the stackers from receiving the benefits of such a premium as Congress intended. Thus by a mere label respondent would be enabled to nullify all the purposes for which § 7 (a) was created." *Id.* at 426.

The Ninth Circuit Court of Appeals recently found that a "diminishing bonus" which decreased when an employee worked overtime was an unlawful scheme to avoid the overtime. *Brunozzi v. Cable Communs., Inc.,* 851 F.3d 990, 996-97 (9th Cir. 2017).

In *Brunozzi,* the Ninth Circuit determined that the "bonus" was unlawful by comparing the results between a non-overtime week and an overtime week. In a non-overtime week, the Ninth Circuit found that the employee was paid (1) Piece Rate Total (2) plus a Production Bonus equaling 1/6 his Piece Rate Total. In order to get the regular rate, the two components would be added together and divided by the hours worked. *Id.* at 996-997.

In an overtime week, the employee was paid a (1) Piece Rate Total; (2) A Diminished Production Bonus, which is equal to the Production Bonus (1/6 the Piece Rate Total, as above) minus the Overtime Due on the Piece Rate Total (i.e., for each overtime hour worked, half of the Piece Rate Total divided by the total hours worked per week); plus (3) Overtime pay for each overtime hour worked calculated at half the sum of the Piece Rate Total and the Diminished Production Bonus divided by all hours worked.  *Id.* at 997.

The Ninth Circuit held that because the Production Bonus formed part of the employee's income in normal, non-overtime weeks, diminishing or eliminating that bonus if an employee works overtime resulted in the employee being paid "at a reduced hourly rate during weeks when he works overtime." The Ninth Circuit held that this was unlawful: "**An agreement, practice, or device that lowers the hourly rate during statutory overtime hours or weeks when statutory overtime is worked is expressly prohibited under the regulations promulgated by  the DOL interpreting the FLSA."** *Id.* at 997. Those regulations state that the "parties cannot lawfully agree that the rate" that is applicable to a particular type of work" "shall be lower merely because the work is performed during the statutory overtime hours, or during a week in which statutory overtime is worked." 29 C.F.R. § 778.316. Likewise, the DOL states that "the hourly rate paid for the identical work during the hours in excess of the applicable maximum hours standard cannot be lower than the rate paid for the nonovertime hours **nor can the hourly rate vary from week to week inversely with the**

**length of the workweek.**" 29 C.F.R. § 778.500(b). "Agreements or practices that do this are ineffective." *Brunozzi,* 841 F.3d at 997.

Here, the effective hourly rate varies from week to week inversely with the length of the workweek, which we can determine by using the same analysis as was done in *Brunozzi,* applying it to the example MLOs used by the Special Master at p. 13 and p. 15, MLO Brown (Overtime No, Commissions Yes), and MLO White (Overtime Yes, Commissions Yes).

MLO Brown received $1,840 as his base compensation/draw amount for 4 weeks of 40 hours each, plus a $5000 gross commission, which was offset by the draw amount, for a net commission of $3160 and total compensation of $5000. Divided by 4, this comes out to $1250 per week, which, divided by 40, comes out to an hourly rate of $31.25 per hour. *See* Report at 13.

MLO White worked 20 hours of overtime in the month or 5 overtime hours per week, i.e., four 45-hour weeks. He received $1840 as his base compensation/draw, $345 in overtime pay on his base compensation, a gross commission of $5000, which was offset by the base draw amount plus 2/3 of the overtime pay ($1840+230=$2070), for a net commission of $2930, plus overtime based on commission of $162.80, for total compensation of $5277.80. Divided by 4, this comes out to $1,319.45, which, divided by 45, comes out to $29.32 per hour.

Thus, MLO Brown, who did not work overtime, was paid an hourly rate of $31.25 per hour for the same work as MLO White, who, because he worked overtime, and because Defendants deducted 2/3 of that overtime from the same $5000 in commission that MLO Brown earned, only was paid an hourly rate of $29.32. In other words, by working more, MLO White was **paid less**. Such a scheme clearly is diametrically opposed to the mission and purpose of the FLSA, which requires that an employee who works overtime hours be paid a higher average hourly wage, not a lower one.

