**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3464
_____

ALEX REINIG; KEN GRITZ; BOB SODA;
MARY LOU GRAMESKY; PETER WILDER SMITH;
WILLIAM KINSELLA; DANIEL KOLENDA;
VALERIE DAL PINO; AHMAD NAJI; ROBERT
PEDERSON; TERESA FRAGALE; DAVID HOWARD;
DANIEL JENKINS; MARK ROSS

v.

RBS CITIZENS, N.A.,
                            Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Judge: Honorable Arthur J. Schwab
(D.C. Civil No. 2-15-cv-01541)
_____

Argued July 19, 2018
_____

Before: McKEE, VANASKIE, and RESTREPO, *Circuit
Judges*

(Opinion Filed: December 31, 2018)

Kim M. Watterson [ARGUED]
Robert J. Tyler, III
Gretchen W. Root
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222

Thomas E. Hill
Christina Tellado
Holland & Knight
400 South Hope Street
8th Floor
Los Angeles, CA 90071
        *Counsel for Appellant*

Joshua S. Boyette [ARGUED]
Daniel A. Horowitz
Justin L. Swidler
Swartz Swidler
1101 Kings Highway North
Suite 402
Cherry Hill, NJ 08034

Robert D. Soloff
Soloff Law
7805 Southwest 6th Court
Plantation, FL 33324
        *Counsel for Appellees*

———————————

OPINION

———————————

VANASKIE, *Circuit Judge*.

This interlocutory appeal authorized by Rule 23(f) of the Federal Rules of Civil Procedure presents us with two significant questions. First, did the District Court err in certifying a class of Citizens Bank (N.A.) Mortgage Loan Officers from ten different states who bring claims alleging that they were unlawfully denied overtime pay? And second, may we exercise pendent appellate jurisdiction over the District Court's order certifying a collective action under § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), an otherwise non-appealable order? We hold that the District Court's class certification decision cannot stand and that we may not consider the merits of the decision to certify a collective action under the FLSA.

## I.    BACKGROUND

Between November 2012 and April 2017, Plaintiffs, working as Mortgage Loan Officers (MLOs) at Citizens, were responsible for bringing in business by generating customer leads, completing loan applications, and building a book of business of referrals for new mortgage lending opportunities. To facilitate fulfillment of their work responsibilities, Citizens afforded MLOs considerable flexibility to determine their own working hours and where to perform their work.

Citizens paid MLOs in three ways. First, MLOs received a base salary of $11.50 an hour. Second, some MLOs,

depending on their eligibility, earned a monthly commission based on the number of loan products sold in a given month. Third, and most relevant to this appeal, MLOs were entitled to overtime pay by virtue of their "non-exempt" status under federal and state wage-and-hour laws, including the FLSA. As non-exempt employees, MLOs were entitled to 1.5 times their base wage of $11.50/hour ($17.25/hour) for each hour worked in excess of forty during a given workweek.   *See* 29 C.F.R. § 778.107.

On paper, the process for requesting overtime payments worked as follows: MLOs recorded their hours in a computerized timekeeping application.  A typical work day included four separate entries: "the morning clock-in; a clock-out and clock-in for the lunch period; and the evening clock-out."  (App. 106).  MLOs were required to submit their total hours worked in a particular week by Sunday at midnight.  A Producing Sales Manager—who oversaw the work of eight individual MLOs—was responsible for ensuring the accuracy and completeness of the timesheet information.  Under this "Time Sheet Policy," the Producing Sales Manager was required to approve any hours the MLOs submitted by Monday at noon, *i.e.*, the day after MLOs were required to submit their hours.

While the Time Sheet Policy obligated MLOs to report all hours worked, including overtime, a separate but related policy governed an MLO's ability to work overtime. Specifically, each MLO's letter of employment contained a provision stating that the MLO was "required to obtain prior approval from [his or her] supervisor for any hours worked in excess of 40 hours per week."  (Appellant's Br. 13) (citations omitted).  If an MLO disregarded this policy by not seeking

4

approval of overtime hours, the MLO could be subject to discipline.

