# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX REINIG; KEN GRITZ; BOB SODA; MARY LOU GRAMESKY; PETER WILDER SMITH; WILLIAM KINSELLA; DANIEL KOLENDA; VALERIE DAL PINO; AHMAD NAJI; ROBERT PEDERSON; TERESA FRAGALE; DAVID HOWARD; DANIEL JENKINS and MARK ROSS,<br><br>     Plaintiffs,<br><br>v.<br><br>RBS CITIZENS, N.A.,<br><br>     Defendant. | Civil Action No. 2:15-CV-01541-CCW<br><br>ELECTRONICALLY FILED |

## DEFENDANT'S SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR RULE 23 CLASS CERTIFICATION

Thomas E. Hill (admitted *pro hac vice*)
tom.hill@hklaw.com
Christina T. Tellado (PA 204246)
christina.tellado@hklaw.com
Valerie Brown (PA 309849)
valerie.brown@hklaw.com
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071

Attorneys for Defendant
CITIZENS BANK, N.A.

I.      **INTRODUCTION**

Defendant Citizens Bank, N.A. ("Citizens" or "Defendant") hereby files this sur-reply in response to misleading arguments and factual contentions set out in Plaintiffs' Reply in Further Support of their Renewed Motion for Rule 23 Class Certification ("Reply").  For the reasons set forth below, as well as in Defendant's Opposition to the Renewed Motion[1], Dkt. No. 396, and in Citizens' prior filings with this Court opposing class certification, Plaintiffs' Renewed Motion should be denied.

II.     **ARGUMENT**

> **A. Consistent with the Court's Pre-Hearing Order, the Court Should Consider the Summary Information Supplied by Citizens.**

Plaintiffs seek to exclude information regarding the total number of mortgage loan officers ("MLOs") in the putative classes and the number of producing sales managers ("PSMs") who supervised those MLOs at any point during the putative class periods.  As stated in the Court's order, it has broad discretion in determining what evidence should be admitted to the record for purposes of deciding this issue of class certification. (*See* Dkt. No. 350, n. 1 ["As the Court noted during the October 19, 2021, status conference, objections should be limited because, as fact-finder for purposes of this hearing, the Court is inclined to receive all of the evidence and give it the appropriate weight when making its decision."]; *see also* *Payne v. Tri-State Careflight*, 332 F.R.D. 611, 657–58 [D. N.M. 2019] ["Realistically, the judge should consider all but the most egregiously inadmissible pieces of evidence as they are presented, and factor any evidentiary infirmity into the weight he or she gives them."] [cleaned up] [citation omitted]).  Here, the Court should admit and consider the information that Plaintiffs seek to exclude from the record because it is highly

---

[1] For purposes of brevity, Defendant's Post-Rule 23 Hearing Brief in Support of Proposed Counter-Findings and Findings of Fact and in Further Opposition to Plaintiffs Renewed Motion for Class Certification, Dkt. No. 396, is referenced to herein as "Defendant's Opposition to the Renewed Motion."

probative of the ultimate issue before the Court, and Plaintiffs have not been prejudiced by its production at this juncture. It is, of course, telling that Plaintiffs seek to exclude updated information regarding the sizes of the putative classes they actively seek to have certified. Such information is hardly controversial; indeed, it is patently relevant to the Court's "rigorous analysis" of the certification question and not something to be ignored.

In order for the class to be certified, Plaintiffs must demonstrate that the evidence adduced is "sufficiently representative of the class as a whole such that each individual Plaintiff 'could have relied on [the] sample to establish liability if he or she had brought an individual action.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 130 (3rd Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1046-47 (2016)). The challenged information regarding the current sizes of the putative classes is key to this inquiry. That information confirms that the sample evidence relied on by Plaintiffs to support certification is statistically and facially inadequate, and that such evidence cannot possibly be relied on to prove the individual claims of absent class members.

Plaintiffs oppose the introduction of this information not because it is prejudicial, but quite simply because it is unhelpful to their case. They have failed to demonstrate how the factual information is actually prejudicial. Contrary to Plaintiffs' conclusory assertion, there is nothing that Plaintiffs could have done with this information if produced earlier in the case that it cannot do with the evidence now. To be clear, the information concerns the number of putative class members, the states they resided in during the discovery period, and the managers connected to the Discovery MLOs (i.e., the group of MLOs for whom Plaintiffs agreed to conduct discovery). Plaintiffs argue that if Citizens had provided the specific manager that each putative class member reported to, they could have taken discovery regarding any manager who was not implicated by

the Named Plaintiffs or Discovery MLOs, and they could show how many putative class members were supervised by the implicated managers.[2] However, this argument fails for two reasons.

