**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALEX REINIG, KEN GRITZ, and | ) | |
| BOB SODA, individually and on behalf of | ) | |
| those similarly situated, | ) | No. 2:15-cv-01541 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CITIZENS BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**RECONSIDERATION OF AUGUST 2017 SUMMARY JUDGMENT ORDER**

*On behalf of the Plaintiffs:*

*/s Joshua S. Boyette*
Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.    INTRODUCTION .................................................................................................. 1

II.   STANDARD OF REVIEW .................................................................................... 2

   A.  Defendant's Recapture Policies constitute a Pseudo-Bonus that evades their Overtime Requirements. ........................................................................................................................ 2

   B.  Defendant's Overtime Pay Policies violates the PMWA. .................................................. 7

   C.  Defendant's current method of calculating the regular rate violates FLSA and the PMWA, and systematically results in underpayment of overtime pay. .................................................. 9

III.  CONCLUSION ....................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Alea N. Am. Ins. Co. v. Salem Masonry Co.,* 301 F. App'x 119 (3d Cir. 2008)............................ 7

*Barrentine v. Ark.-Best Freight Sys.,* 450 U.S. 728 (1981) .................................................. 1, 2, 3

*Black Bear Energy Servs. v. Youngstown Pipe & Steel, LLC,* Civil Action No. 15-50, 2021 U.S. Dist. LEXIS 195905 (W.D. Pa. Oct. 12, 2021) ............................................................................. 1

*Brunozzi v. Cable Communs., Inc.,* 851 F.3d 990 (9th Cir. 2017)............................................. 4, 6

*Byrd v. Aaron's, Inc.,* No. 11-101, 2018 U.S. Dist. LEXIS 37083 (W.D. Pa. Mar. 7, 2018) ......... 7

*Chevalier v. Gen Nutrit. Ctrs.,* 656 Pa. 296 (2019) .......................................................... 1, 7, 8

*Dole v. Trusty,* 707 F. Supp. 1074 (W.D. Ark. 1989)..................................................................... 6

*Szabo v. Muncy Indus., LLC,* No. 4:21-CV-00468, 2023 U.S. Dist. LEXIS 41236 (M.D. Pa. Mar. 10, 2023) ...................................................................................................................................... 7

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419  (1945) ...................................... 6

**Other Authorities**

Dept. of Labor Advisory Opinion, February 16, 2001, 2001 DOLWH LEXIS 17, *9 .................. 4

**Rules**

Fed. R. Civ. P. 54(b) ...................................................................................................................... 1

**Regulations**

29 C.F.R. § 778.114 ....................................................................................................................... 5

29 C.F.R. §778.117 ................................................................................................................ 1, 9, 10

29 C.F.R. §778.119 ........................................................................................................................ 9

29 C.F.R. §§ 778.500-502 ............................................................................................................. 3

29 C.F.R. §778.503 ........................................................................................................................ 3

## I.    INTRODUCTION

On August 22, 2017, The Court adopted Special Master David Cohen's First Report and granted Defendant summary judgment as to Plaintiffs' "recapture" and "regular rate" claims. ECF Doc. No. 216; *see also* ECF Doc. No. 179. Plaintiffs now move the Court to reconsider and reverse that Summary Judgment Order for three separate and distinct reasons. First, with respect to **all** of Plaintiffs' dismissed claims, the Court's order constitutes a clear error of law because it holds that under FLSA and analogous state wage and hour laws, an employer may recapture paid overtime as long as the recapture occurs ***before*** the company deems the payment earned. Because this permits an employer to entirely evade its overtime obligations merely based on contractual fiat, the premise of the ruling is fundamentally incorrect and warrants reversal. *See Barrentine v. Ark.-Best Freight Sys.,* 450 U.S. 728, 740 (1981).

Second, with respect to the Pennsylvania Plaintiffs' state wage and hour claims, reconsideration is warranted because of an intervening change in the controlling law. Specifically, in 2019, the Pennsylvania Supreme Court held that the Pennsylvania Minimum Wage Act ("PMWA") requires overtime be paid at 1.5 multiplier on the regular rate. *See Chevalier v. Gen Nutrit. Ctrs.,* 656 Pa. 296. 329 (2019). Because Defendant pays overtime at 0.5 multiplier, the PMWA dismissal should be reversed, and summary judgment should be granted Plaintiffs that Defendant's overtime compensation violates Pennsylvania law.

