**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ALEX REINIG; KEN GRITZ; BOB )
SODA; MARY LOU GRAMESKY; )
PETER WILDER SMITH; WILLIAM )
KINSELLA; DANIEL KOLENDA; )
VALERIE DAL PINO; AHMAD NAJI; )
ROBERT PEDERSON; TERESA )    Civil Action No. 2:15-CV-01541-CCW
FRAGALE; DAVID HOWARD; DANIEL )
JENKINS and MARK ROSS, )
                         )
          Plaintiffs, )
                         )    ELECTRONICALLY FILED
   v.                  )
                         )
RBS CITIZENS, N.A., )
                         )
         Defendant. )
                         )

**DEFENDANT CITIZENS BANK, N.A.'S OPPOSITION
TO PLAINTIFFS' MOTION FOR RECONSIDERATION
OF AUGUST 2017 SUMMARY JUDGMENT ORDER**

Thomas E. Hill (admitted *pro hac vice*)
tom.hill@hklaw.com
Christina T. Tellado (PA 204246)
christina.tellado@hklaw.com
Valerie Brown (PA 309849)
valerie.brown@hklaw.com
Samuel J. Stone (admitted *pro hac vice*)
sam.stone@hklaw.com
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: (213) 896-2400
Fax: (213) 896-2450

Attorneys for Defendant
CITIZENS BANK, N.A.

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..................................................................................................................1

II.     LEGAL STANDARD............................................................................................................2

III.    ARGUMENT ........................................................................................................................4

      A.      Plaintiffs' Contention That "Clear Error" Justifies Reconsideration Is
            Meritless ...................................................................................................................4

      B.      Plaintiffs' Contention That "New Law" Justifies Reconsideration Is
            Meritless ...................................................................................................................6

      C.      Plaintiffs' Contention That "New Evidence" Justifies Reconsideration Is
            Meritless ...................................................................................................................7

IV.     CONCLUSION.....................................................................................................................9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Anthanassius*,
  418 Fed. App'x. 91 (3rd Cir. 2011) ...................................................................3

*Black Bear Energy Services, Inc. v. Youngstown Pipe & Steel, LLC*,
  2021 WL 4751746 (W.D. Pa. 2021) ................................................................3, 5

*Breig v. Covanta Holding Corp.*,
  2022 WL 837242 (E.D. Pa. 2022) ...................................................................7

*Carson v. Tucker*,
  2021 WL 1018757 (E.D. Pa. 2021) ..................................................................5

*Chevalier v. Gen Nutrit. Ctrs.*,
  656 Pa. 296 (2019) ...................................................................................6, 7

*Citizens Bank, N.A. v. Baker*,
  2019 WL 13198321 (W.D. Pa. 2019) ................................................................6

*Cordero v. Emrich*,
  2022 WL 17418572 (D.N.J. 2022) ...................................................................5

*Deeters v. Phelan Hallinan & Schmieg*,
  LLP, 2013 WL 6524625 (W.D. Pa. 2013) .......................................................2, 3

*Fye v. Oklahoma Corp. Comm'n*,
  516 F.3d 1217 (10th Cir. 2008) .......................................................................6

*MMG Ins. Co. v. Guiro, Inc.*,
  432 F. Supp. 3d 471 (M.D. Pa. 2020) ..........................................................4, 8, 9

*Orth v. Powers*,
  2015 WL 3915750 (W.D. Pa. June 25, 2015) ....................................................5

*In re Pharmacy Benefit Managers*,
  582 F.3d 432 (3rd Cir. 2009) ..........................................................................3

*Phillips v. Starbucks Corp.*,
  Dkt. No. 118, 1:19-CV-19432-JHS-AMD (D.N.J. May 12, 2023) ...........................5

*Pittsburgh Logistics, Inc. v. Frantzen*,
  2023 WL 203163 (W.D. Pa. 2023) ...................................................................4

*United States v. Rinaldi*,
   2020 WL 561905 (M.D. Pa. 2020) ..................................................................5

**Other Authorities**

29 C.F.R. § 778.114 .....................................................................................................6

