IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX REINIG, KEN GRITZ, BOB SODA, MARY LOU GRAMESKY, PETER WILDER SMITH, WILLIAM KINSELLA, DANIEL KOLENDA, VALERIE DAL PINO, AHMAD NAJI, ROBERT PEDERSON, TERESA FRAGALE, DAVID HOWARD, DANIEL JENKINS, MARK ROSS,<br><br>        Plaintiffs,<br><br>   v.<br><br>RBS CITIZENS, N.A.,<br><br>        Defendant. | 2:15-CV-01541-CCW |

**OPINION**

Before the Court are Plaintiffs' and Defendant's Motions for Reconsideration. *See* ECF Nos. 435, 436. Plaintiffs seek reconsideration of the Court's decision granting summary judgment to Defendant on Plaintiffs' "recapture" claims under the Fair Labor Standards Act and "regular-rate" claims under the Pennsylvania Minimum Wage Act. ECF No. 438. Defendant seeks reconsideration of the Court's order finally certifying an FLSA collective action. ECF No. 437. For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion and **GRANT** Defendant's Motion.

**I.    Background**

Because of the extensive litigation in this case to date, the Court will only recount the necessary procedural and factual background related to the Motions for Reconsideration.

Plaintiffs, a group of current and former Mortgage Loan Officers ("MLOs") employed by Defendant RBS Citizens, N.A. ("Citizens"), allege that, notwithstanding Citizens' official timekeeping policy, which requires MLOs to report all hours worked, Citizens maintained an unofficial policy of discouraging MLOs from reporting overtime, thereby resulting in MLOs working off the clock. Plaintiffs' claims for unpaid overtime resulting from the alleged unofficial policy span from November 24, 2013 to the present. Plaintiffs seek damages for unpaid overtime wages.

In a two-volume report, which addressed motions for summary judgment and motions for class and collective certification, the Special Master recommended that (1) summary judgment be granted in Citizens' favor for Plaintiffs' "recapture" claims under the FLSA; (2) summary judgment be granted in Citizens' favor for Plaintiffs' claims under the PMWA; and (3) Plaintiffs' conditionally certified FLSA collective action be finally certified pursuant to 29 U.S.C. § 216(b). *See* ECF Nos. 179, 180. On August 22, 2017, United States District Judge Arthur Schwab, then presiding, adopted the Special Master's Report and Recommendation, dismissed the recapture claims under the FLSA, dismissed the claims under the PMWA, and finally certified an FLSA collective action pursuant to § 216(b). ECF No. 216.

Simultaneously, Judge Schwab certified a class action pursuant to Federal Rule of Civil Procedure 23, which allowed Citizens to appeal the order under Rule 23(f). *See* ECF No. 261 (notice of appeal); *see also* ECF No. 258 (order granting petition for allowance of appeal under Rule 23(f)). On appeal, the Third Circuit found that, based on the record as it then existed, it could not "make a definitive determination as to whether Plaintiffs' representative evidence is sufficient to satisfy Rule 23's commonality and preponderance requirements." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 129 (3d Cir. 2018). The Court of Appeals therefore vacated the class certification

order and remanded "with instructions that the District Court conduct a 'rigorous' examination of the factual and legal allegations underpinning Plaintiffs' claims before deciding if class certification is appropriate." *Id.* at 130.  On remand to the District Court, Plaintiffs filed a renewed motion for class certification.  *See* ECF No. 281.  After another appeal to the Third Circuit for reasons not directly related to the pending Motions, the case was later reassigned to the undersigned.

Following transfer, in December 2021 the Court held a three-day evidentiary hearing on Plaintiffs' motion for class certification.  *See* ECF Nos. 371, 372, 374.  In addition to the briefing and exhibits related to class certification that the parties had submitted in 2019, the parties submitted voluminous exhibits for the Court's consideration ahead of the December 2021 evidentiary hearing, as well as post-hearing briefing.  *See* ECF Nos. 379, 381, 387–389, 393, 396–98, 401, 404, 407.  During the evidentiary hearing, over 20 witnesses testified, including numerous current and former MLOs, Producing Sales Managers ("PSM") (the position within Citizens that directly supervises MLOs), and other current and former Citizens' managers.  *See* ECF No. 378.  After considering the evidence presented at the hearing and in the parties' voluminous pre-and post-hearing submissions, the Court denied Plaintiffs' motion for class certification, highlighting significant differences between MLOs.  *See* ECF No. 409.

