# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX REINIG, *et al.*<br><br>                    Plaintiffs,<br><br>          v.<br><br>CITIZENS BANK, N.A.<br><br>                    Defendant. | CIVIL ACTION NO: 2:15-cv-01541-CCW |

## <u>BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF PMWA REGULAR RATE CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23</u>

*On behalf of the Plaintiffs:*


<u>/s Joshua S. Boyette</u>
Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

I.   INTRODUCTION .................................................................................................... 1

II.  PROCEDURAL BACKGROUND............................................................................ 2

III. STATEMENT OF FACTS ....................................................................................... 3
    A.   DEFENDANT'S EMPLOYMENT OF LOAN OFFICERS IN PENNSYLVANIA. ........ 3
    B.   Defendants' Overtime Pay Policies for MLOs within Pennsylvania between April 2012 and the Present. ............................................................................................................ 4
       1.   Citizens' Calculation of Standard Overtime ................................................ 4
       2.   Citizens' Calculation of Commission Overtime ......................................... 5

IV. LEGAL ARGUMENT................................................................................................ 7
    A.   LEGAL STANDARD............................................................................................. 7
    B.   THE COURT SHOULD NOT REACH THE MERITS OF WHETHER DEFENDANT'S OVERTIME PRACTICES VIOLATE THE PMWA......................................................... 9
    C.   BOTH SUB-CLASSES SATISFY THE PRE-REQUISITES FOR CERTIFICATION UNDER RULE 23(A)........................................................................................................ 10
       1.   Members of Both Sub-Classes are Ascertainable ..................................... 10
       2.   Both Sub-Classes are Sufficiently Numerous that Joinder is Impracticable............. 11
       3.   The Members of each Sub-Class Share Common Issues of Law and Fact with Their Sub-Class................................................................................................................. 12
       4.   The Named Plaintiffs' Claims are Typical of the Claims of the Putative Sub-Classes ......................................................................................................................... 13
       5.   Named Plaintiffs' will Adequately Represent the Interests of the Putative Sub-Classes ......................................................................................................................... 14
    D.   BOTH SUB-CLASSES SATISFY THE PREREQUISITES FOR CERTIFICATION UNDER RULE 23(B)(3) .............................................................................................. 16
       1.   Common Issues of Law and Fact Predominate over Individual Issues with Respect to the Sub-Classes' Claims............................................................................................. 16
       2.   The Class Action Method is Superior to Alternative Available Methods of Adjudication as to Both Sub-Classes. ...................................................................... 23
    E.   THE PROPOSED SUB-CLASSES SATISFY EACH PREREQUISITE FOR CERTIFICATION UNDER RULE 23(B)(2) ................................................................... 24

II.  CONCLUSION......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Keller v. T.D. Bank, N.A.,* 2014 U.S. Dist. LEXIS 155889 14 (E.D. Pa. 2014) ........................... 15

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ...................................................... 11, 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 133 S.Ct. 1184 (2013) ..................................... 9, 23

*Barnes v. American Tobacco Co*., 161 F.3d 127 (3d Cir. Pa. 1998) ........................................ 25

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006) ..................................................... 14

*Breig v. Covanta Holding Corp.,* No. 21-865, 2022 U.S. Dist. LEXIS 49306 E.D. Pa. Mar. 21,

    2022) ................................................................................... 22

*Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920 (W.D. Pa. 2011) ........................................ 22

*Chevalier v. Gen. Nutrition Ctrs., Inc*., 2016 Pa. Dist. & Cnty. Dec. LEXIS 300 (Ct. Com. Pl.

    Allegheny County, May 11, 2016) ....................................................... 22

*Chevalier v. Gen. Nutrition Ctrs., Inc.,* 656 Pa. 296 (2019) ...................................... 18, 19, 21, 22

*Clarke v. Lane*, 267 F.R.D. 180 (E.D. Pa. 2010) ......................................................... 25

*Danvers Motor Co., Inc. v. Ford Motor Co.,* 543 F.3d 141 (3d Cir. 2008) ................................... 8

*Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) ................................................... 15

*Foster v. Kraft Foods Global, Inc.,* 285 F.R.D. 343 (W.D. Pa. 2012) ...................................... 22

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ......................................... 8

*Hansberry v. Lee*, 311 U.S. 32 (1940) ................................................................. 14

*Heimbach v. Amazon.com, Inc. (In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards*

    *Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191, 200 (Pa. 2021) ....................... 18

*Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912 (3d Cir. 1992) ........................................ 13

*Huber v. Simon's Agency, Inc.,* 84 F.4th 132 (3d Cir. 2023) ............................................. 16

*In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.,* 795 F.3d 380 (3d Cir. 2015) 12, 14

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. Pa. 2008) ........................... 8

*In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585 (3d Cir. 2009) ..................................... 13

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.,* 967 F.3d 264 (3d Cir. 2020) ........................................................................................................... 17

*Johnston v. HBO Film Mgmt.,* 265 F.3d 178 (3d Cir. 2001) ....................................................... 14

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ................................................... 10

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*., 311 F.R.D. 590 (C.D. Cal. 2015).........17, 20

*Reinig v. RBS Citizens, N.A.,* 912 F.3d 115 (3d Cir. 2018) .......................................................... 8

*Reyes v. Netdeposit, LLC,* 802 F.3d 469 (3d Cir. 2015) ........................................................ 12, 16

*Rivet v. Office Depot, Inc.,* 207 F. Supp. 3d 417 (D.N.J. 2016) .................................................. 17

*Second Mortg. Loan Litig.*, 418 F.3d 277 (3d Cir. 2005) ........................................................... 14

*Senne v. Kansas City Royals Baseball Corp.,* 934 F.3d 918 (9th Cir. 2019)............................... 17

*Szczubelek v. Cendant Mortgage Corp*., 215 F.R.D. 107 (D.N.J. 2003) ..................................... 11

*Tyco Labs, Inc. v. Kimball*, 444 F. Supp. 292 (E.D. Pa. 1977)...................................................... 14

*Univ. of P.R. Ret. Sys. v. Lannett Co.,* No. 21-3150, 2023 U.S. App. LEXIS 9143 (3d Cir. Apr. 18, 2023) ....................................................................................................................... 17

*Verderame v. RadioShack Corp.,* 31 F. Supp. 3d 702 (E.D. Pa. 2014) .................................. 18, 22

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ................................................................. 12

*Wofford v. Seba Abode, Inc.,* No. 2:20-cv-00084-RJC, 2023 U.S. Dist. LEXIS 132842 (W.D. Pa. Aug. 1, 2023) ....................................................................................................................... 10, 12