Not only is an employee who works overtime receiving a lower hourly wage than an employee who does not work overtime, the more overtime the employee works, up to 5 hours, the less the hourly wage is. Consider an MLO Gray who, instead of working 5 hours per week of overtime, only worked 2 hours of overtime per week. Assuming he made the same $5000 commission as MLO Brown and MLO White, MLO Gray would have received $1840 as his base compensation/draw, $138 for 8 hours of overtime on his base compensation, $5000 in gross commissions, minus the offset of the base and 2/3 of the base overtime or $1,932 ($1840 + (2/3 * 138)), for total net commission of $3,068, plus overtime based on commission of $68.17, for total monthly compensation of $5114.17. Divided by four 42 hours week, MLO Gray's average hourly rate would be $30.44.

Accordingly, under Citizens Commission Formula, MLOs who are paid according to the following pattern when they work overtime:

- MLO Brown – worked 40 hours/week – hourly rate is $31.25;

- MLO Gray – worked 42 hours/week – hourly rate is $30.44;

- MLO White – worked 45 hours/week –hourly rate is $29.32;

As a compensation plan in which the hourly rate varies inversely with the length of the workweek, and in which an employee working overtime receives a lower hourly rate than an employee who does not work overtime, the compensation scheme is unlawful under the DOL's regulations interpreting FLSA.

Because FLSA looks at realities, not labels, and because it is axiomatic that parties cannot agree to evade through contract FLSA's statutory overtime requirements, *see, e.g., Barrentine v. Arkansas-Best Freight Sys.,* 450 U.S. 728 (1981) ("FLSA rights cannot be abridged by contract"), that Citizens made MLOs "agree" to the above compensation scheme provides it with no defense.

Accordingly, Citizens cannot claim as a defense that its contract permits it to deduct overtime wages due from gross commissions before it announces that a commission is earned, if the effect of that contract would be that the "**hourly rate var[ies] from week to week inversely with the length of the workweek.**" 29 C.F.R. § 778.500(b). Every such pseudo-bonus or similar evasion is protected by a contract that purports to allow the bonus to be calculated in that matter; here, the question is not the contents or variables in Citizens Commission Formula, and what that means as to whether a commission was earned or not earned, but **rather**, that this Commission Formula is substantively unlawful under FLSA.

That this is true and obviously true is apparent because under the Special Master and Citizens Bank theory, Citizens could have had a Commission Formula that included any variable it wanted in calculating net commissions from gross commissions, including deducting the Queen of England's age times the LIBOR rate, the number of rushing yards for that month's leading NFL running back, or, for instance, by deducting the exact amount that Citizens would otherwise owe in overtime on those commissions.

Under this scenario, and under the Special Master's analysis, Citizens could have implemented a Commission Formula whereby MLO White worked 20 hours of overtime in a month, in which he made a $5000 gross commission, and where he received $1840 as his base/compensation draw, $345 in overtime pay on his base compensation, a gross commission of $5000, which was offset by the base draw plus the entire amount of base overtime pay, plus a figure of $163 that Citizens Bank referred to as a Secret Deduction and whose calculation Citizens Bank, appropriately, kept secret, with MLO White's commission only being deemed "earned" under the compensation plan after these deductions were made, resulting in a net commission of $2,652, with Citizens Bank then paying overtime on commission of $147.33 ($2652 ÷ 4 ÷ 45 ÷ 2 * 20 OT hours),

for total compensation of $4,984.33. Under this scenario, and under the Special Master's analysis, MLO White would have received all the pay and overtime compensation he was due, because he would have received $1840 in base pay, $345 in overtime on his base compensation for 20 hours of overtime at $17.25 an hour, and an additional $147.33 in overtime on his $2,652 commission, but somehow, because of Citizens Bank "Secret Deduction" applied to his gross and **unearned** commission, he would have received $15.67 less than MLO Brown, who did not work any overtime.

This is not how overtime is supposed to work.