According to Plaintiffs, Citizens' on-paper overtime policy was a ruse. In reality, Plaintiffs aver, Citizens endorsed a "policy-to-violate-the-policy," *i.e.*, the company maintained an unofficial, companywide policy of requiring MLOs to work in excess of 40 hours per week while discouraging MLOs from actually reporting those overtime hours. This practice, Plaintiffs contend, was carried out at Citizens "through a single, coordinated, overarching scheme." (Appellees' Br. 5). As outlined by Plaintiffs, the scheme consisted of the following measures:

> (1) an overtime preapproval policy, whereby MLOs would be subject to discipline if they reported overtime without having it preapproved;
>
> (2) restrictions on the amount of overtime hours that managers could approve;
>
> (3) allowing MLOs to submit fictitious attendance records that block-reported time and did not show night or weekend work through management's violations of Citizens' attendance monitoring and timesheet approval policies; and
>
> (4) upper-level management's tracking of overtime reported and discouragement/harassment/discipline of MLOs who reported or requested overtime.

(*Id.* at 7).

In November 2015, three former MLOs—Alex Renig, Ken Gritz, and Bob Soda—filed a class action complaint alleging that Citizens, by maintaining "an unofficial policy or practice requiring MLOs to work 'off the clock[]' in excess of forty hours per week," failed to pay overtime wages in accordance with the FLSA and Pennsylvania law. (App. 101). Because this work went unreported, Plaintiffs claimed that they were not paid for their off-the-clock hours in violation of the FLSA, 29 U.S.C. § 207, and Pennsylvania's wage-and-hour law, 43 Pa. Stat. and Cons. Stat. § 260.1 *et seq.*, and § 333.101 *et seq.*

Plaintiffs moved for conditional certification of a collective action under the FLSA,[1] which the District Court

---

[1] "The FLSA establishes a federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Under § 216(b), the so-called collective action provision of the FLSA, employees may "bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA." *Id.* Similarly, aggrieved employees may also commence a "class action" under Federal Rule 23 which permits "a class representative" to bring suit for violations of other state and federal law on behalf of those in the same class and who "possess the same interest and suffer the same injury[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citations and internal quotation marks omitted). Employees bringing collective actions under the FLSA and those bringing class actions under Rule 23 must be granted certification by the district court in order for their action to

proceed as a "collective action" or "class action," respectively. *See, e.g., Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590–91 (3d Cir. 2012); *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).   However, as further discussed in Part C, *infra*, the certification process and standards for collective actions and class actions differ.   For example, unlike class actions under Rule 23, collective actions under the FLSA must first be "conditionally" certified by the district court, which "requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."  *Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 536 n.4).   Once a district court grants conditional certification, putative class members are provided an opportunity to opt into the case pursuant to § 216(b).  *Id.* at 225.   "This 'opt-in' requirement—mandating that each individual must file an affirmative consent to join the collective action—is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23."  *Id.* (citation omitted).  "This difference means that every plaintiff who opts in to a collective action has a party status, whereas unnamed class members in Rule 23 class actions do not."  *Id.* (citation omitted).  As relevant to this case, Citizens claims that the District Court erred when it granted final collective action certification based on its finding that the opt-in plaintiffs were "similarly situated" to the named plaintiffs, *i.e.*, that all plaintiffs "'were subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.'"  *Id.* at 225–26 (quoting *Zavala*, 691 F.3d at 538).  Conversely, the Rule 23 certification process involves a two-

granted in May 2016. The District Court then ordered Plaintiffs to serve notice to the conditional FLSA class informing them that they would have 100 days to opt in to the action. In accordance with the District Court's order, Plaintiffs sent notice to over 1,000 current and former MLOs. Of those, 351 filed consent forms opting in to the FLSA collective action.

After the 100-day period expired, Plaintiffs filed an amended complaint that added nine named plaintiffs to the lawsuit. In conjunction with the amended complaint, Plaintiffs filed a motion for class certification under Rule 23, seeking certification of ten distinct classes, each of which alleged claims under the laws of their respective states. Citizens responded with two separate, but related, motions: one opposing the class certification motion and the other seeking decertification of the FLSA collective action.[2]

The parties, via stipulation, agreed to the appointment of a Special Master to address the pending motions. The Special Master recommended denying Citizens' motion for summary judgment, certifying Plaintiffs' off-the-clock claims under Rule 23(b)(2) and (b)(3), and denying Citizens' motion for decertification of the FLSA collective action. The District

---

step procedure outlined in the text of the Rule itself, *see Marcus*, 687 F.3d at 590 (citing Fed. R. Civ. P. 23(a)–(b)), as discussed in more detail in Part B, *infra*.