First, the individualized information referred to by Plaintiffs is not the information that Citizens has relied on in its briefing. Rather, Citizens relies on aggregated - and not individualized - totals of managers and class members within specific jurisdictions. Thus, the evidence Citizens is relying on is not the hypothetical evidence upon which Plaintiffs base their claim of harm. Second, even if Plaintiffs were in possession of information that linked specific managers to putative class members, they still would not have been able to depose those managers because Plaintiffs voluntarily agreed at the outset of the litigation to limit discovery regarding managers to only those managers who supervised the Named Plaintiffs and Discovery MLOs. It is an impossibility that counsel for Plaintiffs could or would have taken the depositions of each of the PSMs working during the relevant putative class periods. Thus, there has been no harm or prejudice by the use of this summary information, and the highly probative value of the information warrants its admission for the Court's consideration.

### B. Citizens Properly Responded to Plaintiffs' Proposed Findings of Fact.

At the same time they seek to limit the Court's consideration of updated information regarding the size of the putative classes provided by Citizens, Plaintiffs ask the Court to consider evidence that was not identified for submission or presented at the hearing. Plaintiffs take things a step further by erroneously contending that "Citizens did not object to or 'meaningfully dispute' a number of" Plaintiffs' proposed findings of fact. But, in accordance with the Court's Pre-Hearing Order, Citizens responded to Plaintiffs' Proposed Findings of Fact that clearly misstated or

---

[2] 'This argument presumes that they asked for this information and Citizens refused to provide it, but they fail to provide any proof of such a request and a corresponding refusal from Citizens. In fact, even after Citizens filed the Opposition, Plaintiffs have still never requested the information from which the summary was created.

mischaracterized record evidence. (*See* Dkt. No. 350) It is unclear what Plaintiffs mean by "meaningfully dispute", but Citizens' submission unquestionably reflects that it disputed multiple instances where Plaintiffs' proposed findings of fact had no basis in the record, or were based on Plaintiffs' incorrect or incomplete recitation of the record. (*See* Dkt. No. 397 [Defendant's Counter-Finding of Fact ("DCFF")]) Defendant's DCFFs noting that a statement actually says "X," when Plaintiffs proffer in their proposed findings of fact that the statement says "Y," is certainly a meaningful dispute.

Likewise, Plaintiffs argument that Citizens did not counter or respond to their proposed findings of fact concerning overtime reporting and policy enforcement is misleading and a complete mischaracterization of Citizens' response. Citizens did, in fact, respond to and object to Plaintiffs' proposed findings relating to efforts that Plaintiffs claim Citizens took to limit overtime reporting; primarily, Plaintiffs' characterization of the memorandum sent by Tom Gamache and the subsequent efforts taken to ensure compliance with the policies identified and attached to that memorandum. (DCFF at 49-59, 64, 65-71, and 467) Plaintiffs' attempt to paint Citizens' responses to Plaintiffs' Proposed Finding of Fact as some sort of admission is not only a red herring but inconsistent with their own conduct.[3]

### C. Plaintiffs Misstates the Record Evidence in Order to Manufacture Purported Credibility Issues.

Beyond the quibbles over the evidence which is or is not in the record or was presented at the hearing, Plaintiffs have undertaken to discredit some of Citizens' current and former managers through misstatements and misleading comparisons of testimony during discovery depositions and at the December hearing. The manufactured credibility issues do more to confirm that class

---

[3] The irony of Plaintiffs' argument is that Plaintiffs actually did not provide any specific responses to Citizens' Proposed Findings of Fact. By Plaintiffs' logic, the Court should deem all of the factual findings by Citizens admitted by Plaintiffs.

treatment is inappropriate than to support any of Plaintiffs' diverging theories in support of class certification. For example, with respect to Nancy Monbouquette, Plaintiffs allege that she testified she "never denied preapproval for overtime for a loan officer," but that is not actually what she testified:

> Q. Are you aware of any of your managers who refused to pre-authorize overtime for any loan officer?
> A. No.
> Q. Now, did you ever instruct loan officers to only work 40 hours?
> A. No.
> Q. Have you ever heard the term "work your best 40 hours"?
> A. I may have heard that. I don't recollect what it means or where it came from.
> Q. Okay. Are you aware of any manager at Citizens who instructed loan officers to only work 40 hours?
> A. No.