Finally, Defendant altered its commission-based overtime formula in April 2018, and currently only allocates 66.7%-86.2% of the commission when it calculates commission-based overtime. This violates the FLSA and its regulations requiring overtime be calculated for the entire amount of a paid commission and requires reversal of the August 2017 Order, and granting summary judgment to Plaintiffs that Defendant unlawfully calculates the regular rate and fails to pay all overtime due with respect to the post-April 2018 time period. *See* 29 C.F.R. §778.117.

II.    **STANDARD OF REVIEW**

A summary judgment order is an interlocutory order which can be reconsidered at any time pursuant to Fed. R. Civ. P. 54(b). *Black Bear Energy Servs. v. Youngstown Pipe & Steel, LLC,* Civil Action No. 15-50, 2021 U.S. Dist. LEXIS 195905, at *8 (W.D. Pa. Oct. 12, 2021). While the standards applicable to a motion for reconsideration of a final judgment, i.e., (1) an intervening change in controlling law; (2) new evidence, not previously available, has become available; or (3) to correct a clear error of law or to prevent manifest injustice, may guide the determination to reconsider an interlocutory order pursuant to Fed. R. Civ. P. 54(b), reconsideration of interlocutory may be had without making any of those three showings, and may grant reconsideration whenever it is consonant with justice to do so. *Id.* at *9-10.

A.  **Defendant's Recapture Policies constitute a Pseudo-Bonus that evades their Overtime Requirements.**

The Court should reverse the ruling dismissing Plaintiff's recapture claims because Defendant's recapture policies turn its commission into a pseudo-bonus that permits it to evade its overtime requirements, and permitting Defendant to do so based on when it deems a commission earned under its compensation is a manifest error of law in clear violation of *Barrentine v. Ark.-Best Freight Sys.,* 450 U.S. 728, 740 (1981), which provides that rights guaranteed by FLSA may not be abrogated or evaded by contract.

On a weekly basis, Defendant pays an hourly rate, and, when overtime is worked, overtime pay at 1.5 times that hourly rate. ECF Doc. No. 179 at 9-11, 15. However, when an MLO is entitled to a commission under Defendant's commission, it deducts the regular hourly pay and 2/3 of the overtime pay for the first five hours of overtime from the commission. *Id.* at 15-17. This reduces both the base hourly amount of overtime paid, and, because it lowers the "net commission" used to calculate overtime owed for the commissions, depresses the regular rate used for paying

commission-based overtime. Accordingly, Plaintiffs moved for summary judgment holding that this compensation plan violated FLSA by failing to pay one and a half-time the regular rate for the Plaintiff's hourly pay, and by miscalculating the regular rate used to calculate commission-based overtime. *See* ECF Doc. No. 106; ECF Doc. No. 107 at 9-12. Defendant cross-moved for summary judgment arguing its compensation plan complied with its obligations under FLSA. ECF Doc. No. 113; ECF Doc. No. 116 at 23-24.

The August 2017 Order granted Defendant summary judgment as to these claims because it found that the commissions are not "earned" until after Defendant deducted 2/3 of its overtime payment from the gross commissions, and, therefore, there was no unlawful deduction of overtime from net compensation and no regular rate violation. ECF Doc. No. 216. Because the hourly pay offset was simply a "variable [used] in the calculation of the commissions" paid, ECF Doc. No. 179 at 43, there was no violation of the overtime pay requirements.

This ruling is contrary to the FLSA's requirement that contract-based schemes to evade or minimize overtime due are unlawful notwithstanding a contract provision to the contrary. "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine,* 450 U.S. at 740. The FLSA's requirements take precedence even over conflicting provisions in an arms-length collective bargaining agreement, let alone a compensation plan provided to employees on a take-it-or-leave-it basis. *Id.* at 740-741. To prevent employers from evading overtime requirements through baroque contract provisions, the DOL has issued regulations 29 C.F.R. §§ 778.500-502 making clear that "Devices to Evade the Overtime Requirements" are unlawful.