29 C.F.R. § 778.119 .....................................................................................................8

29 C.F.R. § 778.119-120 .............................................................................................9

29 C.F.R. § 778.120 .....................................................................................................8

29 C.F.R. § 778.122 .....................................................................................................8

Fed.R.Civ.Proc. 54(b) .................................................................................................6

Fed.R.Civ.Proc. 59(e) .........................................................................................2, 3, 6

## I.    INTRODUCTION

In August 2017, this Court (the Hon. Arthur J. Schwab, then presiding) adopted the First Report (Dkt. No. 179) of the parties' agreed-upon Special Master, and, in so doing, granted Defendant Citizens Bank, N.A.'s ("Citizens") motion for summary judgment on Plaintiffs' "Recapture Claims."[1]  (*See* Memorandum Order Adopting Reports and Recommendations, Dkt. No. 216, hereinafter the "2017 MSJ Order".)  The Recapture Claims were based on Plaintiffs' theory that "Citizens adopted commission payment policies that worked to unlawfully 'recapture,' 'claw back,' or 'deduct' previously-earned hourly wages and overtime from earned commissions, in violation of federal and State law."  (*See* Dkt. No. 179 at 1.)

The Special Master concluded that the "key question that undergirds the Recapture Claims [is] when were commissions ***earned***?"  (*Id*. at 35, emphasis in original.)  Based on an extensive factual and legal analysis (*id*. at 35-47), the Special Master concluded that "the answer to that question is found in the plain language of the Comp-Plans" (*id*. at 35), and that "as a matter of law and undisputed fact, the Comp-Plans provide that commissions are earned only ***after*** previously-paid hourly wages and the straight-time portion of the first five hours of overtime pay are deducted from Gross Commissions."  (*Id*. at 38, emphasis in original).  In the Special Master's view, "[t]his conclusion defeats each one of the Recapture Claims."  (*Id*. at 36.)

Upon review, Judge Schwab agreed with and adopted the Special Master's First Report, and did so notwithstanding an additional 66 pages of briefing filed by Plaintiffs in opposition to that Report.  (*See* Dkt. Nos. 204 and 212.)  Judge Schwab held as follows:

> The Special Master thoroughly analyzed Citizens Bank's MLO compensation plans ("Comp-Plans").  The basis for the Special Master's conclusion that the Comp-Plans do not violate the FLSA or analogous state-law claims is that the formula set forth in the Comp-Plans, although complicated, guarantees payment of all straight-time

---

[1] The parties filed cross-motions for summary judgment on the Recapture Claims, and addressed the issues raised by those motions in four separate briefs filed with the Special Master.  (*See* Dkt. Nos. 106, 113, 126 and 127.)

and overtime wages earned by MLOs and provides additional compensation payments. The plain language of the MLO Comp-Plans state that commissions are not earned until Gross Commissions, calculated by applying basis points to an MLOs closed amounts, exceed the MLOs base guaranteed compensation. Although this scheme could result in a "running and accumulating deficit owed to Defendants under the Comp-Plans," as argued by Plaintiffs, any deficit that "carried over" into a subsequent pay period was not deducted from the MLOs regular hourly rate or overtime rate for reported hours, it was deducted from Gross Commissions. Further, when commissions were earned by MLOs under this plan, the commission amount was properly included in a determination of the MLOs regular rate for the purpose of paying additional overtime compensation for hours reported by the MLO.

Accordingly, the Court agrees that Citizens Banks' MLO Comp-Plans do not violate the FLSA and analogous state-laws as alleged by Plaintiffs and that summary judgment in favor of Defendant as to these claims is appropriate.

(Dkt. 216 at 3-4 [internal citations omitted].)