After the Court's denial of Rule 23 class certification, the case progressed, but only as a finally certified FLSA collective action.  As best this Court can determine from the record, the definition of the collective finally certified by Judge Schwab in 2017 is "Citizens' mortgage loan officers who, during at least one (1) work week since November 23, 2012, worked more than 40 hours and earned commissions, non-discretionary bonuses, or other premiums." ECF No. 57 at 1–

2.[1]  The FLSA collective consists of 351 opt-in Plaintiffs, who are current or former MLOs. ECF No. 179 at 6. These MLOs worked in 18 different states, with many different managers, and at different times in the past decade. ECF No. 122-7; ECF No. 381, Ex. D-7 (the small sample of opt-ins who identified their managers listed about 60 different managers).

In light of the development of the record since the Court's 2017 decision finally certifying the FLSA collective, Citizens has now filed a Motion for Reconsideration, asking the Court to decertify the FLSA collective action. See ECF No. 435. Plaintiffs have also filed a Motion for Reconsideration, seeking reconsideration of the summary judgment dismissal of the recapture claims under the FLSA and the "regular-rate" claims under the PMWA. See ECF No. 436.

## II.     Standard of Review

A motion for reconsideration of an interlocutory order is subject to Federal Rule of Civil Procedure 54(b). *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016). Here, the orders that the parties are asking the Court to reconsider are interlocutory orders. *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 121, 133 (3d Cir. 2018) (certification of an FLSA collective action is an interlocutory order); *Zurn Indus., LLC v. Allstate Ins.*, 75 F.4th 321, 326–27 (3d Cir. 2023) (partial grants of summary judgment are interlocutory orders). Rule 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

---

[1] This definition comes from the Court's May 3, 2016 Order *conditionally* certifying an FLSA collective. ECF No. 57. The Special Master's report included a more general definition for the collective as, "all MLOs employed by Citizens nationwide within the past three years who have filed opt-in notices," but rather than citing Plaintiffs' briefing for final certification—or the opinion conditionally certifying a collective—cited the operative complaint at the time. ECF No. 179 at 5–6. Judge Schwab's Order adopting the Special Master's report did not separately define the finally-certified FLSA collective or indicate any deviations from the definition of the conditionally-certified collective. *See generally* ECF No. 216. Plaintiffs also did not define the collective in their original briefing for final certification. ECF No. 118.

4

Unlike final orders, which are governed by Rule 59(e), a court may reconsider an interlocutory order "even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or 'the need to correct a clear error of law or fact or to prevent manifest injustice.'" *See Qazizadeh*, 214 F. Supp. 3d at 295 (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Rather, a district court may reconsider an interlocutory order whenever it is "consonant with justice" to do so. *In re Anthanassious*, 418 F. App'x 91, 95 (3d Cir. 2011) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)). This discretion must be exercised "in a responsible way, both procedurally and substantively" with "a presumption against reconsideration of interlocutory decisions." *Id.* at 95–96. Although a court "has the power to revisit prior decisions of its own," it "should be loathe to do so in the absence of extraordinary circumstances." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

A party seeking reconsideration of an interlocutory order must establish good cause for doing so. *Qazizadeh*, 214 F. Supp. 3d at 295. Good cause will not exist when such a motion is "used as a means to reargue matters already argued," is merely "an attempt to relitigate a point of disagreement between the Court and the litigant," is nothing more than a "second bite at the apple," or raises "new arguments or evidence that could have been proffered prior to the issuance of the order in question." *Qazizadeh*, 214 F. Supp. 3d at 295–96 (internal quotation marks omitted).

### III. Citizens' Motion for Reconsideration

Citizens asks the Court to reconsider its decision to finally certify an FLSA collective action in light of the new evidence from the evidentiary hearing regarding Rule 23 class certification. Citizens asserts that the opt-in MLOs are not similarly situated, as required for final

5

certification of a collective, because significant differences exist between the opt-ins including "(1) disparate factual and employment settings, (2) potential defenses, and (3) fairness and procedural considerations." ECF No. 435-1 at 7.  Citizens notes that evidence from the evidentiary hearing undermines the position that managers consistently applied a common employer practice of discouraging MLOs from recording their overtime.