**Statutes**

43 P.S. § 333.103(d) ..................................................................................................................... 18

43 P.S. § 333.104(c)...................................................................................................................... 18

**Other Authorities**

52 Pa. B. 2701, 2705 (May 7, 2022) ................................................................................ 22

**Rules**

Fed. R. Civ. P. 23(b)(2) .............................................................................................. 1, 2

Fed.R.Civ.P. 23(b)(3) ........................................................................................ 1, 2, 8, 16

**Treatises**

Manual for Complex Litigation, Fourth S21.222  (2005) ............................................ 10

**Regulations**

34 Pa. Code § 231.43(a) ................................................................................................ 18

34 Pa. Code § 231.43(d). ............................................................................................... 19

34 Pa. Code § 234.42 .................................................................................................... 18

34 Pa. Code § 234.43(g) ................................................................................................ 22

## I.    <u>INTRODUCTION</u>

Plaintiffs Alex Reinig, Kenneth Gritz, and Robert Soda ("Named Plaintiffs"), former Mortgage Loan Officers (MLOs) who worked for Defendant Citizens Bank in Pennsylvania, move this Court to certify two Pennsylvania sub-classes to efficiently and effectively adjudicate their Pennsylvania Minimum Wage Act ("PMWA") overtime claims. Defendant pays overtime to Pennsylvania MLOs in two different but related manners. On a weekly basis, Defendant pays overtime calculated based on the amount it pays the MLOs as their weekly draw/hourly pay ("Standard Overtime"). Defendant also pays MLOs additional overtime once a month based on the amount of commissions allocated across the workweeks in which Defendants deems the commissions earned ("Commission Overtime"). Plaintiffs allege that both types of overtime payments violate the Pennsylvania Minimum Wage Act ("PMWA") by failing to pay one-and-one-half times the regular rate. Named Plaintiffs now seek to certify two related and overlapping sub-classes of these claims pursuant to Fed. R. Civ. P. 23(b)(3) and Fed. R. Civ. P. 23(b)(2):

1.   **PMWA Standard Overtime Sub-Class:** all Mortgage Loan Officers employed by Defendant in Pennsylvania between November 24, 2012 and the present, who were paid Standard Overtime by Defendant in at least one workweek; and

2.   **PMWA Commission Overtime Sub-Class:** all Mortgage Loan Officers employed by Defendant in Pennsylvania between November 24, 2012 and the present, who were paid Commission Overtime by Defendant in at least one workweek.

All Named Plaintiffs are members of both subclasses. Pursuant to this Court's March 11, 2024 Order, the Parties submitted notices setting forth their respective views as to how Defendant calculates and pays Standard Overtime and Commission Overtime. ECF Doc. No. 501, 503. These notices "demonstrated . . . there is no factual dispute as to how Citizens calculates overtime in either the standard or commission context." ECF Doc. No. 505.

1

Accordingly, both the Standard Overtime claim and the Commission Overtime claim challenge only the legality of Defendant's methodology and policy under the PMWA. A challenge to the legality of a single, uniformly applied corporate policy mechanically applied to all class members is the paradigm for a certifiable class under Fed. R. Civ. P. 23(b)(3) and Fed. R. Civ. P. 23(b)(2). *See Hargrove v. Sleepy's LLC,* No. 22-2040, 2023 U.S. App. LEXIS 14553, at *1 (3d Cir. June 12, 2023). Here, for each sub-class, the common predominating question is simply whether Defendant's overtime calculation methods complied with the PMWA. Given that the answer to these questions will resolve liability for each sub-class at a single stroke, the Court should grant Plaintiffs' motion and certify these classes and claims. *See Hargrove v. Sleepy's LLC,* No. 22-2040, 2023 U.S. App. LEXIS 14553, at *1 (3d Cir. June 12, 2023) (identical claims based on nearly identical facts should be certified under Rule 23(b)(3)).

## II.   <u>PROCEDURAL BACKGROUND</u>

Named Plaintiffs Alex Reinig, Kenneth Gritz, and Robert Soda filed the instant matter in November 2015, alleging, *inter alia,* that Defendant Citizens Bank violated the Pennsylvania Minimum Wage Act ("PMWA") by failing to a pay an overtime premium of one- and one-half times the regular rate" as required under Pennsylvania law ("PMWA Regular Rate Claim."). In early 2017, the Plaintiffs moved to certify this claim as a Rule 23(b)(3) class action, and the parties cross-moved for summary judgment. On August 22, 2017, Judge Schwab issued an order which *inter alia* certified the PWMA claim as a Rule 23(b)(3) class action but also granted Defendant summary judgment. ECF Doc. No. 216 at 5.

After two different interlocutory appeals, this case was reassigned to the Court. ECF Doc. No. 346. On July 5, 2023, the Court granted the Parties leave to file respective motions for reconsideration as the August 22, 2017 Order. ECF Doc. No. 433. On July 21, 2023, Plaintiffs moved the Court to reconsider *inter alia* the prior grant of summary judgment as to the

Pennsylvania Plaintiffs' PMWA Regular Rate Claim. ECF Doc. No. 436. August 25, 2023, the Court granted Plaintiff's motion for reconsideration in part and vacated the summary judgment ruling as to the PMWA Regular Rate Claim. ECF Doc. No. 449. Plaintiffs then sought leave to send notice to class which Judge Schwab had previously certified as to the PMWA claim, which Defendant opposed, arguing that the certification of that class—which Defendant had not opposed at the time—had been vacated by the Third Circuit's 2019 decision.

On September 15, 2023, the Court held that the Third Circuit *had* vacated the prior Rule 23 class certification order as to the Pennsylvania PMWA claims, but also held Plaintiffs could renew their motion to certify the now-revived PMWA claim. ECF Doc. No. 466. On December 22, 2023, Plaintiffs filed that renewed motion, ECF Doc. No. 483, which the Court denied without prejudice. ECF Doc. No. 496-497. On March 21, 2024, the Court issued an Order granting leave for Plaintiffs to renew their class certification motion as to the PMWA Regular Rate claim, while also recommending Plaintiffs divide their proposed class into two sub-classes, "one pertaining to standard overtime and one pertaining to commission overtime." ECF Doc. No. 509.