But, if the above scenario is unlawful, it demonstrates that manipulating a commission formula to deduct the amount of overtime pay that has been or will be received prior to the commission being "earned" is no defense to a claim that an employer has evaded the overtime requirement by implementing a pseudo-bonus. That Citizens did not deduct the **full** amount of the overtime paid in the instant case does not save them, as the **only** argument that Citizens has made— and the only argument that the Special Master has made—as to the lawfulness of Citizens' overtime compensation plan is that the overtime pay deductions were made to gross commissions before they were earned pursuant to Citizens' Compensation Plans. But a contract that pays employees a lower rate in order to offset the cost of overtime is an unlawful one under FLSA, regardless of whether it offsets the entire amount of the overtime paid, half the overtime paid, or a quarter of the overtime paid.

Accordingly, Plaintiffs request that the Court reject the Special Master's Report and Recommendation with respect to Plaintiffs' Overtime Recapture Claim.

Additionally, **because** of Citizens Bank's plan in which it carries over previous month's draw amounts to subsequent months, Citizens underpays overtime because it deducts

An example of how the Citizens Comp-Plan works in practice establishes that it is in violation of the FLSA overtime requirements – and shows exactly why Citizens cannot use the overtime commission formula authorized by the DOL for non-exempt employees in combination with the draw against commission formula authorized by the DOL for exempt employees.

In this example, attached as Exhibit 4, MLO A earns no commissions in Month 1 and Month 2 and, as a result, has "deficits" (gross commissions less wages and overtime for 5 hours) which are carried over to Month 3; MLO B does not work in Month 1 and Month 2, only works in Month 3, and has no carry over deficits. In Month 3, MLO A has gross commissions of $10,000.00; also in Month 3 MLO B has gross commissions of $10,000.00.

Over 3 months, MLO A generated $10,000.00 in commissions (all in Month 3), and had a total Draw Amount of $6,422.50. In Month 3, MLO B also generated $10,000.00 in commissions, but had not prior deficits, so only had a Draw Amount of $1,995.00 for Month 3. Because MLO A had deficits in Month 1 and Month 2, and those deficits, along with the Draw Amount in Month 3, under Citizens Comp-Plans must be deducted from MLO A's Month 3 commissions, results in MLO A received net commissions of $3,557.50.

MLO B who had no deficits to carry over, only has a deduction from gross commission of his Month 3 Draw Amount of $1,995.00, resulting in net commissions of $8,005.00.

Next, the additional commission overtime must be calculated. *See* 29 C.F.R. §778.120. MLO A and MLO B had identical weekly hours in Month 3, including 2 weeks working 45 hours, or a total of 10 hours of overtime, but their additional commission overtime due in Month 3, pursuant to Citizens Comp-Plan, must be based on their "earned," i.e. net commissions. That is done by taking their earned or net commission multiplied by 12 months, and divided by 52 weeks to obtain their weekly earnings in the month. Based on their "weekly" additional commission

earnings, MLO A earned $825.58 per week extra, and MLO B earned $1,847.30 per week extra. Then for each of the 2 overtime weeks where both MLOs worked 45 hours, the weekly commission amount is divided by 45 hours, yielding the hourly rate: for MLO A, $18.35 per hour; and for MLO B $41.05 per hour. Then that hourly rate is multiplied by the overtime weekly hours, 5 overtime hours in week 2, and 5 hours in week 4, and the half time rate, .5.

Based on the above calculation, which is obtained from the DOL regulations, 29 C.F.R. §778.119, "Deferred commission payments – general rules" and §778.120(a) "Deferred commission payments not identifiable as earned in particular work weeks," which Citizens states it uses, *see* Citizens Memorandum of Law in Support of Defendant's Motion for Summary Judgment (ECF Doc. 116, p. 7), MLO A receives additional overtime of $91.76, while MLO B receives additional overtime of $205.26.