[2] The parties also cross-moved for summary judgment. The District Court granted summary judgment in Citizens' favor as to Plaintiffs' so-called "Recapture Claims," (*see* App. 49-50), but denied Citizens' motion as to Plaintiffs' off-the-clock claims, at issue in this appeal.

Court adopted the Special Master's reports and recommendations (hereinafter "SM Reports") in full. Citizens then timely filed a Rule 23(f) petition, which we granted.

## II.   JURISDICTION AND STANDARD OF REVIEW

The District Court had original jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. § 1331, and supplemental jurisdiction over their state-law claims pursuant to 28 U.S.C. § 1367. Because we granted Citizens' Rule 23(f) petition, we have jurisdiction over the District Court's Rule 23 order pursuant to 28 U.S.C. § 1292(e). "We review the grant of class certification for an abuse of discretion, which occurs if the certification 'rests upon clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 185 n.1 (3d Cir. 2015) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008)).

An additional question raised in this appeal is whether we have pendent appellate jurisdiction to review the District Court's FLSA certification order, a question of first impression for our Court. As a general matter, an order certifying a collective action under the FLSA is non-final and therefore not reviewable. *See Halle*, 842 at 227. However, under certain limited circumstances, the Court may, in its discretion, exercise pendent appellate jurisdiction "over issues that are not independently appealable[.]" *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202–03 (3d Cir. 2001) (citing *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 382 (3d Cir. 1997)). For the reasons stated in Part C, *infra*, we decline to exercise

pendent appellate jurisdiction to review the District Court's Order granting final collective certification under the FLSA.

## III.   DISCUSSION

On appeal, Citizens argues that the District Court erred in certifying Plaintiffs' state-law claims under Rule 23. Although we express reservations about the District Court's ultimate findings, we cannot say at this juncture that the District Court abused its discretion in certifying the putative class based upon the record before us.  Rather, we find only that the District Court failed to provide a sufficiently rigorous analysis to support its conclusions and will therefore vacate and remand its order granting class certification under Rule 23.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 564 U.S. at 348 (citation and internal quotation marks omitted).  To invoke this exception, every purported class action must satisfy the requirements of Rule 23.  *See id.*

Courts determine whether class certification is appropriate by conducting a two-step analysis.  First, the court must ascertain whether the putative class has satisfied the requirements of Rule 23(a).  *Marcus*, 687 F.3d at 590 (citing Fed. R. Civ. P. 23(a)–(b)).    And second, the court must determine whether the requirements of Rule 23(b) have been met.  *Id.*  To satisfy Rule 23(a), the purported class must establish that there are "questions of law or fact common to the class."  *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(2)).  If the district court is satisfied that Rule 23(a)'s requirements are met, then it must proceed to the second step and determine whether "the class

fits within one of the three categories of class actions in Rule 23(b)."[3]  *Id.*

---

[3]  Rule 23(b) provides:

Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and

Class certification is proper only if the district court is satisfied, "after a rigorous analysis," that the plaintiffs "established each element of Rule 23 by a preponderance of the evidence." *Marcus*, 687 F.3d at 591. When conducting the Rule 23 analysis, we have instructed that district courts "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on the elements of the [plaintiffs' claims].'" *Id.* (quoting *Hydrogen Peroxide Litig.,* 552 F.3d at 307).

---

that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23.

Citizens contends that the District Court failed to properly "define the class or class claims" as mandated by Rule 23(c)(1)(B). (Appellant's Br. 65-66). Furthermore, Citizens asserts that the District Court erred in finding that Plaintiffs' evidence satisfied Rule 23(a)'s commonality requirement, and that it incorrectly certified this class action under Rule 23(b)(3).[4]  We address each of these contentions in turn.

A. *The Class Definition and the Claims to be Given Class Treatment*

Citizens argues that remand is necessary because the Court failed to "define the class or class claims" as mandated by Rule 23(c)(1)(B).   (Appellant's Br. 65-66). Plaintiffs counter that the SM Reports "clearly set[] out the class definition, and defined the classes as 'identified in the Amended Complaint[.]'" (Appellees' Br. 52). We agree with Citizens and find that the certification order here is deficient.