(Dkt. No. 383 at 198:25-199:11) The testimony cited by Plaintiffs does not even mention Ms. Monbouquette's practice with respect to the pre-authorization of overtime - that testimony relates solely to her managers. Plaintiffs also attempt to mischaracterize documents in an effort to create more credibility issues, again failing to recognize that the more credibility that exist, the less appropriate is class treatment. In regards to Ms. Monbouquette, Plaintiffs mischaracterize a December 2015 email. Specifically, Ms. Monbouquette clarified the email explaining that there were times, such as in December 2015, where market conditions were such that demand for mortgage-connected services that were the core of MLO's job duties was not high, and thus the market conditions did not drive the need for MLO's to work overtime. Plaintiffs attempt to obfuscate this basic economic theory and contort it to support their conspiracy theories:

> Q. Okay. And isn't it true you told your managers that you rarely approved overtime -- that they should rarely approve overtime?
> A. No.
> MR. BOYETTE: Can we show the witness P69.
> BY MR. BOYETTE:

> Q. Ms. Monbouquette, I'm showing you an e-mail that you sent on December 21, 2015. Let's go to the first page. Do you remember sending this e-mail?
> A. I don't, but I can -- do you want me to comment on it or not?
> Q. The question was do you remember sending it. The answer was no. Lance Adie, he was a PSM that worked for you?
> A. Yes.
> …
> **Q. All right. See there, "We need to have all overtime approved prior to being worked. We rarely approve overtime." Do you see that?**
> **A. Yes.**
> **Q. So when you just said "no," that's not what you told your PSMs, that wasn't correct, was it?**
> **A. This is a different timeline. That was December of 2015. So back then, when the market was different and the volume was different and the amount of overtime we were approving was less, I mean, you could go back -- I'm sure you have looked at the volume at that time. And typically this number -- those were slower months, so we may not have been approving overtime in that particular month.**

(Dkt. No. 383 at 206:22-207:7; and 207:18-208:5 [emphasis added])  As is evident from the testimony, Ms. Monbouquette clarified her answer and provided necessary context for the email.

The other alleged inconsistencies cited by Plaintiffs are also gross mischaracterizations. For example, Plaintiffs use Tom Kullman's January 2016 email in which he states overtime cannot be worked unless it is pre-approved to claim that Mr. Kullman testified that the pre-approval policy did not apply at night and on weekends to take emergent client calls.  <u>See</u> Reply at p. 8 (citing PFF 206).  But Mr. Kullman testified that Citizens' policy has always been that loan officers "will always be paid for all hours worked, including unapproved overtime." (Dkt. No. 384, at 13: 6-15; Dkt. No. 381, Ex. J-3) According to Mr. Kullman, the pre-approval policy that he used was "pretty simple," but that even if overtime is worked without being pre-approved, "we would approve that time and pay that time." (Dkt. No. 384 at 16:9-20; 17:6-14) MLOs are not expected to seek pre-approval for overtime when the overtime cannot be anticipated. (Dkt. No. 384 at 18:7-11) In

supervising MLOs at Citizens, Mr. Kullman has never denied a MLO's request for pre-approval to work overtime, nor has he ever refused to approve a MLO's recorded overtime, even if the overtime was not pre-approved. (Dkt. No. 384 at 19:16-20:5)

Plaintiffs similarly claim that Tad Kuhn testified he was never aware of off-the-clock work, but that emails allegedly demonstrate three different MLOs informed Mr. Kuhn they were working off-the-clock. <u>See</u> Reply at p. 8 (citing PFF Nos. 84, 88, 92). The aforementioned email referred to by Plaintiffs is one in which the MLO (Michelle Filler) jokingly states that she is working "8am - 10pm", as the email states "LOL"[4] at the beginning. (Dkt. No. 381, Exh. P-30) In addition, Ms. Filler's time records are not part of the record to verify what hours she actually recorded. Kuhn did not tell her to not record overtime or to not record all of her hours worked. (Dkt. No. 381, Exh. P-30) The emails referred to in both PFF 88 and 92 clearly show that MLOs were approved to work, record and be paid for overtime. (PFF Nos. 88 and 92)

Plaintiffs also attempt to create credibility issues with testimony provided by Joseph Boynton. Specifically, Mr. Boynton testified that he never received any direction to limit overtime allowed and had no incentive to deny a request for overtime. But when shown an email from Ms. Monbouquette criticizing the use of overtime by MLO George Bissias, Mr. Boynton admitted that keeping a supervisor happy is a strong incentive in any workplace. Reply at p. 8 (citing PFF Nos. 424-425). Notably, the referenced email does not include any directive for the MLO not to work overtime, or any directive not to pay for overtime worked by MLOs. Mr. Boynton also testified that no branches were ever taken away from Mr. Bissias as referenced in the email[5] and that Mr.