Here, Defendant's compensation scheme constitutes an unlawful Pseudo-Bonus, set forth in 29 C.F.R. §778.503. This occurs when the employer sets an artificially low hourly rate, but provides a "bonus," which nevertheless decreases as the number of hours worked increases. Similarly, deductions made only in overtime workweeks, or increases in [wage deductions] during overtime workweeks compared to non-overtime workweeks, are considered manipulations to evade statutory overtime requirements which are prohibited. Dept. of Labor Advisory Opinion, February 16, 2001, 2001 DOLWH LEXIS 17, *9. Here, because Defendant decreases its production bonus as the number of hours worked increases, it constitutes an unlawful pseudo-bonus. *See Brunozzi v. Cable Communs., Inc.,* 851 F.3d 990, 996-97 (9th Cir. 2017) (finding the reduction of a production bonus to deduct overtime paid unlawful).

The Court's ruling is most clearly erroneous because its reasoning means that Defendant is not limited to the 2/3 overtime deduction it currently takes. Rather, because what matters to the Court is that the deduction occurs **<u>before</u>** the commission is deemed earned, Defendant could deduct the entire amount of overtime it provides, evade the overtime pay obligation entirely, and yet still have a lawful overtime plan under the August 2017 ruling.

To illustrate this, consider a pay plan provided by Defendant in which it pays MLOs a base hourly rate of $10/per hour and a weekly commission. As in practice, Defendant states that net commission is not deemed earned until deductions are applied, but here, these deductions include all hourly pay, including all hourly overtime pay. MLO Arthur works 40 hours per week, and his production entitles him to a $1000 gross commission. After net commissions are calculated, he is paid $400 per hour in hourly pay, and receives a $600 net commission ($1000 gross commission minus $400 in hourly pay), for a total payment of $1000. MLO Bradley works 45 hours, has the same production, and, accordingly, also receives $1000 in gross commission. Bradley is paid $400 in non-overtime hourly pay, $75 in overtime pay, and $525 in net commissions, for a total payment

of $1000. Under this pay-plan, despite working overtime, Bradley is paid the same amount as Arthur. This scheme evades the overtime requirement and violates FLSA.

Of course, this plan fails to pay overtime-on-commission. But Defendant could modify its net commission formula to evade this requirement as well and still comply with the August 2017 Order. Under this second policy (1) employees will receive overtime pay on their net commissions at a rate of 0.5 times the additional hourly pay attributable to the net commission; but (2) Defendant subtracts an Efficiency Deduction from Gross Commissions before Net Commissions are deemed earned. The Efficiency Deduction is calculated as (((Gross Bonus)-(Hourly Pay))/(Total Hours Worked)/2.2)*(Overtime Hours Worked).

Now, when Bradley works 45 hours of overtime pay, he receives $400 in non-overtime hourly pay, $75 in overtime pay, a Net Commission of $498.48 ($1000 gross commission - $400 non-overtime hourly pay - $75 overtime hourly pay - $26.52 Efficiency Deduction), and commission-based overtime calculated on the Net Commission of $27.69, for total compensation of $1001.18. **For the five additional hours he worked past Arthur, despite being "paid overtime," Bradley is only actually compensated an additional $1.18.** This plan is a pay scheme which entirely (but for a $1.18) evades the overtime pay requirements, but because all the deductions are made to gross instead of net commissions, it is lawful under the August 2017 Order. A holding which permits this stratagem is accordingly a clear error of law, permits employers to vitiate the Act, and must be reconsidered and reversed as being inconsistent with nearly eighty years of precedent.

Defendant's current plan is not made legal simply because Defendant has chosen to only deduct 2/3 of the first five hours of overtime—it still results in an MLO, who is compensated pursuant to an hourly rate, being paid a lower hourly rate when they work overtime than when they

do not because of a bonus that decreases with an increase in hours worked. Consider MLOs' Catherine and Dana, paid pursuant to Defendant's actual compensation policies—hourly pay of $11.50 per hour, overtime paid at $17.50 hour, and the first 45 hours worked deducted from gross commissions at a rate of $11.50 per hour.

Catherine works 40 hours per week, and earns a weekly gross commission payment of $1000, such that she receives the following weekly pay: $400 in hourly pay, plus $600 in net commission, for total compensation of $1000 per week. Dana works 45 hours, also earns a weekly gross commission payment of $1000, such that she receives the following weekly pay: $400 in non-overtime hourly pay, $87.50 in hourly overtime pay, $550 in net commissions, and $30.56 in commission-based overtime, for a total compensation of $1068 per week.