Now, _almost six years after the fact_, Plaintiffs ask this Court to nullify the 2017 MSJ Order and enter summary judgment for them on the Recapture Claims. (Dkt. No. 438 at 10-11.) This request is made on three grounds: (1) Judge Schwab committed "clear error" in his ruling; (2) "new law" in the form of a 2019 Pennsylvania Supreme Court decision supports Plaintiffs' request; and (3) "new evidence" as to Citizens' "current method" of calculating the regular rate of pay further supports Plaintiffs' request. None of these articulated grounds for reconsideration and reversal of the 2017 MSJ Order has merit. Quite simply, Plaintiffs' motion is untimely and presumptively without merit under the governing legal standards, and based on factual and legal arguments that cannot withstand scrutiny. As such, Plaintiffs' motion should be denied in its entirety.

## II. LEGAL STANDARD

Although a district court "possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so," it is well established that "[c]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed.R.Civ.Proc. 59(e)." *See Deeters v. Phelan Hallinan & Schmieg*, LLP, 2013

WL 6524625, at *1-2 (W.D. Pa. 2013); *see also Black Bear Energy Services, Inc. v. Youngstown Pipe & Steel, LLC*, 2021 WL 4751746 , at *3 (W.D. Pa. 2021) (courts "frequently look to [Rule 59(e)] standards for guidance in considering motions [for reconsideration]").  Under Rule 59(e), "the party seeking reconsideration must establish (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *Deeters*, at *2.

A motion for reconsideration "is not to be used to relitigate or 'rehash' issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made." *Black Bear Energy*, at *3.  For this reason, "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions."  *In re Anthanassius*, 418 Fed. App'x. 91, 96 (3rd Cir. 2011); *Black Bear Energy*, at *4 ("[T]here is a presumption against reconsideration and the court must determine whether reconsideration is consonant with justice"). Consequently, "courts should be loathe to [grant reconsideration] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice."  *In re Pharmacy Benefit Managers*, 582 F.3d 432, 439 (3rd Cir. 2009) (*quoting Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  Finally, reconsideration must be sought with "due diligence"—unreasonable delay alone is grounds for denial.  *Id.*

It is, of course, no surprise that the foregoing principles are applied most strictly in connection with motions to reconsider rulings on motions to dismiss or for summary judgment. *See, e.g., Deeters*, at *1 (reconsideration of motion to dismiss denied); *Black Bear Energy*, at *1 (reconsideration of motion for summary judgment denied).

### III.    ARGUMENT

**A.    Plaintiffs' Contention That "Clear Error" Justifies Reconsideration Is Meritless**

Plaintiffs' primary argument in support of their motion for reconsideration is that the Special Master and Judge Schwab committed "clear error" in granting Citizens summary judgment on the Recapture Claims.  This argument is not based on anything "new"—such as facts or legal arguments not available to Plaintiffs in 2017—but rather on Plaintiffs' regurgitated contention that it is irrelevant whether Gross Commissions are "earned" wages under Citizens' Comp-Plans.  (Dkt. No. 438 at 6-7—"[r]ecapturing overtime pay from commissions, whether the recapture occurs prior to the commission being 'earned' or after. . . fails to compensate employees at one and a half times their true regular rate for overtime hours worked.").[2]  But as the Special Master and Judge Schwab reasonably found, unlawful "deductions" or "claw backs" cannot be made from amounts that do not constitute earned wages.  Thus, the "key question" is when are the amounts at issue earned.  (Dkt. No. 179 at 1.)  The Special Master and Judge Schwab answered that question based on "[t]he plain language of the MLO Comp-Plans" (Dkt. No. 216 at 3), because the calculation of _earned_ commissions is a matter of contract.  (*Id.*)  *See also Pittsburgh Logistics, Inc. v. Frantzen*, 2023 WL 203163, at *6 (W.D. Pa. 2023) ("The contract between the parties governs in determining whether specific wages are earned.").  All of Plaintiffs' variations on their one basic argument (*i.e.*, "it doesn't matter when commissions are earned") —including their "pseudo bonus" theory—were previously made to and expressly rejected by the Special Master.  (*See* Dkt. No. 179 at 38-41, in

---

[2] Of course, a motion for reconsideration based on "clear error" cannot properly be based on new arguments not previously made to the court, where those arguments were available to the moving party at the time of the challenged ruling.  *See, e.g., MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 475 (M.D. Pa. 2020) ("[A] motion for reconsideration may not be used to present a new legal theory for the the first time, to raise new arguments that could have been made in support of the original motion, and should not ask the court to rethink a decision that it has already made.").

which the Special Master dismantles *seriatim* each of the multiple arguments made by Plaintiffs in support of their Recapture Claims.)