In light of the new evidence cited by Citizens, the Court finds that there is good cause for reconsidering whether final certification of the FLSA collective action was appropriate.  *See Qazizadeh*, 214 F. Supp. 3d at 295.  The Court may reconsider its certification decision based on new evidence and developments in the record.  *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001) ("A district court considering a motion to certify [or decertify] is entitled to look past the pleadings and examine the evidence produced during discovery . . . ."); *see, e.g.*, *Espenscheid v. DirectSat USA, LLC*, No. 09-CV-625-BBC, 2011 WL 2009967, at *7–8 (W.D. Wis. May 23, 2011) (decertifying an FLSA collective on the eve of trial), *aff'd*, 705 F.3d 770 (7th Cir. 2013);  *Owens v. City of Malden*, 568 F. Supp. 3d 77, 110–11 (D. Mass. 2021) (decertifying an FLSA collective after hearing the evidence at trial);  *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 578, 588 (E.D. La. 2008) (decertifying an FLSA collective because "the evidence of opt-in plaintiffs' job experiences presented at trial . . . reveal[ed] substantial variations").

    A.    **Legal Standard for Final Certification of FLSA Collective**

Under the FLSA, an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Although conceptually similar to a class action brought pursuant to Rule 23—in that it provides a mechanism for litigants to gather individual claims into a single action—a collective action under

§ 216(b) differs from a Rule 23 class action several important ways. *See Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 223 (3d Cir. 2016) (noting that although courts have borrowed "procedures, concepts, and nomenclature from the Rule 23 class action context . . . there remain important differences between a Rule 23 class action and a collective action"). Thus, because no "procedural rules [have] been promulgated to guide courts and parties in processing collective actions," many courts (including our Court of Appeals) have adopted a two-step procedure for determining whether an FLSA lawsuit may proceed as a collective action. *Id.* at 223–24.

At step one, a named plaintiff moves for "conditional certification," which is not a high bar to meet. *Id.* at 224. The named plaintiff need only make a "modest factual showing" that a factual nexus exists "between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Id.* (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)).

At step two, the burden on the plaintiff increases and, using evidence obtained through discovery, a plaintiff moves for final certification of the FLSA collective. *Id.* at 225–26; *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013).[2] A court will only grant final certification of an FLSA collective action if "the proposed collective plaintiffs are 'similarly situated.'" *Zavala*, 691 F.3d at 536 (quoting 29 U.S.C. § 216(b)). Being similarly situated "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 538. The plaintiff has the burden of making this showing by a preponderance of the evidence. *See id.* at 537.

---

[2] Although the burden is higher for final certification than conditional certification, the standard for final certification under the FLSA is still "quite distinct" from the standard governing class certification under Rule 23 and the standards should not be conflated. *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 131 (3d Cir. 2018).

7

To determine whether individuals are similarly situated, courts in this Circuit apply the so-called "ad hoc" approach. *See id.* at 536. This approach requires the district court "to consider[] all the relevant factors and make[] a factual determination on a case-by-case basis." *Id.* According to the Third Circuit, the factors a court should consider include, but are not limited to: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.* at 536–37. Courts should also consider whether "the existence of individualized defenses" renders members of a proposed collective dissimilar. *Id.* at 537 (citing *Ruehl*, 500 F.3d at 388 n.17). Some courts also look to "fairness and procedural considerations." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-cv-00085-CB, 2011 WL 6372873, at *9 (W.D. Pa. Dec. 20, 2011) (Bissoon, J.); *see also Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 86 (3d Cir. 2017).

B. Discussion

In light of the new evidence presented during and in connection with the evidentiary hearing, the Court finds that Plaintiffs have not demonstrated by a preponderance of the evidence that they are similarly situated. Therefore, decertification of the collective action is appropriate. *See Zavala*, 691 F.3d at 536–37.

At first glance, certain factors may appear to weigh in favor of a finding that the opt-in MLOs are similarly situated because of the similar claims that they advance, the similar compensation that they were paid, and the similar relief that they seek. *See id.* at 537. Upon further inspection, however, the remaining *Zavala* factors undermine Plaintiffs' position that the opt-in MLOs are similarly situated.