## III.   STATEMENT OF FACTS

### A.   DEFENDANT'S   EMPLOYMENT   OF   LOAN   OFFICERS   IN PENNSYLVANIA.

Defendant is a large retail and commercial bank headquartered in Rhode Island with operations throughout the Northeast and Midwest, including in Pennsylvania. As part of its operations, Defendant employed Mortgage Loan Officers ("MLOs") to sell residential mortgage loans to Defendant's customers through and in connection with Defendant's offices and branches located in Pennsylvania. Def. Answer to Second Amended Complaint, ECF Doc. No. 213 at ¶ 24. Between April 2012 and the present, Defendant employed more than 180 MLOs within Pennsylvania. *See* Declaration of Joshua S. Boyette, Esq., attached hereto as Exhibit A, at ¶ 12.

3

**B.**     **Defendants' overtime pay policies for MLOs within Pennsylvania between April 2012 and the Present.**

On March 11, 2024, the Court ordered the Parties to submit notices setting forth the way Citizens calculates Standard and Commission Overtime for Pennsylvania MLOs using a hypothetical fact-pattern proposed by the Court. ECF Doc. No. 499. The Parties did so on March 13, 2024. ECF Doc. No. 500 and 501. After reviewing those notices, the Court concluded the notices demonstrated "there is no factual dispute as to how Citizens calculates overtime in either the standard or commission context." ECF Doc. No. 505.

**1.**     **Citizens' Calculation of Standard Overtime**

Defendant's compensation plan provides MLOs receive a weekly non-recoverable draw on commissions of their hourly pay up to 45 hours per week. *See* ECF Doc. No. 498 at 2-3. Pursuant to the Plan, for each hour reported up to 45 hours, MLOs receive a draw payment equal to their hourly rate. *Id.* Defendant calculates the overtime premium it pays on top of this draw payment by multiplying the hourly rate by 0.5, and multiplying this number by the number of hours worked over 40 up to 5 hours. ECF Doc. No. 179 at 15, fn. 8. Above 45 hours worked in the week, Defendant pays one-and-one-half times the hourly rate as excess Standard Overtime compensation.

Under the Court's March 11 hypothetical, the MLO has an hourly rate of $10/hour and works 45 hours. His total compensation for the week is calculated as followed:

**Step 1:** Draw = $450 = (45 Hours) × ($10/hour)

**Step 2:** Standard Overtime = $25 = (5 Hours) × ($10/hour x 0.5)

**Step 3:** Excess Standard Overtime = $0 = (0 Hours) × ($10/hour x 1.5)

**Step 4:** Total Compensation = **$475** = $450 + $25 + $0

*See* ECF Doc. No. 500 and 501; ECF Doc. No. 505.

4

A review of actual pay records confirms that Defendant in fact calculates and pays Standard Overtime in this manner. Named Plaintiff Ken Gritz reported three hours of overtime for the workweek ending May 10, 2015. *See* Boyette Decl., Ex. A at ¶¶ 14-15; Gritz May-June 2015 Paychecks, attached hereto as Ex. A-2, at CITIZENS0000315-320. Gritz's base compensation hourly rate was $11.50 per hour. The total pay he received that week was $511.75. Ex. A-2 at CITIZENS0000319. Applying the above equation to Gritz' Standard Overtime yields the following:

**Step 1:** Draw = $494.50 = (43 Hours) × ($11.50/hour)

**Step 2:** Standard Overtime = $17.25 = (3 Hours) × ($11.50/hour × 0.5)

**Step 3:** Excess Standard Overtime = $0 = (0 Hours) × ($10/hour × 1.5)

**Step 4:** Total Compensation = **$511.75** = $491.50 + $17.25 + $0

It is undisputed that Defendant paid Standard Overtime using this same methodology for Named Plaintiffs Soda and Reinig as well, as well as all other members of the PMWA Standard Overtime Sub-Class. *See, e.g.,* Ex. A at ¶¶ 18-19; Ex. A-3 at CITIZENS0000406 (Soda); Ex. A. at ¶¶ 24-25; Ex. A-4 at CITIZENS0000204; *See* First Report of Special Master David Cohen, ECF Doc. No. 179 at 9; ECF Doc. No. 500.

## 2.   <u>Citizens' Calculation of Commission Overtime</u>

Defendant's compensation plans also pays MLOs earned commissions, allocates them on a weekly basis across the workweeks in which Defendant deems the commissions were earned, and then pays overtime based on and on top of these earned commissions ("Commission Overtime."). Defendant calculates this Commission Overtime by dividing the weekly commission allocation by the hours worked in that week to derive the Commission Regular Rate, dividing the Regular Rate by 2, and the multiplying by the number of overtime hours reported in that week. See ECF Doc. No. 498 at 4.

In responding to the Court's March 11 hypothetical, Defendant set forth how commission overtime would be calculated for an MLO whose weekly commission allocation was $2000, and who reported working 45 hours:

**Step 1:** Commission Regular Rate = $2000 in commissions for the earnings period divided by 45 hours reported in the earnings period = $44.44.

**Step 2:** $44.44 divided by 2 = $22.22.

**Step 3:** Commission Overtime = $22.22 × 5 hours of overtime reported = $111.11

*See* ECF Doc. No. 500 at 4-5.

A review of actual pay records demonstrates Named Plaintiffs and Pennsylvania MLOs were in fact paid Commission Overtime consistent with this calculation. Named Plaintiff Ken Gritz' June 19, 2015 paycheck #1285814, he received a commission payment of $1,121.05, and an additional overtime payment for 15 hours of overtime of $39.10. *See* Boyette Decl., Ex. A, at ¶¶ 14-15; Gritz May-June 2015 Paychecks, attached hereto as Ex. A-2. Gritz's $1,1212.05 commission was earned during his five May 2015 pay-periods. *See* Ex. C; Ex. D at 9. For each of these five pay periods, he reported 3 overtime hours. Ex. A at ¶ 15; Ex. A-2 at CITIZENS_320-316. For these five pay periods, Defendant paid Gritz a total of $39.10 of Commission Overtime, for 15 hours of overtime. Ex. A at ¶ 16. It calculated this amount as follows:

**Workweek ending May 3, 2015**:

**Step 1:** Commission Regular Rate = $53.38 in commissions for the earning period divided by 43 hours worked in the earnings period = $1.24.

**Step 2:** $1.24 divided by 2 = $0.62.

**Step 3:** Commission Overtime = $0.62 × 3 hours of overtime worked = $1.86.

*Id.*

**Workweeks ending May 10, May 17, May 24, and May 31**

With respect to the remaining four May 2015 pay periods, the Commission Overtime payments attributable to these four weeks were calculated as follows:

**Step 1:** Commission Regular Rate = $266.92 in commission for each earning period divided by the 43 hours worked in each earnings period = $6.21.