As revealed in the final line of the Table comparing MLO A and MLO B in Exhibit A, despite working the exact same hours and overtime hours (10 hours) in the commission month, because Citizens Commission Formula carries over prior months "deficits," MLO A received only $91.76 for additional commission overtime, compared with MLO B who received $205.26 for additional commission overtime

And that difference in overtime compensation – for the exact same hours and overtime hours worked – and for the exact same commissions – generated in Month 3 of $10,000.00, establishes the Citizens Comp-Plans violates the FLSA prohibition on pay formulas regarding how the payment of commissions should be attributed to overtime weeks. In other words, Defendants are using "deficits" which may be related to weeks in which overtime was not worked, in order to **offset** the overtime that would otherwise be owed on commissions attributable to weeks in which overtime **was worked**. It is reasonable to surmise that overtime on commissions will be lopsided in the sense

that working more hours will result in more overtime, which will result in more commissions, which will then result in even more overtime. By banking a "recoverable draw" in the weeks in which overtime was less likely worked, and building up a "deficit," and then using that "deficit" to minimize the amount of commissions overtime would be calculated on, Defendants are avoiding distributing the full amount of overtime-on-commissions to the weeks in which overtime is actually being worked.

Such differences in overtime rates established by the Table in attached Exhibit 4, are precisely the result of the Commission Formula which causes a reduction in overtime rates when more hours worked by the employee are used to determine overtime which is expressly prohibited by the DOL regulations.  *See* C.F.R. §778.500(b) (formula creating artificially low regular rates to determine overtime unlawful);

**D.    The Special Master erred in Concluding Citizens Comp Plan Did Not Violate State Wage Payment Laws.**

Based on his determination that Gross Commissions were not **earned** commissions under Citizens Comp Plans, the Special Magistrate identifies the general rule under state wage payment laws that such laws provide a remedy for an employer's breach of contract regarding wages and quickly dispenses with Plaintiffs' state wage payment claims.  Report at 46.  Because the Special Master failed to recognize the Citizens Comp Plans violate the FLSA as to non-exempt MLOs, this conclusion was in error.  A contractual provision which is per se unlawful does not limit a claim for wage payment.  For example, a wage formula calling for unlawful deductions from wages, such as payment for tools supplied by the employee, could not be used as a defense of wages unlawfully deducted. The wage payment laws cited to in Plaintiff's Motion for Summary Judgment prohibit unlawful kickbacks to employers. The reasoning in the FLSA's anti-kickback rule applies to the State Law Wage Payment Claims which likewise require that wages be paid "free and clear," and,

36

by definition, prohibit employers from treating a wage as an advance. Accordingly, the Court should grant Plaintiffs' Motion for Summary Judgment as to the State Law Wage Payment Claims under the enumerated State laws. *See* Plaintiffs' Brief in Support of Plaintiffs' Motion for Partial Summary Judgment (ECF Doc. 107 at 13-21).

**E. Plaintiffs' incorporate by reference their Briefs in Support of Plaintiffs' Motion for Summary Judgment and In Opposition to Defendants' Motion for Summary Judgment.**

To the extent not already outlined above, Plaintiffs incorporate by reference herein their Briefs in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment, which were reviewed by the Special Master. In summary, Plaintiffs object to the Special Master's conclusions granting summary judgment to the Defendant as to Plaintiffs' Recapture Claims, for the reasons outlined above and the reasons set forth in those Briefs.

**V.    Conclusion**

Based on the law and reasoning stated, Plaintiffs respectfully request the Court to find that the Special Master erred in his First Report and to enter an Order granting Plaintiffs Motion for Summary Judgment as to the Recapture Claims and denying Defendant's Motion for Summary Judgment as to the Recapture Claim.

Respectfully submitted,

*/s/ Joshua Boyette*
Joshua Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy N., Ste 402
Cherry Hill, NJ 08034
Tel: (856) 685-7420
Fax: (856) 685-7417
jboyette@swartz-legal.com

*/s/ Robert D. Soloff*

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**
7805 S.W. 6th Court
Plantation, Florida 33324
Tel: (954) 472-0002
Fax: (954) 472-0052
robert@solofflaw.com

*Counsel for Plaintiffs*

Dated: August 16, 2017