To satisfy Rule 23(c)(1)(B), an order granting class certification must include: "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of claims, issues or defense to be treated on a class basis." *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 187–88 (3d Cir. 2006).   "Although a motion for class

_____

[4]  We need not consider Citizens' contention that the District Court erred in certifying a class under Rule 23(b)(2) for injunctive and declaratory relief because we conclude that remand is necessary based upon the District Court's failure to properly define the class and claims to be certified under Rule 23(c) and to conduct a sufficiently rigorous analysis as to Rule 23(a) and (b)(3).

certification presents a discretionary question for a district court, the court 'must clearly articulate its reasons, in part, so we can adequately review the certification decision on appeal under Rule 23(f).'" *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 369 (3d Cir. 2015) (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006)).

Our decision in *Marcus* is instructive on this issue. In that case, after applying the *Wachtel* standard to the facts at issue, we held that the district court failed to satisfy Rule 23(c)(1)(B) because the court's order, "[r]ather than set[ting] out its own [class] definition," merely stated that "the New Jersey sub-class is granted" and then cited to a docket entry for the plaintiff's amended notice of motion for class certification. *Marcus*, 687 F.3d at 592. While recognizing that the district court and counsel may have "share[d] [an] understanding of the class definition," we nevertheless emphasized that "*post hoc* clarification is no substitute for a readily discernible, clear, and precise statement of the parameters defining the class to be certified." *Id.* (internal quotation marks and citations omitted).

Additionally, we found that the district court's failure to define the particular subclasses was augmented by its failure to provide a "readily discernible, clear, and complete list" of the claims and issues presented." *Id.* Rule 23(c)(1)(B), we explained, is not satisfied when we are "force[d]" on appeal to "comb the entirety of the text and cobble together the various statements in search of . . . [a] readily discernible and complete list of class claims, issues, or defenses required by the Rule." *Id.* (quoting *Wachtel*, 453 F.3d at 189). Accordingly, we remanded the case to the district court with instructions to provide a "more clearly defined class and set of claims, issues, or defenses to be given class treatment." *Id.*

Here, as in *Marcus*, we are forced to comb through and cross-reference multiple documents in an attempt to cobble together the parameters defining the class and a complete list of the claims, issues, and defenses to be treated on a class basis. For example, there is no "readily discernible" statement or complete list of the required Rule 23(c)(1)(B) information in the District Court's certification order. Instead, just as the court's order in *Marcus* merely stated that the "sub-class is granted," the order here summarily grants certification after stating only that Plaintiffs' "state law subclasses are for Pennsylvania, Connecticut, New York, Massachusetts, Rhode Island, Illinois, Michigan, New Hampshire, North Carolina, and Ohio." (App. 155 n.2). Furthermore, as to the specific definition of the various subclasses, the certification order merely provided cross-references to Plaintiffs' First Amended Complaint and the SM Reports, without defining the specific subclasses or stating which provision of Rule 23 governs the various claims. (*Id.* at 155 n.2).

However, wading through the SM Reports proves equally unavailing. The second report, like the report in *Marcus*, "does not define the claims, issues, or defense to be treated on a class basis at all." 687 F.3d at 592. Although the first report contained a class definition, it does so merely by cross-referencing Plaintiffs' Amended Complaint.

Although we have declined to impose a strict format necessary to meet Rule 23(c)(1)(B)'s requirements, we have explicitly rejected orders that force us to "cobble together . . . various statements" and "comb the entirety of its text" in search of "isolated statements that may add up to a partial list of class claims, issues, or defenses." *Wachtel*, 453 F.3d at 188 n.10,

189.[5]  The District Court's order here requires us to do just that, and thus remand is warranted.

### B. *Rule 23's Commonality and Predominance Class Certification Prerequisites*

Citizens contends that the District Court erred in finding that Plaintiffs' evidence satisfied Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.   Rule 23(a)(2)'s commonality requirement requires that the putative class members "share at least one question of fact or law in common with each other."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 258 (3d Cir. 2004) (citation omitted).  "Rule 23(b)(3)'s predominance element in turn requires that common issues predominate over issues affecting only individual class members."  *Id.* at 528 (citing Fed. R. Civ. P. 23(b)(3)).