---

[4] LOL is commonly understood to mean "Laugh Out Loud" and to imply a joking manner in electronic communications such as email or text message.

[5] It should come as no surprise that Mr. Bissias, who has consistently recorded overtime throughout his employment, was one of the discovery Plaintiffs that counsel failed to produce for deposition during discovery.

Bissias continues to record and be paid for overtime to present. (Dkt. 384 at 122:08-19, 125:19-25)

With respect to PSM Ed Negron, Plaintiffs contend that Mr. Negron testified the he had no reason to suspect MLOs were not entering their actual hours, and yet he received an email from MLO Timothy Collins stating that Mr. Collins was going to work off-the-clock rather than record his overtime because Mr. Collins believed the overtime was simply a draw. See Reply at p. 8 (citing PFF No. 308). Plaintiffs misstate Mr. Negron's allegedly corresponding testimony. Mr. Negron testified that he did not know why *two other MLOs* (Mark Ross and Cynthia Nostro) would inaccurately report their work time, but stated that they had every incentive to be accurate because all time recorded was paid by Citizens. (Dkt. No. 387-28 at 164:16- 165:23) Moreover, what Mr. Ross or Ms. Nostro did or did not do has no connection to Mr. Collins, a MLO who purported that he believed hourly wages "come from commissions anyways and are not pd *[sic]* by the bank," thus, he would "just log 40 ever week to make it easy". (Dkt. No. 381, Ex. P-86)

Plaintiffs seek to discredit Chace Gundlach. To do so, Plaintiffs contrast Mr. Gundlach's testimony that he never told a manager reporting to him that MLOs could only record overtime if it was pre-approved, with a Gundlach email telling a PSM "all OT beyond 5 hrs *[sic]* need preapproval or deny it." See Reply at p. 9 (citing PFF No. 465). But there is nothing patently inconsistent between Mr. Gundlach's testimony and the subject email. Moreover, Mr. Gundlach stated that he never told any manager reporting to him that MLOs could only record overtime if it was pre-approved, that he never told any managers reporting to him not to grant a request for pre-approval, and that he never told any managers reporting to him to instruct loan officers to not record all time worked. (Dkt. No. 383 at 120:2-12, 138:7-24) Mr. Gundlach also explained that if an MLO continually input overtime without pre-approval, after having a discussion with their

manager regarding the need to seek pre-approval, then it would be appropriate to deny pre-approval for overtime. *Id*.

A careful examination of the testimony and records make clear that Citizens' current and former managers have not provided inconsistent or contradictory testimony in this matter, and Plaintiffs have failed to establish any credibility issues with respect to their testimony. But again, even if the Court concludes that credibility issues do exist with regard to Citizens' testifying managers, the existence of those issues simply confirms that certification is inappropriate in this case, and that plaintiffs have failed to provide convincing proof of the "existence of a companywide policy" requiring putative class members to work off-the-clock, applied and enforced by Citizens' managers in a manner that is "common as to *all* of the class members" across the 11 state sub-classes. Reinig, *supra*, 912 F.3d at 129-129 (emphasis in original).

### III. CONCLUSION

For all the foregoing reasons, and for the reasons set forth in Defendant's Opposition to the Renewed Motion, as well as the entirety of the extensive briefing and evidence submitted by Citizens 'in opposition to certification of any purported class in this matter, Plaintiffs' renewed Motion for Rule 23 Class Certification should be denied in its entirety.

/ / /

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: March 3, 2022 | HOLLAND & KNIGHT LLP |
|  | By: /s/ Christina Tellado<br>Thomas E. Hill (admitted *pro hac vice*)<br>tom.hill@hklaw.com<br>Christina T. Tellado (PA 204246)<br>christina.tellado@hklaw.com<br>Valerie E. Brown (PA 309849)<br>Holland & Knight LLP<br>400 South Hope Street, 8th Floor<br>Los Angeles, CA  90071<br>Tel:  (213) 896-2400<br>Fax:  (213) 896-2450<br><br>Attorneys for Defendant<br>CITIZENS BANK, N.A. |

- 10 -

CERTIFICATE OF SERVICE

The undersigned hereby certifies that, this 3rd day of March, 2022, the foregoing DEFENDANT'S SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR RULE 23 CLASS CERTIFICATION was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

By: /s/ Christina Tellado
Christina T. Tellado
Counsel for Defendant
Citizens Bank, N.A.