To be sure, Dana receives some overtime pay. But when the hourly rates of Catherine and Dana are compared, Catherine was paid $25/hour and Dana was paid $23.73/hour. Dana and Catherine are equally productive, and Dana worked longer hours, but Defendant has paid Dana a lower hourly rate **merely** because she worked more hours, and this policy decreases the cost of overtime for Defendant. A compensation plan that eliminates overtime is clearly an unlawful pseudo-bonus, *see, e.g., Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *Brunozzi v. Cable Communs., Inc.,* 851 F.3d at 996-97; *Dole v. Trusty,* 707 F. Supp. 1074, 1077-1078 (W.D. Ark. 1989). But a compensation plan that similarly uses a bonus to **decrease** instead of **eliminate** the amount of overtime received violates the law in the same way for the same reason. *See* 29 C.F.R. § 778.503.

Recapturing overtime pay from commissions, whether the recapture occurs prior to the commission being "earned" or after, artificially deflates the regular rate and creates an unlawful pseudo-bonus which discourages employees from reporting overtime, lowers the disincentive to

overtime work the overtime premium is meant to encourage, and fails to compensate employees at one and a half times their true regular rate for overtime hours worked. Accordingly, the Court should reconsider and reverse the August 2017 Order dismissing Plaintiffs' recapture and regular-rate miscalculation claims, and instead, grant Plaintiffs' motion for summary judgment as to those claims as set forth at ECF Doc. No. 106 and ECF Doc. No. 107 at 9-12.

**B. Defendant's Overtime Pay Policies violates the PMWA.**

Count VIII of the First and Second Amended Complaint pleads that Defendant violated the Pennsylvania Minimum Wage Act by failing to pay Plaintiffs one and half their regular rate of pay for all overtime hours worked. ECF Doc. No. 85 at ¶¶ 251, 253; ECF Doc. No. 208 at ¶¶ 255, 257. Nevertheless, the Court granted summary judgment on this claim in its August 2017 Order, finding that Defendant was permitted to pay overtime at a 50% premium of the regular rate. ECF Doc. No. 216 at 3-4; ECF Doc. No. 43-44. It is well-established that reconsideration of even a final order is warranted when there has been an intervening change of controlling law. *See, e.g., Alea N. Am. Ins. Co. v. Salem Masonry Co.,* 301 F. App'x 119, 121 (3d Cir. 2008); *Byrd v. Aaron's, Inc.,* No. 11-101, 2018 U.S. Dist. LEXIS 37083, at *6 (W.D. Pa. Mar. 7, 2018).

Here, the Court should reconsider and reverse this order because in November 2019, *Chevalier v. Gen Nutrit. Ctrs.,* 656 Pa. 296. 329, the Pennsylvania Supreme Court held that under the PMWA, overtime payments had to be made **on top of the regular wages already paid** at the regular rate subject to 1.5 multiplier. *See also Szabo v. Muncy Indus., LLC,* No. 4:21-CV-00468, 2023 U.S. Dist. LEXIS 41236, at *8 n.57 (M.D. Pa. Mar. 10, 2023) (noting rejection of a 0.5 multiplier under PMWA after *Chevalier*). This intervening change of controlling law strongly warrants reconsideration of the Court's August 2017 interlocutory order granting summary judgment over this claim.

7

Special Master Cohen set forth Defendant's compensation scheme in detail in his first report, and that exposition makes that Defendant's overtime compensation violates the PMWA both as to the "base" overtime and the "commission" overtime. *See* ECF Doc. No. 179 at 9-18. With respect to first five hours of "base overtime," Defendant initially paid Plaintiffs base overtime at their hourly rate times a 1.5 multiplier, thereby ***initially*** complying with *Chevalier. Id.* at 15-16; ECF Doc. No. 114 at ¶ 14. However, when Defendant calculates commissions, it deducts from the gross commissions ⅔ of the first five hours of base overtime, leaving only the "half of time-and-a-half." ECF Doc. No. 179 at 15, fn. 8; ECF Doc. No. 114 at ¶ 3-9. Therefore, once the commissions are calculated, **the Plaintiffs have only earned "base overtime" on their first five hours of overtime at their regular hourly rate times a 0.5 multiplier**. ECF Doc. No. 179 at 15, fn. 8. Just as this was unlawful in *Chevalier,* this is unlawful here, and each Pennsylvania Plaintiff is owed base overtime at their base hourly rate for up to their first five hours of recorded overtime, per week.