It is, of course, axiomatic that the moving party's "burden is especially heavy" to establish "the need to correct a clear error of law or fact or to prevent a manifest injustice." *Orth v. Powers*, 2015 WL 3915750, at *2 (W.D. Pa. June 25, 2015). "[A] mere disagreement with the court does not translate into a clear error of law." *Id.* (quoting *Mpala v. Smith*, 2007 WL 136750, at *2 (M.D. Pa. Jan. 16, 2007)). Here, all Plaintiffs can offer this Court is a replay of arguments previously advanced and rejected by the Special Master in 2017, after his rigorous analysis of those arguments. This kind of "rehash" is simply insufficient to overcome the *presumption against reconsideration* that applies under the governing standard. *See Phillips v. Starbucks Corp.*, Dkt. No. 118, 1:19-CV-19432-JHS-AMD (D.N.J. May 12, 2023) (Opposing party "asserts that: (1) this argument was already fully briefed by the parties at the summary judgment stage and was considered by the Court . . . [and is therefore] merely [moving party] asking the Court to change its mind….The Court agrees.") (internal quotation marks omitted) (citing *Takata v. Riot Blockchain, Inc.*, No. 18-2293, 2019 WL 2710273, at *1 (D.N.J. June 26, 2019)).

Plaintiffs' "clear error" argument is also untimely, and reflects the lack of "due diligence" necessary to support a motion for reconsideration. *See Black Bear Energy*, at *3. Nothing has prevented Plaintiffs from advancing this argument on multiple occasions since the 2017 MSJ Order was issued. Although neither the federal rules nor the local rules of this Court impose any hard deadlines on motions for reconsideration, those district courts that have set time limits for such motions have drawn the line well short of *six years*. *See United States v. Rinaldi*, 2020 WL 561905, at *1 (M.D. Pa. Feb. 4, 2020) (applying local rule deadline of 14 days for motions for reconsideration); *Carson v. Tucker*, 2021 WL 1018757, at *1 (E.D. Pa. Mar. 17, 2021) (same);

*Cordero v. Emrich*, 2022 WL 17418572, at *1 (D.N.J. Dec. 5, 2022) (same); *see also Fye v. Oklahoma Corp. Comm'n,* 516 F.3d 1217, 1224 (10th Cir. 2008) (Affirming denial of motion for reconsideration and holding that "[t]he District Court could properly consider the fact that the motion was filed two years after the court granted summary judgment.").  Plaintiffs' lack of due diligence in moving for reconsideration on the basis of "clear error" is alone sufficient to deny their motion on that asserted ground.

### B.    Plaintiffs' Contention That "New Law" Justifies Reconsideration Is Meritless

During the case management conference on July 5, 2023, Plaintiffs for the first time alerted the Court and Citizens of the purported existence of "new law" supporting reconsideration of the 2017 MSJ Order.  That "new law" consists solely of a 2019 decision of the Pennsylvania Supreme Court construing Pennsylvania state law.  *See Chevalier v. Gen Nutrit. Ctrs*., 656 Pa. 296 (2019). Plaintiffs fail to explain why they did not raise *Chevalier* as an issue at any time prior to July 5, 2023, and, for the reasons previously addressed in connection Plaintiffs' "clear error" argument, Plaintiffs' lack of due diligence in bringing this "new law" to the attention of the Court is alone sufficient to support the denial of their motion for reconsideration.  *See Citizens Bank, N.A. v. Baker*, 2019 WL 13198321, at *1 (W.D. Pa. Apr. 25, 2019) (holding that motion for reconsideration brought "more than <u>five months</u> after the Court's rulings" was untimely under Rules 54(b) and 59(e) (emphasis in original)).