Crucial to the *Zavala* analysis is whether members of a collective action are "subject to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." 691 F.3d at 538. With the benefit of new evidence, the Court finds that Plaintiffs have not carried their burden that the opt-in MLOs were all subjected to the same common employer practice— namely, that they were discouraged from recording any overtime worked. Beyond vague suppositions that managers did not want anyone to record overtime, *see, e.g.* ECF No. 382 at 55:20–56:1, 57:9–13, some MLOs testified that no one ever expressly instructed them not to record or request pre-approval for overtime. *Id.* at 57:14–17. Indeed, some MLOs described instances where higher-ups at Citizens explicitly instructed them to record any overtime they worked. *Id.* at 124:16–125:7 (A. Reinig testified that his manager said "I know you're working more than 40 hours a week. You should report your overtime."); *id.* at 169:18–24 (R. Soda describing a region-wide conference call where all MLOs were instructed that "[p]er company policy, you're to report overtime"); *id.* at 139:16–140:11. In one notable example, an MLO testified that his HR representative asked him on multiple occasions to record the overtime that he worked. *Id.* at 105:2–106:9 (testimony of K. Gritz); *see also id.* at 174:21–175:11 (testimony of R. Soda indicating same). In addition, many of the MLOs provided varied and inconsistent testimony as to why they did not record overtime. *Id.* at 64:9–12 (L. Heydon recording less time to reduce his child support payments); *id.* at 106:7–107:12 (K. Gritz recording less overtime because of potential deductions in his commissions). In addition, the MLOs testified that they were always paid for any overtime they recorded. *See, e.g.*, i*d.* at 69:3–7 (testimony of L. Heydon); *id.* at 91:13–16 (testimony of K. Gritz); ECF No. 383 at 33:6–34:4 (testimony of C. Roach); *see also id.*at 198:13–199:2 (N. Monbouquette noting that she, as a manager, never denied someone's overtime request); ECF No. 382 at 139:12–15. Because Plaintiffs have not shown by a

preponderance of the evidence that they were subject to a common employer practice, they do not meet the definition of similarly situated articulated in *Zavala*. Although this finding, standing alone, warrants decertification, a number of additional *Zavala* factors also weigh in favor of decertification.

For example, under *Zavala*, the Court may consider whether the opt-in MLOs perform in the same corporate department, division, or location. 691 F.3d at 536–37. In this case, the opt-in MLOs are scattered across the country in 18 different states, ECF No. 122-7,[3] and worked for many different managers, ECF No. 381, Ex. D-7. In addition, a related relevant factor the Court can consider is the different "factual and employment settings" of the opt-in MLOs. *Halle*, 842 F.3d at 226. Here, the opt-in MLOs technically share the same job description, but they each have considerable flexibility with where they work, how they perform their duties, how they schedule their days, and how they follow up with clients.[4] Moreover, their managers have little oversight regarding their day-to-day activities. *See* ECF No. 382 at 164:24–165:2; *id.* at 134:2–7. Therefore, both of these factors undermine the notion that the opt-in MLOs are similarly situated.[5]

---

[3] The testimony from the hearing confirmed that the opt-in MLOs worked in different regions of the country. ECF No. 382 at 26:21–27:5 (R. Pedersen worked in New Hampshire); *id.* at 86:3–5 (K. Gritz worked in Pennsylvania); *id.* at 201:15–20 (V. Dal Pino worked in Illinois); *id.* at 218:21–23 (G. Creamens worked in Ohio).

[4] Some MLOs worked exclusively at home, while others traveled to branches, open houses, and other events. ECF No. 383 at 217:11–218:7 (M. Fiorello: "I never worked out of a mortgage loan office."); *id.* at 180:10, 183:19–20 (C. Waterhouse: "I was at home all the time."); ECF No. 382 at 219:18–220:12 (G. Cremeans: "I'll go to seminars, you know, like builder events, so I would be at convention halls, realtor offices, you know, open houses. And then some at home, too."). In addition, MLOs' schedules differed considerably. *See, e.g.*, ECF No. 382 at 43:13–14 (R. Pedersen worked 80 to 85 hours per week); *id.* at 14:13 (M. Fiorello worked 60 to 70 hours per week); *id.* at 207:19 (V. Dal Pino worked 45 to 50 hours worked per week); *id.* at 212:9 (A. Naji worked 50 hours per week); *id.* at 60:2 (L. Heydon worked 44 to 52 hours per week).