**Step 2:** $3.10 divided by 2 = $3.10.

**Step 3:** Commission Overtime = $3.10 × 3 hours of overtime worked = $9.31.

*Id.*

Defendant paid Commission Overtime using this same methodology for Named Plaintiffs Soda and Reinig, as well as for putative Commission Overtime Sub-Class members James Sutcliffe and David Bouder. *See* Ex. A at ¶¶ 21; Ex. A-3 at CITIZENS0000402-408 (Soda); Ex. A. at ¶¶ 26-25; Ex. A-4 at CITIZENS0000204-210; Ex. A at ¶¶ 29-30 (Sutcliffe); Summary of CONFIDENTIAL – Opt-In Pay and Draw Data 16Feb2017, attached hereto as Exhibit A-5; Ex. A at ¶¶ 33-34 (Bouder); Summary of CITIZENS_ESI00320037.csv, attached hereto as Exhibit A-6.

Moreover, in addition to Defendant's Notice outlining how it calculates Commission Overtime, Defendant provided a sworn interrogatory confirming its method for calculating Commission Overtime by dividing the Commission Regular Rate by 2 is uniformly applied to all Pennsylvania MLOs who were paid Commission Overtime and who therefore fall within the Commission Overtime Sub-Class definition. *See* Defendant's Response to Special Interrogatory, *attached hereto as* Exhibit C; Excerpt of Second Report of Dr. Robert Speakman, *attached hereto as* Exhibit D, at 9-10.

## IV.   LEGAL ARGUMENT

### A.   LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs a District Court's consideration of a motion for class certification. A district court considering a motion for class certification must undertake "a rigorous analysis" to ensure that the requirements of Rule 23(a) are met. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982). If all the requirements are met, the court must then determine if the class is permissible under *any* subset of Rule 23(b). *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008). In determining whether to certify a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *In re Hydrogen Peroxide,* 552 F.3d at 318.

Where the representative plaintiffs satisfy all four prerequisites under Rule 23(a) - numerosity, commonality, typicality, and adequacy – "a class of one of three types [set forth in Rule 23(b)] (each with additional requirements) may be certified." *In re Hydrogen Peroxide*, 552 F.3d at 309 n.6. At that point, the Court determines whether the action falls into one of three categories of legal actions set forth in Rule 23(b). Under Rule 23(b)(3), which Plaintiffs seek certification under, the court must find that two additional factors – predominance and superiority – are also met. Predominance requires that the questions of law or fact common to class members predominate over any questions affecting only individual members. *Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 127 (3d Cir. 2018). Superiority requires a finding that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Danvers Motor Co., Inc. v. Ford Motor Co.,* 543 F.3d 141, 149 (3d Cir. 2008).

For the reasons that follow, Plaintiffs have satisfied all the prerequisites for class certification under Rule 23(a) and Rule 23(b)(3) as to their PMWA Regular Rate Claim, and, accordingly, the Court should grant Plaintiffs' motion.

**B.**     **THE COURT SHOULD NOT REACH THE MERITS OF WHETHER DEFENDANT'S OVERTIME PRACTICES VIOLATE THE PMWA.**

Plaintiffs have alleged that Citizens "fail[ed] to pay one- and one-half times the regular rate to Plaintiffs" as its overtime premium for all overtime hours worked to the Named Plaintiffs and those similarly situated who worked in Pennsylvania, in violation of the Pennsylvania Minimum Wage Act ("PMWA"). ECF Doc. No. 85 at ¶ 253; ECF Doc. No.208 at ¶ 257 ("PMWA Regular Rate Claim"). Plaintiffs claim that Defendant violated the PMWA as to the PMWA Standard Overtime Sub-Class in how it calculated Standard Overtime, and that Defendant separately violated the PMWA as to the PMWA Commission Overtime Sub-Class in how it calculated Commission Overtime.

Importantly, though Plaintiffs contend Defendant's violations of the PMWA are clear and straight-forward, the instant motion neither **seeks nor requires** the Court enter merits determinations regarding whether Citizen's overtime formula violated state law. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 133 S.Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied"). Instead, the instant motion is limited to demonstrating that the determination of **whether** Citizen's overtime computation formulas violate the law is a common and predominating question justifying class certification. *Id.* Because the question of whether Defendant's overtime compensation payment practices violate the law is amenable to a single answer for each sub-class, which, for that sub-class, will determine liability, delving into the merits of the liability question is not required, and, because it is not required, should not be considered. *Id.*; *compare Wofford v. Seba Abode, Inc.,* No. 2:20-cv-00084-RJC, 2023

9

U.S. Dist. LEXIS 132842, at *45 (W.D. Pa. Aug. 1, 2023) (addressing merits of defendant's defense because existence of that defense was relevant to class certification analysis).

### C.      BOTH   SUB-CLASSES   SATISFY   THE   PRE-REQUISITES   FOR CERTIFICATION UNDER RULE 23(A)

#### 1.      Members of Both Sub-Classes are Ascertainable

A class definition must be "precise, objective, and presently ascertainable." Manual for Complex Litigation, Fourth S21.222 at 305 (2005); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012). Here, the members of both sub-classes are precise, objective, and ascertainable. Plaintiffs have proposed the following definition for the PMWA Standard Overtime Sub-Class: **All Mortgage Loan Officers employed by Defendant Pennsylvania between November 24, 2012 and the present, who were paid Standard Overtime by Defendant in at least one workweek.** This definition is precise, objective, and ascertainable, as Defendant has already demonstrated it can identify these individuals, and Plaintiffs have already identified the class members hired prior to 2017 who fall within this definition by reviewing the pay and hours data Defendant previously produced. *See* Ex. A at ¶¶ 11.

Likewise, Plaintiffs have proposed the following definition for the PMWA Commission Overtime Sub-Class: **All Mortgage Loan Officers employed by Defendant Pennsylvania between November 24, 2012 and the present, who were paid Commission Overtime by Defendant in at least one workweek.** This definition is also precise, objective, and ascertainable, Defendant has demonstrated it can identify these individuals, and Plaintiffs have already identified the class members hired prior to 2017 who fall within this definition by reviewing the pay and hours data previously produced. *See* Ex. A at ¶ 12. Accordingly, both sub-classes satisfy the ascertainability requirement of Rule 23(a).