We have held that Rule 23(b)'s predominance requirement incorporates Rule 23(a)'s commonality requirement because the former, although similar, is "far more demanding" than the latter.  *Id.*  Like the commonality requirement, "[p]redominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by

---

[5]  In *Wachtel*, we provided explicit guidance regarding best practices for drafting class certification orders.  *See* 453 F.3d at 187 n.10 (stating that "the appearance within a certification order of a concise paragraph—similar to paragraphs often drafted to define the class itself and fully listing the claims, issues or defenses to be treated on a class basis—would come well within the parameters of the 'readily discernible' requirement").

representation." *In re Hydrogen Peroxide*, 552 F.3d at 310–11 (quotation omitted). However, the "predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members."[6] *Sullivan v. DB Inv., Inc.,* 667 F.3d 273, 297 (3d Cir. 2011). Accordingly, we will analyze the two elements together, with particular focus on the more stringent predominance requirement. *See, e.g., In re LifeUSA*, 242 F.3d at 144 (evaluating the predominance and commonality requirements together) (citing *Anchem Products*, 521 U.S. at 623–24).

At the class certification stage, the predominance requirement is met only if the district court is convinced that "the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). In practice, this means that a district court must look first to the elements of the plaintiffs' underlying claims and

---

[6] The predominance requirement also provides that "class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir. 2001) (quoting *Anchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). We will not discuss this particular facet of the requirement as the crux of Citizens' argument, and, in turn, the bulk of Plaintiffs' discussion, deals with whether the District Court, based on the representative evidence before it, could have found the class sufficiently cohesive so as to warrant a class action.

then, "through the prism" of Rule 23, undertake a "rigorous assessment of the available evidence and the method or methods by which [the] plaintiffs propose to use the evidence to prove" those elements. *Marcus*, 687 F.3d at 600 (citing *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011)). "If proof of the essential elements of the [claim] requires individual treatment, then class certification is unsuitable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 259 F.3d 154, 172 (3d Cir. 2001) (citation omitted).

To satisfy their wage-and-hour claims, Plaintiffs must show that: (1) pursuant to Citizens' unwritten "policy-to-violate-the-policy," the class MLOs performed overtime work for which they were not properly compensated; and (2) Citizens had actual or constructive knowledge of that policy and of the resulting uncompensated work. *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing *Reich v. Dep't of Conservation & Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994)); *see generally Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 240–41 (3d Cir. 2014). Thus, to satisfy the predominance inquiry, Plaintiffs must demonstrate (1) that Citizens' conduct was common as to *all* of the class members, *i.e.*, that Plaintiffs' managers were carrying out a "common mode" of conduct vis-à-vis the company's internal "policy-to-violate-the-policy," and (2) that Citizens had actual or constructive knowledge of this conduct. *See Sullivan*, 667 F.3d at 299; *Dukes*, 564 U.S. at 358; *see also Tyson Foods, Inc.*, 136 S. Ct. at 1046 (explaining that, although a plaintiff's suit may raise "important questions common to all class members," class certification is proper only if proof of the essential elements of the class members' claims does not involve "person-specific inquiries into individual work time [that] predominate over the common questions").

18

Here, Citizens contends that Plaintiffs' representative evidence fails to satisfy either the commonality or predominance requirements because it is insufficient to "permit a reasonable jury to determine that high-level officers or executives of Citizens with responsibility for formulating companywide policies knew or should have known that *each* class member was working overtime off the clock, *i.e.*, without reporting hours." (Appellant's Br. 44). This is so, Citizens claims, because each MLO's experience is too individualized for a jury to reach a common answer regarding whether Citizens maintained a companywide policy against reporting overtime. (*Id.*). Plaintiffs disagree, contending that the record evidence is "more than sufficient" for a jury to conclude that "Citizens operated a 'broader company policy' to discourage MLOs from accurately reporting their overtime hours." (Appellees' Br. 31).

In order for Plaintiffs' representative evidence to satisfy the commonality/predominance requirements of Rule 23, that evidence must be sufficiently representative of the class as a whole such that each individual Plaintiff "could have relied on [the] sample to establish liability if he or she had brought an individual action." *Tyson Foods, Inc.*, 136 S. Ct. 1046–47. That is to say, "[i]f the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action, that sample is a permissible means of establishing the employees' hours worked in a class action." *Id.* at 1043, 1046–47, 1048 (finding the predominance element met because plaintiffs' representative evidence was "sufficient to sustain a jury finding as to hours worked if it were introduced in each employee's action").