Second, with respect to the overtime Defendant pays on commissions, the Special Master found—and Defendant admits—commission-based overtime is calculating using a 0.5 regular rate multiplier, not a 1.5 multiplier. *Id.* at 16-17. Under *Chevalier,* this is an unlawful method of paying overtime. *Chevalier,* 656 Pa. at 329. Accordingly, Defendant has only paid ⅓ of the commission overtime to Pennsylvania Plaintiffs that are due under Pennsylvania law. There are no factual disputes that this is how Defendant pays overtime in Pennsylvania, and no exception to *Chevalier* which would make this method lawful.

In opposing Plaintiffs' summary judgment argument, Defendant stated it was permitted to recapture amounts previously paid to loan officers prior to computing overtime because even after the recapture, "Citizens' calculation ensures that MLOs are paid the 50% overtime premium for

the first 5 hours worked over 40 in a workweek. This is achieved because the minimum threshold is calculated using only the straight-time hourly rate for up to 45 hours." *See ECF* Doc. No. 126 at 8. A 50% overtime premium is unlawful under PMWA pursuant to *Chevalier* and therefore compels the Court reconsider its prior order. Indeed, under *Chevalier*, Citizen's own framing of its compensation system—that it provides loan officers with an additional half-time on top of their earned commissions for hours 40-45—is unlawful.

Accordingly, because Defendant's overtime pay policies violate the PMWA under *Chevalier,* the Court should reverse the order granting Defendant summary judgment as these claims.

### C. Defendant's current method of calculating the regular rate violates FLSA and systematically results in underpayment of overtime pay.

In April 2018, Defendant changed its payroll systems, from PeopleSoft to Ultipro, and its method of calculating commission-based overtime payments. *See* Supplemental Expert Report of Dr. Stephen Bronars, para. 23, 31 and 33. This new method violates FLSA because it does not allocate the entire amount of commission when it calculates commission-based overtime.

As a baseline, 29 C.F.R. §778.117 makes clear that "commissions … are payments for hours worked and must be included in the regular rate to calculate overtime pay," and when the commission payments are deferred, "**it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was earned.**" 29 C.F.R. §778.119.  The employee must then receive additional overtime compensation for each week during the period in which he worked in excess of the applicable maximum hours standard. *Id.*

Here, Defendant deems the commission earned in the month prior to which it was paid, and allocates the commission payment across the workweeks in that month. But Defendant's Ultipro formula violates FLSA because does not allocate the entire commission payment—it only

9

allocates between 66.7% and 86.2% of the commission. This inexplicable shortfall results in underpayments of the amount of commission-based overtime owed.

Jo Higdon, Citizens Head of Payroll Services, describes the UltiPro formula for calculating weekly commission-based overtime as follows: ((((Total monthly incentive payment divided by total number of days in month) times 5 days per workweek) divided by 40 scheduled hours per workweek) times 0.5) times number of overtime hours worked during workweek). *See* Jo Higdon Declaration, attached as Exhibit A at Para. 7; Email from Samuel Stone, Esq., *attached* as exhibit B-1.

The formula violates the law because, by using calendar days in the first step, but weekdays in the second step, it always allocates less than the entire payment across the month. The non-allocated remainder is simply discarded from the regular rate calculation entirely, in violation of 29 C.F.R. §778.117-120. By way of example, Defendant's formula underpaid Melissa Kerick's June 2018 overtime adjustment payment by at least $38.13, by only using $2444.64 of Kerik's $3666.96 incentive payment to calculate the commission-based overtime owed. *See* Summary of Kerick's UltiPro Data, attached hereto as Exhibit B-2. Defendant's April 2018 change of its overtime formula which resulted in failing to allocate the entire commission for purposes of calculating overtime warrants reversing the August 2017 Order dismissing Plaintiffs' claims that Citizens' compensation policies underpaid overtime by depressing the regular rate used to calculate commission-based overtime. *See* ECF Doc. No. 179 at 44-45.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for reconsideration of the August 2017 Order (ECF Doc. No. 216) granting Defendant summary judgment as to Plaintiffs' recapture claims, and instead, grant partial summary judgment to Plaintiffs that

Defendants' compensation plans, as outlined herein, are unlawful and have caused Plaintiffs' damages.

Respectfully Submitted,


*/s/ Joshua Boyette*
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Tel: (856) 685-7420
Fax: (856) 685-7417

Dated: July 17, 2023

11