Untimeliness aside, *Chevalier* effectuates no change in the law relevant to the 2017 MSJ Order.  *Chevalier* addresses whether certain "statutory and regulatory provisions allow for the usage of the Fluctuating Work Week method (FWW Method) for calculating overtime compensation for <u>*salaried*</u> employees working fluctuating hours."  *Chevalier*, 656 Pa. at 298-99 (emphasis added).  The specific question at issue in *Chevalier* was whether the overtime multiplier

described in 29 C.F.R. § 778.114 ("Fixed Salary for Fluctuating Hours") applies under Pennsylvania law "[w]hen an employee's **_weekly salary_** is paid as compensation for all hours worked in a week." _Id_. at 301-302 (emphasis added).  Under the FWW method reviewed in _Chevalier_,  a "**_salaried employee's_** 'regular rate' of pay is determined by dividing the total of the weekly salary by the number of hours actually worked that week." _Id_. (emphasis added).  But, as _Chevalier_ expressly states and later cases confirm, the _Chevalier_ holding only applies to the FWW method for calculating the regular rate, and it is beyond dispute that the FWW method only applies to salaried employees.  _Id_. at 329; _see also Breig v. Covanta Holding Corp._, 2022 WL 837242, at *4 (E.D. Pa. Mar. 21, 2022) ("Because of "the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework. . . . Plaintiff cites no legal authority to support either the proposition that the 'percentage of total earnings' method of calculating overtime premiums due on a bonus violates state law or the proposition that the state law claims should be analyzed differently than the FLSA claim in this respect.").

In short, the fundamental problem with Plaintiffs' reliance on _Chevalier_ is that the case only addresses and applies to the compensation of salaried employees, and Citizens' MLOs are paid on an _hourly_ basis.  (_See_ Dkt. 179 at 9—"MLOs received base hourly pay of $11.50.") Plaintiffs' untimely "new law" argument thus provides no substantive ground for this Court to revisit the 2017 MSJ Order.

### C.    Plaintiffs' Contention That "New Evidence" Justifies Reconsideration Is Meritless

Plaintiffs' third and final argument is that the 2017 MSJ Order should be reconsidered based on "new evidence."  Specifically, Plaintiffs contend that Citizens changed its payroll systems

in April 2018 in a manner that thereafter caused Citizens to miscalculate the additional overtime payments due on MLOs' commission earnings.  But even if this contention were true—*and it is not*—the argument does not support reconsideration of the 2017 MSJ Order, much less the relief requested by Plaintiffs in their motion for reconsideration (*i.e.*, entry of summary judgment *in their favor* on the Recapture Claims).  The "new evidence" required to support reconsideration of a prior ruling is evidence *relevant to that ruling* and the claims *then* at issue.  Quite obviously, Plaintiffs' contention that Citizens miscalculated MLO overtime payments *after* April 2018, based on a theory of recovery not available to Plaintiffs *prior to* April 2018, cannot possibly have impacted the Court's summary judgment ruling in 2017.  What Plaintiffs truly suggest is that they have acquired "new evidence" which they believe supports the assertion of *new claims* against Citizens, and not "new evidence" relevant to and supporting reconsideration of the 2017 MSJ Order.  As such, there is no basis to grant Plaintiffs' reconsideration motion on "new evidence" grounds.  *See MMG Ins. Co.*, 432 F. Supp. 3d at 475 ("[A] motion for reconsideration may not be used to present a new legal theory for the first time….").

In addition, Plaintiffs are simply wrong in their contention that Citizens has miscalculated MLO overtime payments since April 2018.  Plaintiffs claim that Citizens' current calculation methodology runs afoul of 29 C.F.R. § 778.119, because Citizens' formula uses "calendar days in the first step, but weekdays in the second step, [and therefore] it always allocates less than the entire payment across the month."  (Dkt. No. 438 at 10.)  But Plaintiffs fail to acknowledge that the commission earnings at issue do not accrue on a weekly-allocatable basis, and are thus governed by 29 C.F.R. § 778.120 ("Deferred commission payments not identifiable as earned in particular workweeks"), and/or 29 C.F.R. § 778.122 (providing that "[o]vertime pay for employees paid wholly or partly on a commission basis may be computed on an established basic rate, in lieu

of the method described above" in §§ 778.119-121). Plaintiffs' fundamental misunderstanding of the facts and law applicable to their entirely new theory of recovery does not and cannot support reconsideration of the 2017 MSJ Order.[3]