[5] Against this new evidence, Plaintiffs argue that Citizens improperly conflates the standard for certification of a Rule 23 class action with the standard for certification of an FLSA collective action. To be sure, the standard for certifying an FLSA collective action is "less burdensome" than the standard for certifying a Rule 23 class action. *In re Citizens Bank, N.A.*, 15 F.4th 607, 619 n.14 (3d Cir. 2021). The Court agrees with Plaintiffs that predominance or commonality pursuant to Rule 23(b)(3) should not be considered when determining whether to decertify an FLSA collective action. And the Court has not done so here. Rather, it has reviewed the new evidence in light of the test for final certification of an FLSA collective.

In light of the new evidence presented during and in relation to the evidentiary hearing, Citizens' Motion for Reconsideration will be granted. The Court will decertify the FLSA collective action, dismiss the opt-in MLOs without prejudice, and allow the remaining named Plaintiffs to proceed to trial.[6]

## IV. Plaintiffs' Motion for Reconsideration

Plaintiffs seek reconsideration of the Court's summary judgment decision dismissing the "recapture" claims under the FLSA and the "regular-rate" claims under the PMWA. In addition, Plaintiffs claim that Citizens' use of a new method of calculating overtime—implemented for the first time during the pendency of this case in April of 2018—violates the FLSA. For the reasons that follow, the Court will deny in part and grant in part Plaintiffs' Motion.

### A. The Court Will Not Disturb the Summary Judgment Decision Dismissing the "Recapture" Claims

First, Plaintiffs claim that the Court's 2017 dismissal of Plaintiffs' "recapture" claims was error. In essence, Plaintiffs argue that Citizens' policy of diminishing commission based on overtime worked turns the MLOs' commission "into a pseudo-bonus that permits [Citizens] to evade its overtime requirements." ECF No. 436-1 at 5. However, the Special Master's report, which Judge Schwab adopted, expressly considered and rejected this argument. *See* ECF No. 179 at 45–46 (rejecting Plaintiffs' "pseudo-bonus" argument because "Citizens' compensation policies paid overtime pay at a single rate that did not vary with overtime hours worked, and this overtime pay was later supplemented with commissions attributable to earned commissions, using a framework consistent with federal regulations."). As Citizens correctly notes, Plaintiffs' current request for reconsideration is nothing more than an attempt to relitigate an issue that has already

---

[6] It appears to the Court that the only proper remaining named Plaintiffs with respect to the FLSA portion of the case are Alex Reinig, Ken Gritz, and Bob Soda. Following issuance of this Opinion, the Court will provide the parties with an opportunity to confer and confirm this.

been considered and rejected by the Court, which is an improper basis for a motion for reconsideration. *Qazizadeh*, 214 F. Supp. 3d at 295–96; *see also MMG Ins. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 475 (M.D. Pa. 2020) ("Mere dissatisfaction with the Court's ruling is not a proper basis for reconsideration."). Apart from disagreement with the Court's prior decision on this issue, Plaintiffs have not provided any compelling reason for the Court to disturb its prior dismissal of the "recapture" claims. Therefore, the Court will deny this portion of Plaintiffs' Motion for Reconsideration.

> **B.    The Court Will Reverse the Summary Judgment Decision That Dismissed the "Regular Rate" Claim Under the PMWA**

Next, Plaintiffs argue that the Court erred in finding that Citizens' payment of overtime by a 0.5 multiplier, rather than a 1.5 multiplier of Plaintiffs' regular hourly rate, did not violate the PMWA. Specifically, Plaintiffs now assert that the Pennsylvania Supreme Court's 2019 decision in *Chevalier v. General Nutrition Centers, Inc.*, which post-dated Judge Schwab's decision on this issue, confirms that overtime under the PMWA must be paid with a 1.5 multiplier. 220 A.3d 1038 (2019).

The Court agrees on very narrow grounds. The Special Master's report advised the Court that Citizens did not violate the law under the PMWA by using a 0.5 multiplier to calculate overtime. *See* ECF No. 179 at 15 n.8, 17 (noting Citizens' "overtime premium" was a 0.5 multiplier). But this Court now finds that Plaintiffs are correct that an overtime premium for hourly workers that is one-half the regular rate violates the PMWA. The PMWA provides that employees "shall be paid for overtime not less than one and one-half times [their] regular rate." 43 P.S. § 333.104(c). An hourly worker must, accordingly, be paid overtime with a 1.5 multiplier. Therefore, the Court finds that Citizens was not entitled to summary judgment on the PMWA claim related to the proper overtime premium multiplier.