### 2. Both Sub-Classes are Sufficiently Numerous that Joinder is Impracticable

The first prerequisite plaintiffs must meet under Rule 23(a) is numerosity. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable." See Fed. R. Civ. P. 23(a)(1). This requirement does not demand that joinder be impossible. *Szczubelek v. Cendant Mortgage Corp*., 215 F.R.D. 107, 116 (D.N.J. 2003). While there is no magic number of class members that is necessary to sustain a class action, as a general rule, a class of forty members or more will typically meet the numerosity requirement based on numbers alone. *See In re Modafinil Antitrust Litig.,* 837 F.3d 238, 250 (3d Cir. 2016).

The Standard Overtime Sub-Class satisfies the numerosity requirement because the number of Pennsylvania MLOs who worked for Defendant since November 2012, were hired before January 2017, and who recorded at least one hour of overtime exceeds 40 individuals. *See* Ex. A at ¶ 11. Because the sub-class will also include MLOs hired after January 2017 through the present, the number of class members will be substantially higher, though numerosity is established even without inclusion of such individuals. *Id*.

Likewise, the PMWA Commission Overtime Sub-Class satisfies the numerosity requirement because the number of Pennsylvania MLOs who worked for Defendant since November 2012, were hired before January 2017, and whom Defendant paid Commission Overtime also exceeds 40 individuals. *See* Ex. A at ¶ 12. Again, because the sub-class will also include MLOs hired after January 2017, the actual number of sub-class members will, again, be substantially higher. Accordingly, numerosity is satisfied for both sub-classes.

3.      **The Members of each Sub-Class Share Common Issues of Law and Fact with the Sub-Class**

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class[.]" *Reyes v. Netdeposit, LLC,* 802 F.3d 469, 486 (3d Cir. 2015). However, "commonality does not require perfect identity of questions of law or fact among all class members." *Id.* Rather, "even a single common question will do." *Id.*; *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Reyes,* 802 F.3d at 486. Commonality tests "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.,* 795 F.3d 380, 398 (3d Cir. 2015). "To bring a class action, the named plaintiffs must show that each class member was subjected to the specifically challenged practice in roughly the same manner." *Id.* at 398-399.

Here, Plaintiffs allege that Defendant violated the PMWA as to Standard Overtime Sub-Class's claims by paying an overtime premium on top of its draw/hourly-pay using only a 0.5 multiplier to the regular rate. *See* Statement of Facts, *supra,* at 4. As the Court noted, "there are no disputes of fact" as to how Defendant calculates Standard Overtime—only whether its calculation complies with the requirements of the PMWA. ECF Doc. No. 505, 500, 503. Where the class claim is based on an allegation that a common and uniformly applied policy or practice was unlawful, courts have readily found that the commonality prerequisite has been satisfied. *See In re Cmty. Bank.,* 795 F.3d at 398-399; *Wofford v. Seba Abode, Inc.,* No. 2:20-cv-00084-RJC, 2023 U.S. Dist. LEXIS 132842, at *44 (W.D. Pa. Aug. 1, 2023). The Court should do so here.

Commonality is satisfied for the Commission Overtime Sub-Class for the same reason. Plaintiffs allege Defendant violated the PMWA as to the PMWA Commission Overtime Sub-Class

by calculating Commission Overtime by multiplying the regular rate by 0.5 instead of by 1.5. *See* Statement of Facts, *supra,* at $$$. The parties do not dispute that the commission regular rate was divided in half before being used to calculate Commission Overtime. *See, e.g.,* ECF Doc. No. 500 at 4-5. Accordingly, the only dispute is whether this formula was legal. As with the calculation of Standard Overtime, Plaintiffs challenge the legality of Defendant's common method for calculating overtime, and, accordingly, satisfy the Rule 23(a) commonality requirement for this sub-class as well. *See In re Cmty. Bank.,* 795 F.3d at 398-399; *Wofford v. Seba Abode, Inc.,* No. 2:20-cv-00084-RJC, 2023 U.S. Dist. LEXIS 132842, at *44.

### 4.     The Named Plaintiffs' Claims are Typical of the Claims of the Putative Sub-Classes

Rule 23(a)(3) requires that the claims or defenses of the represented parties be typical of the claims or defenses of the class. Typicality requires "that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 597 (3d Cir. 2009) (emphasis in original). However, perfect alignment is not required; the representatives' claims must merely be "typical, in common-sense terms, of the class." *Id.* at 598.

Moreover, factual differences between representatives and class members do not defeat typicality when the claims arise from the same practice or course of conduct. *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992). The Third Circuit underscores that commonality and typicality do not mandate identical claims among all class members and that factual variations do not preclude certification. *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Here, there are no material factual variations between the class members' claims. Both sub-classes challenge a common policy that was applied uniformly to all class members,

including the Named Plaintiffs. Accordingly, Rule 23(a) typicality is also established for both sub-classes.

5.    <u>Named Plaintiffs' will Adequately Represent the Interests of the Putative Sub-Classes</u>

Rule 23(a)(4) allows class certification only if the named representatives will "fairly and adequately protect the interests of the class." This requirement is essential to due process, as a judgment in a class action is binding on all class members. *Hansberry v. Lee*, 311 U.S. 32 (1940). The adequacy requirement "encompasses two distinct inquiries (1) whether the named plaintiffs' interests are sufficiently aligned with the absentees, and (2) [whether] it tests the qualifications of counsel to represent the class." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 303 (3d Cir. 2005) (internal quotation marks omitted); *accord, e.g., Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); *Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 185 (3d Cir. 2001).

"The principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 393 (3d Cir. 2015). The adequacy of representation requirement tends to merge or overlap with the commonality and typicality requirements. *See Beck*, 457 F.3d at 296. Again, however, absolute identity of claims among class members is not required.

With respect to the Named Plaintiffs' adequacy as representatives, courts look to whether the proposed representatives have conflicts that make it likely that the class members' interests will be disregarded. *Tyco Labs, Inc. v. Kimball*, 444 F. Supp. 292, 299 (E.D. Pa. 1977). "The linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen AG*, 681 F.3d 170, 183

14

(3d Cir. 2012). Here, as set forth above, the Named Plaintiffs have the same claims as that of the putative class members, meaning their interests are aligned with those of the class members. The Named Plaintiffs will also adequately and fairly represent the sub-classes, as they have no conflicts with the sub-classes, are not antagonistic to same, and are fully capable of participating in the litigation. *See* Ex. E at ¶¶ 6-8; Ex. F at ¶¶ 6-8; Ex. G at ¶¶ 6-8.