Based on the District Court's analysis before us, we cannot make a definitive determination as to whether

Plaintiffs' representative evidence is sufficient to satisfy Rule 23's commonality and preponderance requirements. First, from an evidentiary standpoint, we find it difficult to discern how the District Court arrived at its conclusion that Plaintiffs' representative evidence was sufficient to establish either the existence of a companywide policy or Citizens' knowledge of it. The Special Master's predominance analysis merely states that "Plaintiff[s] have demonstrated that the unofficial policy upon which their . . . claims are predicated is amenable to common proof and that this common question will predominate over any individualized questions," and cites Plaintiffs' "substantial evidence" in the form of testimony from "roughly two dozen MLOs." (App. 142). Yet, the SM Reports do not specify what testimony in particular was relied upon to reach that conclusion. The reports state that the "MLOs generally testify that, while Citizens maintained an *official* policy that required all hours worked to be reported and paid, and while Citizens *officially* required overtime to be requested and approved in advance, Citizens' managers nonetheless regularly and almost uniformly instructed MLOs not to report all the hours that they worked." (*Id.* at 142-43). Furthermore, the SM Reports do not provide any discussion at all regarding how Plaintiffs have shown that knowledge of the purported policy can be imputed to Citizens. Such a barebones analysis, without citations to specific, factual support in the record, simply does not permit a reviewing court to conclude that the District Court in fact undertook the "rigorous" review mandated by our precedents.

Moreover, it is unclear how the District Court reconciled contradictory testimony and other evidence explicitly undermining Plaintiffs' assertion that Citizens maintained a companywide "policy-to-violate-the policy." For

example, not only were Plaintiffs' experiences confined to interactions with specific managers in distinct offices, but their statements are dissimilar and oftentimes ambiguous, reflecting in many instances nothing more than typical workplace concerns about MLO work ethic and effectiveness. *See, e.g., Bolden v. Walsh Const. Co.*, 688 F.3d 893, 896 (7th Cir. 2012) ("[W]hen multiple managers exercise [arguably] independent discretion, conditions at different stores (or sites) do not present a common question."). For instance, Illinois MLO Valerie Dal Pino testified that, although her manager informed her and other MLOs that "overtime needed to be preapproved by [a] manager," Dal Pino specifically stated that she was never instructed by her managers not to record "all of the hours that [she] worked in a work week[.]" (App. 2308, 51:9-12; 53:13-22). Similarly, Rhode Island MLO Cheryl Roach testified that she was instructed to "request pre-approval" before seeking overtime payment, but was never "den[ied] permission to work more than 40 hours." (*Id.* at 1909, 73:5-29). The same is true for several other Plaintiffs, including Ohio MLO Larry Heydon, (*see id.* at 2022, 62:19-22); Ohio MLO Teresa Fragale, (*see id.* at 1704, 69:15-19); and New Hampshire MLO William Ziminksy, (*see id.* at 2498, 95:21-96:4). Far from supporting the District Court's assertion that MLOs "generally testified" to the existence of the unlawful policy and that their managers "almost uniformly" instructed MLOs not to report the hours they worked, the examples undermine commonality/predominance conclusions. That is, in contrast to the plaintiffs' proffered evidence in *Tyson*, Plaintiffs evidence here comes not from a similarly situated group of MLOs but from individual employees who worked in distinct offices at various times throughout the relevant class period. Given the diversity of their testimony, we have serious doubts whether the evidence tendered by Plaintiffs is

sufficiently representative of the class as a whole such that each individual plaintiff "could have relied on [the] sample to establish liability if he or she had brought an individual action." *Tyson*, 136 S. Ct. at 1046–47.

Accordingly, the class certification order cannot stand. We will remand with instructions that the District Court conduct a "rigorous" examination of the factual and legal allegations underpinning Plaintiffs' claims before deciding if class certification is appropriate.