## IV.    CONCLUSION

Plaintiffs have presented no reason why the "presumption against reconsideration" does not apply to and justify the denial of their motion.  In that regard, Plaintiffs' motion is untimely and reflects a disqualifying lack of due diligence.  Plaintiffs have failed to identify any "clear error" of law in the 2017 MSJ Order, and their efforts to show "clear error" consist solely of a "rehash" of arguments previously made to and rejected by the Special Master.  The only "new law" that Plaintiffs cite is neither new nor apposite to the 2017 MSJ Order.  Finally, Plaintiffs' "new evidence" is irrelevant to the theory of recovery they advanced in support of their Recapture Claims in 2017, and thus insufficient to support reconsideration of the 2017 MSJ Order on those claims.

For all the foregoing reasons, and "consonant with justice," Plaintiff's motion for reconsideration should be denied.[4]

---

[3] It bears emphasis that Plaintiffs' new theory of recovery as to Citizens' post-2018 calculations of the additional overtime owed on an MLO's commission earnings is *fundamentally different* from the theory of recovery they advanced in support of their motion for summary judgment on the Recapture Claims in 2017.  As the Special Master noted in his First Report, "the parties do not dispute that the framework Citizens used to calculate this additional overtime was appropriate—it is consistent with the Department of Labor's regulations on the matter.  See. 29 C.F.R. § 778.119-120."  (Dkt. No. 179, at p. 44-45.)  In contrast, Plaintiffs now argue that since April 2018, Citizens' calculation methodology (or "framework") is just wrong and does violate the DOL's regulations.  As previously noted, the assertion of a completely new theory of recovery cannot possibly justify reconsideration of a six-year old ruling on an entirely different theory of recovery.  *MMG Ins. Co.*, 432 F. Supp. 3d at 475.

[4] Plaintiffs' motion for reconsideration of the 2017 MSJ Order stands in stark contrast to Citizens' pending motion to decertify the FLSA collective.  Nothing has changed since the 2017 MSJ Order was issued—there are no new arguments, law or evidence relevant to the Recapture Claims or the 2017 ruling thereon.  The same is manifestly untrue as to the Court's 2017 decision to certify a FLSA collective.  Since then the Third Circuit has vacated the contemporaneously-issued Rule 23 certification order, and thereafter granted Citizens *mandamus* relief to prevent a FLSA collective trial from occurring before a rigorous review of the evidence presented in support of Plaintiffs' Rule 23 motion took place.  Also, since certification of the FLSA collective in 2017, this Court conducted a three-day evidentiary hearing on the Rule 23 certification issue, during which more than 20 witnesses testified.  This Court

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:  /s/Thomas E. Hill
      Thomas E. Hill (admitted pro hac vice)
      tom.hill@hklaw.com
      Christina T. Tellado (PA 204246)
      ctellado@hklaw.com
      Valerie Brown (PA 309849)
      valerie.brown@hklaw.com
      Samuel J. Stone (admitted pro hac vice)
      sam.stone@hklaw.com
      HOLLAND & KNIGHT LLP
      400 South Hope Street, 8th Floor
      Los Angeles, CA 90071

      Attorneys for Defendant
      CITIZENS BANK, N.A.

---

subsequently issued a detailed opinion denying class certification and incorporating factual findings that are directly relevant to the continued certification of the FLSA collective as well.  Finally, unlike summary judgment rulings, it is common for district courts to revisit and change their FLSA collective certification decisions in the exercise of their inherent case management authority, and it is highly uncommon in hybrid Rule 23 class/FLSA collective cases for district courts to permit a FLSA collective to proceed to trial when class certification under Rule 23 has been denied.