12

But the Court's decision here is not based on *Chevalier*, which is inapplicable here.  Under the FLSA, federal guidelines use the so-called fluctuating workweek ("FWW") method to calculate overtime for certain types of workers.  29 C.F.R. § 778.114(a).  Under the FWW method, an employer has already paid the initial one times the regular rate "through the payment of the weekly wages for the hours worked" and need only multiply the hours worked in excess of forty by a 0.5 multiplier.  *Chevalier*, 220 A.3d at 1041.  In doing so, an employer has satisfied its statutory obligations to pay overtime at a 1.5 multiplier.  *Id.*  The federal guidelines explicitly instruct employers to use the FWW method for salaried workers.  29 C.F.R. § 778.114.  By contrast, the PMWA and its guidelines are silent on whether the FWW method—and its 0.5 multiplier—apply to salaried workers.  *Chevalier*, 220 A.3d at 1047.  The Supreme Court of Pennsylvania held that, in light of the PMWA's silence, it would not apply the FWW method to salaried workers.  *Chevalier*, 220 A.3d at 1042, 1058–59.

That said, the FWW method is inapplicable to workers paid an hourly rate, as the amount paid is straightforward to calculate at 1.5 times the hourly rate (e.g. regular rate of $10 per hour is paid overtime of $15 per hour).  *Verderame v. RadioShack Corp.*, 31 F. Supp. 3d 702, 704 (E.D. Pa. 2014).  In this case, Plaintiffs are hourly workers who receive a commission.  ECF No. 382 at 78:11–17; 123:9–10; 168:14–22; 225:20–226:6;  ECF No. 383 at 184:15–16.  Because the commissions at issue are not "earned compensation," *see* ECF No. 179 at 36, 39 (citing the parties' compensation plan), the commissions are not paid until *after* the pay period, *see id.* at 37, and the PMWA (unlike the FLSA) does not have a provision or guideline that includes this type of commission as part of the regular rate, *see* 34 Pa. Code § 231.43, Plaintiffs are properly categorized as hourly workers for the purposes of the PMWA.  Thus, Plaintiffs' overtime rate is 1.5 times their regular rate of $11.50 per hour.

Therefore, to the extent that the Special Master's Report recommended that a 0.5 multiplier for overtime compensation for hourly workers complied with the law, such that the overtime claim under the PMWA should be dismissed, the Court's grant of summary judgment to Defendants will be reversed. At trial, Plaintiffs may present evidence that Citizens paid a 0.5, rather than 1.5, multiplier to Mr. Reinig, Mr. Gritz, and Mr. Soda and, if they prove that by a preponderance of the evidence, the jury would then calculate the damages owed to them.[7]

### C. The Court Will Deny Plaintiffs' Request to Introduce a New Legal Theory Absent From the Pleadings

Plaintiffs briefly argue that in April of 2018, Citizens switched to a new method for calculating commission-based overtime payments, which Plaintiffs assert violates the FLSA. Specifically, Plaintiffs take issue with Citizens' new method of calculating commission-based overtime payments by using calendar days at the initial step and weekdays at a later step. Plaintiffs' assertion appears to be an attempt to assert a new claim based on the implementation of a new method of calculating overtime that substantially post-dates the pleadings in this case. It is not appropriate to use a motion for reconsideration as a vehicle to assert new claims or legal theories that are absent from the pleadings. *See MMG Ins.*, 432 F. Supp. 3d at 475 ("A motion for reconsideration may not be used to present a new legal theory for the first time."); *see also United States v. Kalb*, 891 F.3d 455, 467 (3d Cir. 2018). Accordingly, the Court will deny this portion of Plaintiffs' Motion for Reconsideration.

---

[7] To be clear, the Court's reversal of this decision on the correct multiplier does not permit Plaintiffs to reassert their reduced commission argument, which has already been rejected by this Court. Rather, the Court is only reversing the dismissal of the PMWA claim regarding the allegation that Citizens "fail[ed] to pay one and one half times the regular rate to Plaintiffs[]" as its overtime premium. ECF No. 85 ¶ 253.

V.     **Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Reconsideration will be **GRANTED IN PART AND DENIED IN PART**, and Citizens' Motion for Reconsideration will be **GRANTED** as more fully set forth in the accompanying order.

DATED this 25th day of August, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record