Moreover, the existence of sub-classes poses no issue to the adequacy of the Named Plaintiffs. Because the Named Plaintiffs have claims identical to those of **each** sub-class, they have every incentive to diligently represent both sub-classes and advance both sub-classes' claims. Moreover, there are no fundamental conflicts between the two sub-classes, as **all** Commission Overtime Sub-Class members will also be Standard Overtime Sub-Class members, and many (likely most) Standard Overtime Sub-Class members will also be Commission Overtime Sub-Class members.

Plaintiffs satisfy the second element of the adequacy prong as to the qualifications of counsel because Plaintiffs' counsel have substantial experience litigating complex actions, including class actions and certified collective actions with tens of thousands of class members alleging wage and hour violations. *See* Ex. A at ¶¶ 3-10; s*ee also Keller v. T.D. Bank, N.A.,* 2014 U.S. Dist. LEXIS 155889 at *14 (E.D. Pa. 2014) (finding that Mr. Swartz and Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class [of 25,000] competently, diligently, and with professionalism throughout the course of this litigation"). Moreover, Plaintiffs' counsel have litigated this instant case with diligence and expertise since 2015, thereby demonstrated their qualifications and commitment to protecting and advancing the claims of the class.

Accordingly, because the sub-classes are represented by Named Plaintiffs whose claims are identical to those of the sub-classes, and because the Named Plaintiffs do not have interests antagonistic to those of the sub-classes, and because the Plaintiffs are represented by experienced counsel with extensive backgrounds in litigating large wage and hour class actions, the Court should find that Plaintiffs have met the adequacy prerequisite for class action certification under Rule 23(a).

### D.   BOTH SUB-CLASSES SATISFY THE PREREQUISITES FOR CERTIFICATION UNDER RULE 23(B)(3)

Rule 23(b)(3) sets forth two additional requirements to class certification: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For the following reasons, the proposed sub-classes also satisfy these prerequisites.

#### 1.   Common Issues of Law and Fact Predominate over Individual Issues with Respect to the Sub-Classes' Claims.

To be certified as a class under Rule 23(b)(3), common issues must predominate over individual issues. The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Reyes v. Netdeposit, LLC,* 802 F.3d 469, 488 (3d Cir. 2015) (quoting *Amchem*, 521 U.S. at 623-24). Predominance is satisfied where plaintiff "demonstrate[s] that the elements of [its] claim[s] . . . are capable of proof at trial through evidence common to the class, as opposed to individualized evidence." *In re Hydrogen Peroxide*, 552 F.3d at 311-12.

The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Huber v. Simon's Agency, Inc.,* 84 F.4th 132, 156 (3d Cir. 2023). To answer that question,

16

courts must look to the elements of the claim to assess whether the class members can prove their claims with evidence common to the class rather than individual to its members. *Id.* at 156. Still, the need to prove damages individually does not disturb a finding of predominance. *Id.*; *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.,* 967 F.3d 264, 272 (3d Cir. 2020).

Where the claim is that a single uniform policy was unlawful and resulted in the identical type of damages for the class members, courts find that the predominance requirement is easily satisfied. *See Hargrove v. Sleepy's LLC,* No. 22-2040, 2023 U.S. App. LEXIS 14553, at *1 (3d Cir. June 12, 2023) (identical claims based on nearly identical facts satisfy predominance requirement and should be certified); *Univ. of P.R. Ret. Sys. v. Lannett Co.,* No. 21-3150, 2023 U.S. App. LEXIS 9143, at *11 (3d Cir. Apr. 18, 2023) (single theory of liability tied to single theory of damages satisfies predominance analysis); *Rivet v. Office Depot, Inc.,* 207 F. Supp. 3d 417, 432 (D.N.J. 2016) (finding predominance where claim was based on a uniform corporate overtime policy alleged to be illegal); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*., 311 F.R.D. 590, 611-12 (C.D. Cal. 2015) (citing cases). "Common corporate policies . . . carry great weight for certification purposes, and **predominance is rarely defeated in cases where such uniform policies exist**." *Hargrove,* 2023 U.S. App. LEXIS 14553 at *7 (quoting *Senne v. Kansas City Royals Baseball Corp.,* 934 F.3d 918, 944 (9th Cir. 2019)).

As set forth above, and as has already been determined by the Court, there is no factual dispute as to how Defendant calculates and pays either Standard Overtime or Commission Overtime. ECF Doc. No. 505, 500, 503. With respect to the Standard Overtime Sub-Class, Plaintiffs allege Defendant violated the PMWA by failing to pay Standard Overtime at 1.5 times the regular rate. With respect to the Commission Overtime Sub-Class, Plaintiffs' allegations are

17

similar—that Defendant violated the PMWA by failing to pay Commission Overtime at 1.5 times the regular rate.

The Pennsylvania Supreme Court has affirmed that the PMWA manifests Pennsylvania's "strong public policy protecting an employee's right to be adequately compensated for all hours for which they work." *Heimbach v. Amazon.com, Inc. (In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191, 200 (Pa. 2021). Specifically, the PMWA provides greater benefits and protections than its federal counterpart, the Fair Labor Standards Act. *Id.* at 201.

The PMWA requires an employer to compensate employees with an overtime premium of at least **<u>1.5 times their regular rate for each hour worked beyond 40 per workweek</u>**, and does not permit employers to use a 0.5 rate even in circumstances where such would be permissible under the FLSA. 43 P.S. § 333.104(c); *Verderame v. RadioShack Corp.,* 31 F. Supp. 3d 702, 709 (E.D. Pa. 2014); ECF Doc. No. 448 at 12. The PMWA defines "wages" as the "compensation due to any employee by reason of his or her employment[.]" 43 P.S. § 333.103(d). The PMWA further provided that overtime would be "prescribed in regulations adopted by" the Pennsylvania Department of Labor. 43 P.S. § 333.104(c); *Chevalier v. Gen. Nutrition Ctrs., Inc.,* 656 Pa. 296, 305 (2019).

The Pennsylvania Department of Labor's regulations define the "regular rate" as including "all remuneration for employment paid to or on behalf of the employee[.]" 34 Pa. Code § 231.43(a); *Chevalier,* 656 Pa. at 326. The regulations further provide that overtime must also be compensated on a workweek basis "regardless of whether the employee is compensated on an hourly wage, monthly salary, piece rate or other basis." *Id.* § 234.42. The regulations also describe a number of compensation arrangements, such as payment by piece rates, or payment for two kinds

of work which mixes hourly rates and piece rates, in which the overtime must be paid at **one-and-one-half** times the piece rate or **one-and-one-half** times the separate rates for different kinds of work. *Id.* § 231.43(d).