## C. *Pendent Appellate Jurisdiction*

In addition to challenging the District Court's Rule 23 ruling, Citizens also contests the District Court's non-final FLSA certification order under the doctrine of pendent appellate jurisdiction. This doctrine "'allows [us] in [our] discretion to exercise jurisdiction over issues that are not independently appealable but that are intertwined with issues over which [we] properly and independently exercise[] [our] jurisdiction.'" *Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 357 (3d Cir. 2014) (citing *E.I. DuPont*, 269 F.3d at 202-03). The doctrine is a narrow one that "should be used 'sparingly,' and only when there is sufficient overlap in the facts relevant to both . . . issues to warrant *plenary* review." *Id.* (quoting *E.I. DuPont*, 269 F.3d at 203 (internal quotation omitted)); *see also In re Montgomery County*, 215 F.3d 367, 375–76 (3d Cir. 2000) (citation omitted). Further, the doctrine is "available only to the extent necessary to ensure meaningful review of an unappealable order." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 382 (3d Cir. 1994) *as amended* (Aug. 29, 1994) (citation omitted).

Following the Supreme Court's decision in *Swint v. Chambers County Commission*, 514 U.S. 35 (1995), we concluded that pendent appellate jurisdiction is restricted to two circumstances: (1) "inextricably intertwined" orders or (2) "review of [a] non-appealable order where it is necessary to ensure meaningful review of [an] appealable order." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 136 (3d Cir. 2004) (citing *E.I. DuPont*, 269 F.3d at 203). "Issues are 'inextricably intertwined' only when the appealable issue 'cannot be resolved without reference to the otherwise unappealable issue.'" *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 88 (3d Cir. 2010) (quoting *Am. Soc'y for Testing & Materials v. Corrpro Companies, Inc.*, 478 F.3d 557, 580–81 (3d Cir. 2007) (citations omitted)). "[T]he existence of an . . . appealable order [does not] confer pendent appellate jurisdiction over an otherwise unappealable order just because the two orders arise out of the same factual matrix . . ." even if considering the orders together may be encouraged under "considerations of efficiency." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 209 (3d Cir. 1990). "[T]he pendent appellate jurisdiction standard is not satisfied when we are confronted with two similar, but independent, issues, and resolution of the non-appealable order would require us to conduct an inquiry that is distinct from and 'broader' than the inquiry required to resolve solely the issue over which we properly have appellate jurisdiction." *Myers v. Hertz Corp.*, 624 F.3d 537, 553-54 (2d Cir. 2010) (citation omitted). Thus, if the appealable order may be properly "dispose[d] of . . . without venturing into otherwise nonreviewable matters[,]" *Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir. 1982) (en banc), we "have no need—and therefore no power—to examine the [nonreviewable] order," *Hoxworth*, 903 F.3d at 208.

Here, we must determine, as a matter of first impression, whether an order granting certification under Rule 23 is "inextricably intertwined" with an order granting final collective action certification under the FLSA. Citizens claims that we may do so because review of the FLSA certification order is necessary to ensure meaningful review of the Rule 23 order. Plaintiffs maintain that, although we have jurisdiction to review the class certification order, our jurisdiction does not extend to the FLSA order because "Rule 23 actions are fundamentally different from collective actions under the FLSA" and thus cannot be considered "inextricably intertwined" for purposes of exercising pendent appellate jurisdiction. (Appellees' Br. 55) (citations omitted).

We find the Second Circuit's opinion in *Myers* instructive on the issue. There, after affirming the denial of class certification on predominance grounds, the Second Circuit declined to exercise pendent appellate jurisdiction to review the District Court's decision denying certification of an FLSA collective action because "the two rulings [were] . . . not 'inextricably intertwined.'" *Myers*, 624 F.3d at 556. Specifically, the court found that the exercise of pendent appellate jurisdiction was unwarranted because the question of whether the potential plaintiffs had met the FLSA's less burdensome "similarly situated" standard was "quite distinct from the question whether plaintiffs ha[d] satisfied the much higher [Rule 23 predominance] threshold. . . ." *Id.* at 555–56. Although the court recognized that "the two issues . . . [were] admittedly similar," it nevertheless concluded that the FLSA and Rule 23 certifications orders were not inextricably intertwined because the court "[could] easily[] determine[] that the higher predominance standard ha[d] not been met without addressing whether the same evidence plaintiffs have put

forward in support of Rule 23 class certification could satisfy the lower [FLSA] standard." *Id.* at 556.

We join the Second Circuit and conclude that Rule 23 certification is not "inextricably intertwined" with an FLSA collective action certification so as to permit us to exercise pendent appellate jurisdiction over the FLSA certification. In so holding, we are persuaded by our prior precedent and the Second Circuit's well-reasoned decision in *Myers* that Rule 23 class certification and FLSA collective action certification are fundamentally different creatures. Further, judicial efficiency notwithstanding, the myriad problems that could result from exercising jurisdiction in this context counsel against expanding the narrow doctrine of pendent appellate jurisdiction in the way Citizens proposes.