In *Chevalier*, the Pennsylvania Supreme Court resolved whether a 0.5 multiplier or a 1.5 multiplier should be applied to the regular rate "as calculated from the total weekly wages, including both salary and commission." 656 Pa. at 309, fn. 7. While recognizing that either construction of the PMWA was *possible,* the Pennsylvania Supreme Court ultimately determined that **all overtime** calculated as to either a fixed salary, a commission, or a combination of same, had to be paid **in addition** to that pay at a rate of **1.5** times the regular rate. *Id.* at 327-329; *see also* 34 Pa. Code § 231.43(d).

> **(i)      The PMWA Standard Overtime Sub-Class satisfies the Predominance Requirement**

Here, Plaintiffs claim that Defendant violated the PMWA by failing to pay one- and one-half times the regular rate to Plaintiffs as the Standard Overtime Premium. While the weekly draw amount was calculated by multiplying the hours reported by a base hourly rate, it was in both form and function incentive-based pay:

> The base compensation earned in a calendar month shall serve as a Participant's Draw Amount. The Draw Amount in its entirety shall be offset against Gross Commissions prior to a Participant Earning any Incentive under this Plan. At no time will a Participant receive less than the Draw Amount. Should the Draw Amount, together with any other applicable Offsets, exceed the Gross Commission amount in any month, the excess shall be aggregated with the subsequent months Draw Amount and carried forward until Gross Commissions exceed all Draw Amounts and Offsets in the aggregate.

Citizens Compensation Plans, attached hereto as Exhibit A-1, at, *e.g.,* CITIZENS0000660.

*Chevalier* stands for the proposition that employers must pay overtime at 1.5 times the regular rate **in addition to any incentive-based pay.** 656 Pa. at 327-329. *See also* 43 P.S. § 333.104(c); ECF Doc. No. 448 at 12. As confirmed by the attached declarations and as set forth

above, Plaintiffs were paid Standard Overtime by paying 0.5 times the base hourly rate in addition to the Plaintiffs' draw for the first five hours of overtime reported. *See* Ex. A at ¶¶ 13-15, 19-20, 24-25; Ex. C; Ex. D; Ex. E at ¶¶ 4-5; Ex. F at ¶¶ 4-5; Ex. G at ¶¶ 4-5. As determined by the Court, there is no factual dispute that all Standard Overtime Sub-Class members were paid Standard Overtime in the same manner. *See* ECF Doc. No. 505, 500, 503. Accordingly, whether Defendant's method of calculating Standard Overtime complies with the PMWA is the central and predominating question as to this claim, and answering this question once, as to the entire class, will determine the lawfulness of this practice, as applied to the class, in a single stroke. Such a claim readily satisfies the Rule 23(b)(3) predominance requirement. *See Hargrove,* No. 22-2040, 2023 U.S. App. LEXIS 14553, at *1; *Moore*, at 611-12.

Defendant's sworn responses to the Special Interrogatory, as well as the examples set forth above for the Named Plaintiffs and for putative class members, as well as the Notices the Parties provided to the Court, demonstrate that the Defendant acted in a uniform fashion and subjected all class members to a materially identical Standard Overtime formula – a formula which Plaintiffs challenge class-wide. *See* Ex. C; Ex. D; Ex. A at ¶¶ 14-35; ECF Doc. No. 500, 503, and 505. The (un)lawfulness of this practice can therefore be proven with common evidence, and the calculation of damages is similarly mechanical and can be performed from common evidence -- Defendant's electronic pay records. *See Hargrove,* 2023 U.S. App. LEXIS 14553 at *8 (predominance satisfied when damages can be proven with common evidence).

"Common corporate policies" challenged as unlawful "**carry great weight for certification purposes, and predominance is rarely defeated in cases where such uniform policies exist.**" *Hargrove*, No. 22-2040, 2023 U.S. App. LEXIS 14553, at *7 (emphasis added). Accordingly, the Court should hold that the common question as to the lawfulness under the

PMWA of Defendant's use of a 0.5 multiplier for calculating Standard Overtime beyond the draw amount predominates over any individual issues, and therefore, the predominance requirement of Rule 23(b)(3) is met with respect to the PMWA Standard Overtime Regular Rate Claim asserted by the Named Plaintiffs and the PMWA Standard Overtime Sub-Class.

### (ii)   The PMWA Commission Overtime Sub-Class satisfies the Predominance Requirement.

There is no dispute that Defendant uses the following calculation to calculate Commission Overtime for Named Plaintiffs and the Commission Overtime Sub-Class:

Step 1: $2000 in commissions for the earnings period divided by 45 hours worked in the earnings period = $44.44.

Step 2: $44.44 divided by 2 = $22.22 […]

Step 3: $22.22 times 5 hours of overtime worked = $111.11.

ECF Doc. No. 500 at 4-5.

Step 2 of Defendant's calculation makes clear that it is dividing the commission-adjustment to the regular rate by 2 instead of multiplying it by 1.5—i.e., **Defendant is paying half-time and uses a 0.5 multiplier**. *Chevalier* concerned whether a 0.5 multiplier or a 1.5 multiplier had to be applied to the regular rate "calculated from the total weekly wages, **including both salary and commissions**." 656 Pa. at 302, fn. 7 (emphasis added). *Chevalier* determined that the 1.5 multiplier had to be used, such that the employer in that case had to pay the following total compensation: (total weekly wages) + (1.5 × regular rate × number of overtime hours). *Id.* at 318, 329. That same rule, applied here, **required Defendant to multiply the $44.44 at Step 2 by 1.5, not divide it by 2**. In other words, Plaintiffs contend that Defendant's method of calculating Commission Overtime violates the PMWA because it only paid commission overtime at 0.5 times the regular rate, not 1.5 times.

To the extent that Defendant intends to argue that the PMWA did not require **<u>any</u>** overtime be paid for commissions, such is foreclosed by the clear and unequivocal case showing commission payments are indisputably included as part of the regular rate under the PMWA. *See, e.g., Chevalier,* 656 Pa. at 299 (describing weekly wages of plaintiffs used to calculate the regular rate as including salary **<u>plus commissions</u>**); *Breig v. Covanta Holding Corp.,* No. 21-865, 2022 U.S. Dist. LEXIS 49306, at *9 (E.D. Pa. Mar. 21, 2022) (overtime must be paid on incentive bonuses under PMWA); *Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 943-944 (W.D. Pa. 2011) (commissions payment are factored into the regular rate of pay under the PMWA and must be paid at 1.5 times the regular rate); *Chevalier v. Gen. Nutrition Ctrs., Inc*., 2016 Pa. Dist. & Cnty. Dec. LEXIS 300, *8 (Ct. Com. Pl. Allegheny County, May 11, 2016) ("GNC may **<u>not use the fluctuating workweek method of calculating overtime as to commissions</u>**").