To be sure, some of our sister Courts of Appeals have treated FLSA and Rule 23 certification as nearly one and the same. *See, e.g., Epenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[T]here isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged for the standards, though with some terminological differences . . . [and] so we can, with no distortion of our analysis, treat [both Rule 23 and FLSA actions] as if [they] were a single class action."); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (opining that there is "little difference in the various approaches" for evaluating Rule 23 and FLSA certifications). On the other hand, other courts have concluded that "[t]here [are] fundamental, irreconcilable difference[s]" between Rule 23 class actions and FLSA collective actions that preclude treating them as interchangeable. *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (per curiam). For example, in a Rule 23 action "each person within

the [class] description is considered to be a class member and, as such is bound by the judgment . . . unless he has 'opted out' of the suit[,]" but [u]nder . . . [the FLSA,] no person can become a party plaintiff and no person will be bound by or may benefit from the judgment unless he has affirmatively 'opted into' the class[.]" *Id.* (citations omitted). The Supreme Court has also noted differences between Rule 23 class actions and FLSA collective actions, such as the fact that although "a putative class acquires an independent legal status once it is certified under Rule 23[,] [u]nder the FLSA . . . 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." *Symczyk*, 569 U.S. at 75.

On balance, we believe that class certification under Rule 23 and collective action certification under the FLSA are not sufficiently similar or otherwise "inextricably intertwined" to justify exercise of pendent appellate jurisdiction. This conclusion is supported by our decisions in *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012), and *Kershner*, along with the Tenth Circuit's analysis in *Thiessen*. When tasked with elucidating the standard to be applied on final certification under the FLSA in *Zavala*, we eschewed an approach derived from Rule 23, holding instead that the standard to be applied to determine whether FLSA final certification is appropriate is "whether the proposed collective plaintiffs are 'similarly situated.'" *Zavala*, 691 F.3d at 536 (citation omitted). This approach makes sense because "Congress clearly chose not to have the Rule 23 standards apply to [statutory] class actions [such as those under the FLSA]" by adopting not a "commonality" or "predominance" requirement, but rather a finding that the collective plaintiffs are "similarly situated." *Thiessen*, 267 F.3d at 1105. Holding otherwise would

"effectively ignore Congress' directive." *Id.* Thus, we have previously concluded that, whereas a class action ruling is grounded in the various procedural provisions found in Rule 23, a collective action under the FLSA hinges on "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Zavala*, 691 F.3d at 537 (citing *Myers*, 624 F.3d at 555); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing [an FLSA] class action are independent of, and unrelated to, the requirements for a class action under Rule 23[.]").

In practice, determining whether plaintiffs are "similarly situated" under the FLSA involves considering all relevant factors, such as, "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and . . . [whether they have] individualized defenses." *Zavala*, 691 F.3d at 536–37. Although we acknowledge that some of the factors and evidence necessary to satisfy the prerequisites of Rule 23 and § 216(b) may overlap and, as a consequence, our rulings with respect to them may overlap as well, "a mere nexus between the two orders is not sufficient to justify a decision to assume jurisdiction." *Kershner*, 670 F.2d at 449–50.

Finally, limiting the exercise of pendent appellate jurisdiction avoids numerous potential problems that could arise through its use. We stated in *Kershner*—as did the Second Circuit in *Myers*—that expanding the doctrine would serve to undermine the finality rule under 28 U.S.C. § 1292(a). *See Myers*, 624 F.3d at 556; *Kershner*, 670 F.2d at 449. In particular, parties could abuse the doctrine by bringing "insubstantial interlocutory appeals in order to bring before

[us] issues which [we] ordinarily would not be able to review until a final decision of the district court." *Myers*, 624 F.3d at 556. Therefore, we hold that Rule 23 class certification and FLSA final collective action certification are not "inextricably intertwined." Accordingly, we decline to exercise pendent appellate jurisdiction over the FLSA collective action certification order in this case.

## IV.   CONCLUSION

For the reasons set forth above, we will leave undisturbed the District Court certifying a collective action under the FLSA, vacate the District Court's order granting Plaintiff's motion for class certification under Rule 23, and remand this matter for further proceedings.