Moreover, in its May 2022 Notice of Final-Form Rulemaking contained in the Pennsylvania Bulletin, the Pennsylvania Department of Labor explained that its final amendment of 34 Pa. Code § 234.43(g) is meant to clarify that commissions and bonuses are (a) part of the regular rate; and (b) **"treated no differently for overtime-eligible salaried employees than for hourly employees."** 52 Pa. B. 2701, 2705 (May 7, 2022) (emphasis added). Accordingly, Commission Overtime pay owed under the PMWA must be calculated by using a 1.5 multiplier. *See Chevalier,* 656 Pa. at 329 ("we conclude that the rules of statutory construction favor Plaintiffs' interpretation **requiring application of the 1.5 Multiplier**") (emphasis added); *Cerutti v. Frito Lay, Inc.,* 777 F. Supp. 2d 920 (W.D. Pa. 2011); *Foster v. Kraft Foods Global, Inc.,* 285 F.R.D. 343 (W.D. Pa. 2012), *Verderame v. RadioShack Corp.,* 31 F. Supp. 3d 702 (E.D. Pa. 2014).

Here, because Defendant used a 0.5 multiplier, its Commission Overtime practice violates the PMWA. Still, as noted above, the Court need not, and therefore should not, resolve the

lawfulness of this practice at the class certification stage. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 133 S.Ct. 1184, 1194-95 (2013).  Rather, because the lawfulness of the practice is the core predominating question which, once answered, will decide Defendant's liability to the Commission Overtime Sub-Class at a single stroke, the Court should find this sub-class also easily satisfies the Rule 23(b)(3) predominance requirement. *See, e.g., Hargrove,* No. 22-2040, 2023 U.S. App. LEXIS 14553, at *1; *Moore,* at 611-12.

### 2. The Class Action Method is Superior to Alternative Available Methods of Adjudication as to both Sub-Classes

The final prerequisite for class certification is that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The Rule identifies the following factors pertinent to such a finding: (1) the interest of individual class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any previously commenced litigation concerning the controversy; (3) the desirability or undesirability of concentrating the litigation of the claims in a single forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*. Here, both sub-classes satisfy the superiority prerequisite.

While the amount each individual class member stands to earn is not insubstantial, that amount still pales in comparison with the costs of litigation, especially given the extent to which each class member would have to duplicate the discovery and trial costs that will here be consolidated. Moreover, any individual who wishes to opt out of this action may do so. The second factor supports class certification, as there is no other significant commenced litigation asserted against Citizens alleging its overtime policies violate the PMWA. Importantly, the third factor strongly favors class action superiority, given that consolidating the claims in a single forum promises considerable efficiencies. Damages can be uniformly determined using the Defendant's

payroll data, and the central issue — whether Defendant's overtime formula violates the PMWA — is common to all class members and most effectively resolved in a single proceeding at a single time. Absent class action treatment, this critical question would fragment into potentially hundreds of separate lawsuits, filed in both state and federal courts throughout Pennsylvania, creating a risk of an unwieldy and inconsistent patchwork of decisions across various courts.

Finally, the Court looks to the difficulties likely to be encountered in managing the class action. Again, because of the common nature of the proof and lack of factual disputes as to how Defendant calculated overtime, the management of this class action at trial is straightforward. Because the fundamental question here is the lawfulness of Defendant's overtime calculation, the core liability evidence will involve the evidence of the policy and how it worked—evidence which is not in fact disputed. Compared to the unmanageability of individual actions, this factor clearly demonstrates the superiority of class certification as to these sub-classes and claims.

Accordingly, the Court should find that a class action is superior to other procedural mechanisms for both the Standard Overtime Sub-Class and the Commission Overtime Sub-Class, and should find that Plaintiffs have also satisfied the superiority requirement for certification of these sub-classes under Rule 23(b)(3).

E.  **THE PROPOSED SUB-CLASSES SATISFY EACH PREREQUISITE FOR CERTIFICATION UNDER RULE 23(B)(2)**

Named Plaintiffs also seek injunctive and declaratory relief in this matter, and an injunctive class should be certified for this relief pursuant to Rule 23(b)(2). As noted above, Rule 23(b)(2) certification is appropriate where the relief sought is injunctive or declaratory. To merit 23(b)(2) certification, the class must be sufficiently cohesive such that the injuries to be remedied are group injuries, and the class is bound together by either a preexisting or continuing legal relationship or by some significant common trait. *Barnes v. American Tobacco Co.*, 161 F.3d 127,

143, n. 18 (3d Cir. Pa. 1998). This "cohesiveness" requirement is easily met where the class members are subject to a uniform practice or policy that is being challenged as unlawful. See, e.g., *Clarke v. Lane*, 267 F.R.D. 180, 199 (E.D. Pa. 2010). While a Rule 23(b)(2) class cannot be used to recover monetary damages, courts may certify both Rule 23(b)(3) classes and Rule 23(b)(2) classes in the same action if the prerequisites for both types of classes are met. *Id.* at *38 (discussing permissibility of maintaining Rule 23(b)(2) and Rule 23(b)(3) classes in the same action).

Here, the Standard Overtime Sub-Class seeks the declaratory relief that Defendant's policy and practice of paying Standard Overtime in Pennsylvania by multiplying the regular rate by a 0.5 multiplier is unlawful under the PMWA. Likewise, the Commission Overtime Sub-Class seeks declaratory relief that Defendant's policy and practice of paying Commission Overtime in Pennsylvania by multiplying the regular rate by a 0.5 multiplier is unlawful under the PMWA. Because both sub-classes challenge uniform overtime payment methods, the sub-classes are sufficiently cohesive to warrant Rule 23(b)(2) class certification.

## II.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant the instant motion in full.

Respectfully Submitted,

*/s/ Joshua S. Boyette*
Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Tel: (856) 685-7420
Fax: (856) 685-7417

E-mail: jboyette@swartz-legal.com

E-mail: jswidler@swartz-legal.com

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**
7805 S.W. 6TH Court
Plantation, Florida 33324
Phone: (954) 472-0002
rsoloff@solofflaw.com

DATED: April 11, 2024