**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ALEX REINIG, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>CITIZENS BANK, N.A.<br><br>Defendant. | CIVIL ACTION NO: 2:15-cv-01541-CCW |

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' PMWA REGULAR RATE CLAIMS

*On behalf of the Plaintiffs:*

*/s Joshua S. Boyette*
Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS.......................................................................................... 2

III. LEGAL ARGUMENT................................................................................................. 4

    A.   STANDARD OF REVIEW ................................................................................. 4

    B.   **The Pennsylvania Minimum Wage Act requires Employers to pay overtime premiums at 1.5 times the regular rate for all compensation, including commissions.** ......................................................................................................... 4

        1)   Commissions are included in the regular rate under the PMWA ............... 4

        2)   Employers are required under the PMWA to pay additional commission-based overtime using a 1.5 multiple to the regular rate on top of and in addition to the commission. ..................................................................... 6

            a)   The trial court and intermediate appellate court in *Chevalier* specifically and separately addressed whether overtime based on commissions should be paid at the 0.5 or 1.5 multiple, and determined that that the 1.5 multiple applied.................................. 8

            b)   PADOL's Rulemaking Confirms the 1.5 Multiplier Applies to All Non-Hourly Compensation. ............................................................ 10

            c)   Even if *Chevalier* did not control the instant case, the Pennsylvania Supreme Court would find that the 1.5 multiple applies to hourly commissioned employees in the same way it applies to salaried commissioned employees. ......................................................... 12

    C.   **Citizens violated the PMWA by paying only half-time on commission overtime, rather than the required time-and-a-half.** ....................................... 15

    D.   **Citizens violated the PMWA by paying only half-time on base overtime for the first 5 reported overtime hours worked in a workweek** .................................. 17

IV. CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Breig v. Covanta Holding Corp.,* No. 21-865, 2022 U.S. Dist. LEXIS 49306, at *9 (E.D. Pa. Mar. 21, 2022) ........................................................................................................................... 5

*Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 943-944 (W.D. Pa. 2011) ................................ 5, 6

*Chevalier v. Gen. Nutrition Ctrs.,* 2017 PA Super 285-286, 407 n.22, 177 A.3d 280, 300 (Pa. Super. Ct. 2017) ........................................................................................................................ 9

*Chevalier v. Gen. Nutrition Ctrs., Inc.,* 2016 Pa. Dist. & Cnty. Dec. LEXIS 300, * 5 (Pa. Ct. Comm. Pleas, Allegheny Cty., May 22, 2016) ...................................................................... 8

*Chevalier v. Gen. Nutrition Ctrs., Inc.,* 656 Pa. 296 (2019) ............................................... 5, 7, 8, 9

*Heimbach v. Amazon.com, Inc. (In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191 (Pa. 2021) ................................................. 6

*Nw. Youth Servs. v. Commonwealth, Dep't of Pub. Welfare,* 620 Pa. 140 (2013).......................... 5

oster v. Kraft Foods Global, Inc., 285 F.R.D. 343 (W.D. Pa. 2012) ........................................... 7

*Verderame v. RadioShack Corp.,* 31 F. Supp. 3d 702 (E.D. Pa. 2014) ......................................... 6

*Wiley v. State Farm Fire & Cas. Co.,* 995 F.2d 457, 459 (3d Cir. 1993) ...................................... 4

**Statutes**

43 P.S. § 333.103(d) ...................................................................................................................... 4

43 P.S. § 333.104(c)................................................................................................................. 6, 20

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................................... 5

**Regulations**

34 Pa. Code § 231.43(a)................................................................................................................. 5

iv

**Other Authorities**

52 Pa. B. 2701, 2705 (May 7, 2022)...................................................................................... passim

## I.    <u>INTRODUCTION</u>

Defendant's motion for summary judgment raises two distinct issues under the Pennsylvania Minimum Wage Act (PMWA), both of which should be resolved in Plaintiffs' favor as a matter of law. First, Defendant violated the PMWA by paying overtime on commissions at only half-time rather than the required 1.5x regular rate. Second, Defendant unlawfully paid only half-time overtime on the first five hours of weekly overtime, which functioned as a recoverable draw against commissions, not genuine hourly pay. This Court has previously found that there are no material disputes as to **how** Defendant calculates commission overtime and base overtime.

In *Chevalier v. General Nutrition Centers, Inc.*, 656 Pa. 296 (2019), the Pennsylvania Supreme Court held that the PMWA requires employers to pay overtime premiums at 1.5 times the regular rate **in addition to and top of the non-overtime pay**, and that the regular rate must include both base compensation (in that case, salary) and incentive payments like commissions. 656 Pa. 296, 327-29 (2019). In so holding, *Chevalier* expressly rejected the use of the FLSA's fluctuating workweek method of paying overtime at only 0.5x the regular rate for non-exempt salaried employees. Id. at 322 n.25. The Pennsylvania Department of Labor & Industry ("PADOL") has further confirmed that *Chevalier's* 1.5x overtime rule applies equally to all commissioned employees, regardless of their base pay structure. 52 Pa. B. 2701, 2705 (May 7, 2022).

Thus, under clear controlling precedent from the Pennsylvania Supreme Court and persuasive guidance from the PADOL, Defendant's overtime pay practices violate the PMWA. There is no dispute that Defendant pays a commission, and then supplements that commission with an overtime premium that multiplies the overtime hours worked by half the commission-based regular rate. *Chevalier* forbids this method of paying overtime for pay structures such as salaries, commissions, piece-rates, and combinations of these. And the same rule applies to Defendant's

1

base overtime pay because, while it is initially denominated as hourly pay, the amount was offset dollar-for-dollar against commissions, was designated a "Draw Amount" and "Offset" in the compensation plan, and could be carried forward to reduce future commissions indefinitely. On such facts, the "hourly" pay was in fact a draw on and offset to Defendant's commission program and, therefore, merely another form of commission payment.

Defendant's contrary arguments defy the letter and spirit of the PMWA and would leave countless commissioned employees undercompensated. The PMWA's stringent overtime requirements cannot be circumvented by artificial distinctions that elevate form over economic substance. This Court should faithfully apply binding Pennsylvania Supreme Court precedent, as clarified by the PADOL, and reject Defendant's invitation to create an unprincipled loophole in the PMWA.

In sum, Defendant's motion should be denied in full because its commission overtime and base compensation practices violate the PMWA as a matter of law. The material facts are undisputed, and the proper interpretation and application of *Chevalier* is a pure question of law for the Court.

For the reasons provided herein and the reasons provided below, the Court should deny Defendant's motion.

## II.     <u>STATEMENT OF FACTS</u>

Plaintiffs fully incorporate by reference their Response to Defendant's Concise Statement of Facts and Concise Statement of Additional Facts ("RSOF"), filed in conjunction with this Response, but summarize and repeat key salient facts below.

On March 11, 2024, the Court ordered the Parties to submit notices setting forth the way Citizens calculate Standard and Commission Overtime for Pennsylvania MLOs using a hypothetical fact-pattern proposed by the Court. ECF Doc. No. 499. The Parties did so on March

13, 2024. ECF Doc. No. 500 and 501. After reviewing those notices, the Court concluded the notices demonstrated "there is no factual dispute as to **how** Citizens calculates overtime in either the standard or commission context." *See* RSOF at ¶¶ 10, 15.

Defendant's compensation plan provides MLOs receive a weekly non-recoverable draw on commissions calculated as an hourly rate multiplied by the hours reported, up to 45 hours per week. *See* RSOF at ¶¶ 1-2; Citizens Compensation Plan Excerpts, attached hereto as Exhibit A-1 at ECF-Page# 2-3, 5, 7-8, 10-11, 13, 15, 17, 19; Deposition of Corporate Designee Dean Mathieson, *attached hereto as* Exhibit C, at 37:04-38:21. Pursuant to the Plan, for each hour reported up to 45 hours, MLOs receive a draw payment equal to their pre-determined hourly rate. *Id.* Defendant calculates the overtime premium it pays on top of this draw payment by multiplying the hourly rate by 0.5, and multiplying this number by the number of hours worked over 40 up to 5 hours. First Report of Special Master David Cohen, ECF Doc. No. 179, attached hereto as Exhibit B, at 15, fn. 8; RSOF at ¶ 3. Under the Court's March 11 hypothetical, Defendant set forth that for an MLO with an hourly rate of $10/hour who worked 45 hours, the MLO would receive a $450 draw and an additional overtime premium of $25. *See* ECF Doc. No. 500 and 501; ECF Doc. No. 505. A review of Defendant's actual payment practices as to the Named Plaintiffs confirms Defendant uses this methodology for paying "standard overtime." RSOF at ¶¶ 4-6.

Defendant's compensation plans also pays MLOs earned commissions, allocates them on a weekly basis across the workweeks in which Defendant deems the commissions were earned, and then pays overtime based on and on top of these earned commissions ("Commission Overtime."). RSOF at ¶¶ 2, 7, 12. Defendant calculates this Commission Overtime by dividing the weekly commission allocation by the hours worked in that week to derive the Commission Regular Rate, dividing the Commission Regular Rate by 2, and the multiplying the Commission

3

Regular Rate by the number of overtime hours reported in that week. See ECF Doc. No. 498 at 4; RSOF at ¶¶ 13-14. In responding to the Court's March 11 hypothetical, Defendant set forth how commission overtime would be calculated for an MLO whose weekly commission allocation was $2000, and who reported working 45 hours, and set forth that such an MLO would receive in addition to his commission an additional overtime premium of $111.11. *See* ECF Doc. No. 500 at 4-5. RSOF at ¶ 14-15. A review of the Named Plaintiffs' pay records confirms that Defendant paid commission overtime using this methodology. Plaintiff's Statement of Additional Facts ("SOAF") at ¶¶ 1-4 (appended to the RSOF).

## III.    LEGAL ARGUMENT

### A.  STANDARD OF REVIEW

The court may only grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Federal courts sitting in diversity "are required to apply the substantive law of the state whose laws govern the action." *Wiley v. State Farm Fire & Cas. Co.,* 995 F.2d 457, 459 (3d Cir. 1993). Where a state's highest court has not ruled on particular issue before the Court, the federal court "must predict how the state's highest court would resolve these issues should it be called upon to do so." *Id.*

### B.  THE PENNSYLVANIA MINIMUM WAGE ACT REQUIRES EMPLOYERS TO PAY OVERTIME PREMIUMS AT 1.5 TIMES THE REGULAR RATE FOR ALL COMPENSATION, INCLUDING COMMISSIONS.

#### 1)    Commissions are included in the regular rate under the PMWA

The Pennsylvania Minimum Wage Act (PMWA) and its implementing regulations make clear that all compensation, including commissions, must be included in the regular rate used to calculate overtime pay. The PMWA defines "wages" broadly as "compensation due to any

employe by reason of his employment." 43 P.S. § 333.103(d). The regulations further specify that the "regular rate" must "include all remuneration for employment paid to or on behalf of the employee," subject only to a few inapplicable exceptions. 34 Pa. Code § 231.43(a); *Chevalier v. Gen. Nutrition Ctrs., Inc.,* 656 Pa. 296, 326, 220 A.3d 1038, 1056 (2019).

Thus, it is non-controversial that under the PMWA, commissions paid as remuneration for employment must be included in the "regular rate," upon which the overtime rate is calculated. The issue here—commissions paid as remuneration for Plaintiffs' work subject to a specific compensation plan and calculated based on the volume of loans Plaintiffs originate—must therefore be included in the regular rate when calculating overtime. Indeed, the case law has consistently **included** commissions in the regular rate when holding how the PMWA regular rate must be calculated. *See Chevalier,* 656 Pa. at 299 (describing weekly wages of plaintiffs used to calculate the regular rate as including salary **plus commissions**); *Breig v. Covanta Holding Corp.,* No. 21-865, 2022 U.S. Dist. LEXIS 49306, at *9 (E.D. Pa. Mar. 21, 2022) (overtime must be paid on incentive bonuses under PMWA); *Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 943-944 (W.D. Pa. 2011) (commissions payment are factored into the regular rate of pay under the PMWA and must be paid at 1.5 times the regular rate).

Moreover, the PADOL has specifically addressed this question and confirmed that 34 Pa. Code § 231.43 requires commissions be included in the regular rate for all Pennsylvania employees. 52 Pa. B. 2701, 2705 (May 7, 2022). Pennsylvania law grants significant *Chevron*-level deference to an administrative agency's regulations enacted pursuant to notice-and-comment, and to the agency's own interpretations of those regulations. *Nw. Youth Servs. v. Commonwealth, Dep't of Pub. Welfare,* 620 Pa. 140, 158 (2013). Here, affording the PADOL such deference

5

requires finding that the PMWA requires commissions be included in the regular rate of pay for purposes of calculating overtime.

Thus, to the extent Defendant seeks to rely on a passing comment in the Court's reconsideration order that "gross commissions" are not earned compensation and are therefore not included in the PMWA regular rate, the Court's prior comment was *dicta,* not central to the Court's holding, and did not consider the extensive authority described above. The PMWA's unambiguous statutory and regulatory language, as interpreted by the Pennsylvania Supreme Court, mandates that earned commissions be included in the regular rate before any overtime multiplier is applied. Citizens' argument to the contrary is unsupported and must be rejected.

**2) <u>Employers are required under the PMWA to pay additional commission-based overtime using a 1.5 multiple to the regular rate on top of and in addition to the commission.</u>**

Once the regular rate is calculated, the PMWA requires an employer to compensate employees with an overtime premium of at least 1.5 times their regular rate for each hour worked beyond 40 per workweek, and does not permit employers to use a 0.5 rate even in circumstances where such would be permissible under the FLSA. 43 P.S. § 333.104(c); *Verderame v. RadioShack Corp.,* 31 F. Supp. 3d 702, 709 (E.D. Pa. 2014); ECF Doc. No. 448 at 12. This is because the PMWA manifests Pennsylvania's "strong public policy protecting an employee's right to be adequately compensated for all hours for which they work." *Heimbach v. Amazon.com, Inc. (In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.)*, 255 A.3d 191, 200 (Pa. 2021). Specifically, the PMWA provides greater benefits and protections than its federal counterpart, the Fair Labor Standards Act. *Id.* at 201.

In *Cerutti,* Judge Conti held that for employees paid a weekly salary plus a commission, the regular rate was calculated by adding the salary and commission and then dividing by the hours

worked in the workweek, 777 F. Supp. 2d at 942-943, and then overtime must be paid at one-and-one-half times this rate for hours worked over forty in that workweek. *Id.* at 945-956. Frito Lay's overtime plan which paid only one-half times the regular pay for hours worked over forty violated the PMWA as a matter of law. *Id.* at 946. In *Foster,* Judge Bissoon followed *Cerutti* and found that an identical overtime plan also violated the PMWA. 285 F.R.D. at 347-3480. In *Verderame,* a court of the Eastern District of Pennsylvania likewise found that overtime under the PMWA could not lawfully be paid at one-half the regular rate. 31 F. Supp. at 707.

In *Chevalier,* the Pennsylvania Supreme Court identified how overtime should be calculated for Pennsylvania residents "paid a set weekly salary plus commissions." 656 Pa. at 318, and fulfilled *Cerutti, Foster,* and *Verderame*'s prediction that it would hold that overtime under the PMWA must be paid using a time-and-a-half multiplier, not a half-time multiplier. 646 Pa. at 327-328.

Defendant has argued that *Chevalier, Cerutti,* and *Verderame* only require paying commission overtime at 1.5 times the regular time where the individual earning commission is paid a salary in addition to the commission, and that in other instances paying half time is permitted. Def. Brief at 8-9.  This argument should be rejected because *Chevalier* clearly applied its rule to both the salary component <u>and</u> the commission component of the employee's pay, and held that there was no relevant distinction between the two types of pay for purposes of determining whether overtime should be calculated using a 1.5 multiple or a 0.5 multiple. 656 Pa. at 302, fn. 7.

The argument should also be rejected because *Chevalier, Cerutti,* and *Verderame* did not find that the 1.5x multiple for commissions was required **<u>because</u>** it was linked to a fixed salary, but rather because a commission payment **<u>is like</u>** a fixed salary insofar as it does not increase or

7

decrease based on the total number of hours worked. *Chevalier,* 656 Pa. at 318. A fixed salary requires a 1.5x multiple of the regular rate and payment **on top of and in addition** to the salary because holding otherwise would mean that individuals who worked very long hours would (a) get the exact same base pay as if they had worked less hours, and (b) get only a half-time premium for the overtime hours. *Chevalier* rejected the notion that employers can convert non-hourly compensation into an hourly rate to cover the "time" in "time-and-a-half." While *Chevalier*, *Cerutti*, and *Verderame* discussed this principle in the context of employees who earned weekly salaries in addition to commissions (rather than an hourly draw and commissions), the Pennsylvania Supreme Court in *Chevalier* recognized that the same rule must apply to all non-hourly compensation arrangements, specifically upholding the trial court's rejection of GNC's argument that commissions should be treated differently from fixed salaries. 656 Pa. at 302, fn. 7.

          a)       **The trial court and intermediate appellate court in *Chevalier* specifically and separately addressed whether overtime based on commissions should be paid at the 0.5 or 1.5 multiple, and determined that that the 1.5 multiple applied.**

The trial court in *Chevalier* specifically and separately addressed whether the calculation of overtime differed between the salary and commission components of the pay. As to whether "GNC's policy of paying only half-time overtime on commissions is inconsistent with the PMWA," the trial court held the following:

> The language of the PMWA and its accompanying regulations do not provide guidance as to how commissions should be treated where an employee works more than forty hours. Consequently, I look to the intention of the General Assembly as ascertained by considering the occasion and necessity for the statute, the mischief to be remedied, and the object to be attained. **The purposes that I find to be furthered through my rulings in my October 20, 2014 Opinion and Order of Court are also furthered by treating commissions in the same fashion as salary**.

*Chevalier v. Gen. Nutrition Ctrs., Inc.,* 2016 Pa. Dist. & Cnty. Dec. LEXIS 300, * 5 (Pa. Ct. Comm. Pleas, Allegheny Cty., May 22, 2016) (emphasis added).

8

Specifically, the trial court rejected GNC's arguments that the public policy concerns the court associated with the use of the FWW method with respect to the fixed salary component of the employees' wages were not implicated in the context of commissions. "[C]alculating commissions in the manner that results in increased overtime pay will reduce overtime, increase employment, and more adequately compensate employees who must work more than the standard forty-hour workweek." *Id.*

Similarly, at the intermediate appellate level, GNC explicitly raised the issue of whether *commissions* should be treated differently than salary, and the Pennsylvania Superior Court made no distinction between the different components of the GNC Plaintiffs' pay in finding that overtime had to be paid at one-and-one-half times the regular rate in addition to and on-top the already-paid compensation: "In light of our resolution of the meaning of 'regular rate' in the PMWA, we need not address GNC's arguments regarding the appropriate meaning of commissions earned by employees." *Chevalier v. Gen. Nutrition Ctrs.,* 2017 PA Super 285-286, 407 n.22, 177 A.3d 280, 300 (Pa. Super. Ct. 2017).

Accordingly, contrary to Defendant's suggestion that *Chevalier* did not address whether commission payments were subject to the same rule as fixed salaries, that question was specifically contested and resolved by both the trial court and the intermediate appellate court, and was left undisturbed by the Pennsylvania Supreme Court, which was fully cognizant the pay at issue included a salary **plus** a commission, and applied its ruling to both types of pay structures. 656 Pa. 296, 299. In so ruling, the Pennsylvania Supreme Court determined that there were no material differences between the weekly salary and commissions: The "dispute in this case does not involve the commission aspect but rather **whether the 0.5 multiplier or the 1.5 multiplier should be**

**applied to the regular rate as calculated from total weekly wages, including both salary and commissions**." *Id.* at 302, fn. 7 (emphasis added).

At various points in *Chevalier*, the Pennsylvania Supreme Court found it relevant to reiterate the plaintiffs were paid both a salary and a commission: "The determination of what constitutes 'one and one half times the regular rate,' however, is more complicated for employees who are paid pursuant to non-hourly compensation arrangements, including payment for work completed, **commissions**, or salaries." *Id.* at 300 (emphasis added). Calculating the regular rate "requires total wages (in this case, salary and **commission**) to be divided by the actual hours worked in the week to calculate the 'regular rate.' *Id.* at 311 (emphasis added). "Plaintiffs, like many Pennsylvania residents, are paid a set weekly salary plus **commissions** . . . accordingly, their "straight time" hourly rate can vary significantly week to week such that they do not have a uniform hourly rate applicable each week in the same way an hourly employee does." *Id.* at 318 (emphasis added).

Accordingly, the Court should reject Defendant's attempt to distinguish *Chevalier* from the instant case when, at every level of review, the courts in *Chevalier,* including the Pennsylvania Supreme Court, found there was no different between a commission pay structure and a salary pay structure for purposes of determining whether an employer violated the PMWA by only paying additional overtime premiums at 0.5 times the regular rate. Nothing in *Chevalier, Cerutti,* or *Verderame* supports changing the calculation of commission-based overtime based on whether the additional component of pay is calculated on an hourly or fixed basis.

### b) PADOL's Rulemaking Confirms the 1.5 Multiplier Applies to All Non-Hourly Compensation.

The Pennsylvania Department of Labor & Industry (PADOL) has interpreted its own regulations and determined that there is no distinction between the overtime calculation for salaried

and hourly employees paid a commission. 52 Pa. B. 2701, 2705 (May 7, 2022). Under Pennsylvania law, courts must give Chevron deference to an agency's legislative rules, *Harmon v. Unemployment Comp. Bd. of Review*, 652 Pa. 23, 35 (2019), *Skidmore* deference to interpretive rules and guidance documents, *id*., and *Auer* deference to an agency's interpretation of its own legislative rules. *Nw. Youth Servs. v. Commonwealth, Dep't of Pub. Welfare*, 620 Pa. 140, 158 (2013). Applying such deference here requires finding that employers must calculate commission-based overtime the same way for salaried and hourly employees.

The Pennsylvania General Assembly specifically delegated to the PADOL the authority to issue legislative rules on how overtime must be calculated under the PMWA. 43 P.S. § 333.104(c). Thus, PADOL's rules are entitled to the highest level of deference. *See Nw. Youth Servs*., 620 Pa. at 158; *Chevalier*, 656 Pa. at 305. In *Chevalier*, the Pennsylvania Supreme Court found that PADOL's failure to adopt certain federal regulations on overtime calculation was deliberate, indicating an intent to provide greater benefits than the FLSA, and rejected the 0.5 multiplier for the fluctuating workweek method in favor of a 1.5 multiplier. 656 Pa. at 329.

After *Chevalier*, PADOL engaged in notice-and-comment rulemaking, to add subsection (g) to 34 Pa. Code § 231.43, Regular Rate expressly adopting *Chevalier's* holding rejecting the 0.5 multiplier in favor of a 1.5 multiplier for non-hourly compensation. Moreover, PADOL construed *Chevalier* as applying not just to salaried employees, but to all "employees with different compensation structures that may include salaries, commissions, payment based on the worked completed or a combination of these compensation structure." 52 Pa. B. at 2703. During notice-and-comment period, the Independent Regulatory Review Commission (IRRC) noted commentators had raised the question of how *Chevalier* applies to calculating overtime on commissions and bonuses for hourly employees. 52 Pa. B. at 2705. The IRRC asked PADOL to

11

explain how its rulemaking "clarifies the regular rate in 'all cases'" and "how overtime is calculated for all remuneration for hourly employees." *Id.* In response, PADOL explained subsection (g) was being issued to "clarify that the Department intends to count all remuneration paid to salaried employees the same as remuneration given to employees who are paid by the hour, monthly, piece rate or other basis," *id.* at 2709, and that subsection (g) was meant to "eliminate any confusion to clarify that certain types of income, such as bonuses and other compensation, are treated no differently for overtime-eligible salaried employees than for hourly employees when determining overtime." *Id.* at 2705.

Thus, PADOL directly addressed the question at issue here during notice-and-comment rulemaking and determined Defendant's interpretation of *Chevalier* and the PMWA is incorrect. Accordingly, Pennsylvania-mandated deference to the PADOL's agency interpretation further establishes that the Court should reject Defendant's argument and deny Defendant's motion for summary judgment.

> c)     **Even if *Chevalier* did not control the instant case, the Pennsylvania Supreme Court would find that the 1.5 multiple applies to hourly commissioned employees in the same way it applies to salaried commissioned employees.**

Even if *Chevalier* does not directly control the outcome here, the Court must still predict how the Pennsylvania Supreme Court would rule on this issue. *Acceptance Ins. Co. v. Sloan*, 263 F.3d 278, 282 (3d Cir. 2001); *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 459 (3d Cir. 1993). The Third Circuit has directed courts to consider: (a) the Pennsylvania Supreme Court's statements in related areas; (b) decisional law of intermediate courts; (c) federal cases interpreting state law; and (d) decisions from other jurisdictions. *Acceptance Ins. Co.*, 263 F.3d at 282.

Applying these factors demonstrates that the Pennsylvania Supreme Court would extend *Chevalier*'s rule to commission-only or hourly-plus-commissioned employees. First, even if

12

*Chevalier* is not directly controlling, its reasoning is highly instructive. Commission payments, like fixed weekly salaries, do not "fit neatly in the generic overtime formula" and can cause the "straight time hourly rate [to] vary significantly week to week such that they do not have a uniform hourly rate applicable each week in the same way an hourly employee does." 656 Pa. at 317-18. These factors led the Supreme Court to find an ambiguity in the PMWA as to the proper overtime multiplier, necessitating an examination of the PMWA's language, history, and purpose. Id. at 319-20.

*Chevalier* and prior and subsequent cases of the Pennsylvania Supreme Court make clear that the PMWA provides greater protections than the FLSA. *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 8 A.3d 866, 883 (Pa. 2010); *Heimbach v. Amazon.com, Inc*., 255 A.3d 191, 201-02 (Pa. 2021). The PMWA rejects freedom of contract in favor of using police powers to "increase wages to combat the evils of unreasonable and unfair wages." *Chevalier*, 656 Pa. at 329. *Heimbach* reinforced that this broader holding was not limited to *Chevalier'*s facts, but rather represented the PMWA's "overarching purpose" to increase wages and reject federal laws that reduce overtime obligations. 255 A.3d at 201-02.

Additional factors further support this prediction. Pennsylvania intermediate courts in *Chevalier* ruled that commission-based overtime should be paid at the same 1.5 multiplier as the salary component. 2016 Pa. Dist. & Cnty. Dec. LEXIS 300, *5; 2017 PA Super 407 n.22. Federal courts predating *Chevalier* similarly predicted that the PMWA required a 1.5 multiplier for salaries and commissions. *Verderame*, 31 F. Supp. 3d at 709; *Foster*, 285 F.R.D. 343; *Cerutti*, 777 F. Supp. 2d at 943-44.

Defendant fails to address these predictive factors or to argue that the Pennsylvania Supreme Court would refuse to extend *Chevalier*. Instead, Defendant merely notes the absence of

13

case law specifically addressing commission-only or hourly-plus-commission pay. But the lack of a case directly on point does not entitle Defendant to judgment as a matter of law. *Bayada*, *Chevalier*, and *Heimbach* demonstrate that the Pennsylvania Supreme Court will readily invalidate longstanding pay practices which violate the PMWA, even if they comply with the FLSA.

Moreover, the Pennsylvania Supreme Court's reasoning in *Chevalier* strongly indicates that it would reject Defendant's attempt to rely on 29 C.F.R. §§ 778.117-120 to justify using a 0.5 multiplier for overtime compensation on commissions under Pennsylvania law. In *Chevalier*, the Court explicitly rejected the use of the fluctuating workweek method under the PMWA, finding that Pennsylvania did not adopt 29 C.F.R. § 778.114. 656 Pa. at 322. The Court emphasized that the PADOL "intentionally adopted some but not all of the calculation methods elaborated in the Federal Regulations," indicating an intent to provide greater protections than the FLSA. *Id*. at 329.

Sections 778.117-120, which Defendant relies upon (see Defendant's Brief at 3-4), are functionally equivalent to § 778.114 in that they permit employers to pay overtime on commissions at a half-time rate under federal law. Specifically, § 778.119 provides that the additional overtime compensation for commissions "must be not less than one-half of the increase in the hourly rate of pay attributable to the commission" per overtime hour worked. The absence of any similar provision in the Pennsylvania regulations, coupled with the Court's clear repudiation of the half-time multiplier in *Chevalier*, strongly suggests that the Pennsylvania Supreme Court would refuse to allow employers to pay overtime on commissions at a half-time rate under §§ 778.117-120. The fact that Defendant can only point to federal regulations to support its half-time overtime calculation method further underscores that the PMWA requires payment of one-and-one-half times the regular rate for all overtime hours worked, in addition to any commissions earned.

14

Defendant's final argument—that this Court should not extend *Chevalier* because of its prior statement that *Chevalier* was not directly applicable and that the PMWA does not require commissions to be included in the regular rate—is equally unpersuasive. The Court's prior statement was *dicta* and did not consider the extensive case law and authorities presented here. More importantly, the ultimate issue is not whether *Chevalier* is directly on point, but rather how the Pennsylvania Supreme Court would likely rule given the principles articulated in *Bayada*, *Chevalier*, and *Heimbach*. These cases unanimously recognize that the PMWA provides more robust protections than its federal counterpart and demonstrate that, if presented with this issue, the Pennsylvania Supreme Court would hold Defendant's practice of paying overtime on commissions at a 0.5x rate rather than the requisite 1.5x multiplier violates the PMWA.

In sum, all relevant factors point decisively to the Pennsylvania Supreme Court extending *Chevalier's* 1.5x multiplier rule to invalidate Defendant's half-time overtime practice. The clear thrust of binding and persuasive authority emphasizes the PMWA's broad remedial purpose and its aim to provide more robust protections than federal law. Defendant's attempts to distinguish *Chevalier* and justify reliance on FLSA regulations are unpersuasive.

Accordingly, Defendant's motion for summary judgment should be denied.

### C. CITIZENS VIOLATED THE PMWA BY PAYING ONLY HALF-TIME ON COMMISSION OVERTIME, RATHER THAN THE REQUIRED TIME-AND-A-HALF.

Defendant violates the PMWA in its calculation of commission-based overtime because it pays such overtime at a 0.5 rate instead of at the required 1.5 rate. Defendant pays commission-based overtime as follows: Once a commission is earned, Defendant allocates the commission across the workweeks in which Defendant has deemed the commission to be earned. Defendant then calculates additional commission-based overtime based on the weekly commission allocation and the weekly number of overtime hours worked. Defendant calculates this Commission

15

Overtime by dividing the weekly commission allocation by the hours worked in that week to derive the Commission Regular Rate, dividing the Commission Regular Rate by 2, and the multiplying the Commission Regular Rate by the number of overtime hours reported in that week. *See* ECF Doc. No. 498 at 4.

Defendant admits that when calculating commission overtime, it **divides** the Commission Regular Rate by 2, rather than multiplying it by 1.5, *see* ECF No. 524 at 4 (UMF No. 14) ("Step 2: $44.44 divided by 2 = $22.22"), and the Court has already concluded based on the respective notices filed by the parties that "there is no factual dispute as to how Citizens calculates overtime in either the standard or commission context." ECF Doc. No. 505. This practice squarely violates the PMWA's clear requirement that overtime be compensated at "one and one-half times the employe[e]'s regular rate," no less. 43 P.S. § 333.104(c); *see also* ECF Doc. No. 448 at 21. Defendant argues otherwise, but that argument depends on accepting that $x \div 2 = 1.5x$. It does not.

Accordingly, there is no dispute that Defendant only pays 0.5 times the regular rate when it pays commission-based overtime and fails to pay all commission overtime owed under *Chevalier*. Under *Chevalier, Cerutti, Verderame,* and the Pennsylvania DOL's interpretation of its own regulations, the use of this 0.5 multiplier violates the PMWA. Indeed, in a moment of inadvertent disclosure, Defendant admits that it based its calculations of commission overtime on the applicable FLSA regulations, not the PMWA's **higher requirement,** and if the Court were to find that *Chevalier, Cerutti,* and *Verderame* apply a higher standard to the PMWA, this would upend their settled pay practices. Def. Brief at 9.

The Court should take this concession for what it is—a concession that Defendant does not pay commission overtime at 1.5 times the regular rate. Because the PMWA requires Defendant to

16

do so, Defendant's commission overtime pay practices violate Pennsylvania law, and Defendant is not entitled to summary judgment as to this claim.

**D. CITIZENS VIOLATED THE PMWA BY PAYING ONLY HALF-TIME ON BASE OVERTIME FOR THE FIRST 5 REPORTED OVERTIME HOURS WORKED IN A WEEK**

Defendant's compensation plan also provides MLOs receive a weekly non-recoverable draw on commissions. *See* ECF Doc. No. 498 at 2-3. Since 2012, the draw has been variable instead of fixed, and calculated by multiplying the number of hours the MLOs report by a pre-determined hourly rate, which for Plaintiffs was $11.50 per hour.

While the weekly draw amount was calculated by multiplying the hours reported by a base hourly rate, it was in both form and function a draw on commissions:

> The base compensation earned in a calendar month shall serve as a Participant's Draw Amount. The Draw Amount in its entirety shall be offset against Gross Commissions prior to a Participant Earning any Incentive under this Plan. At no time will a Participant receive less than the Draw Amount. Should the Draw Amount, together with any other applicable Offsets, exceed the Gross Commission amount in any month, the excess shall be aggregated with the subsequent months Draw Amount and carried forward until Gross Commissions exceed all Draw Amounts and Offsets in the aggregate.

Ex. A-1, at, ECF Page # 13, at CITIZENS0000660.

The compensation plan further defines the "Draw Amount" as:

> Base compensation amounts, **whether provided as salary or hourly earnings up to 45 hours** per week at one time the Participant's hourly rate, which are guaranteed and earned but used as an Offset against Gross Commissions in determining an earned incentive. Draw amounts may be carried over from Performance Period and may be aggregated with other Offsets or Advances where such amounts exceed any earned incentive.

Ex. A-1, at ECF Page # 14, CITIZENS0000671 (emphasis added).

Finally, it defines an Offset as: "A [sic] adjustment to Gross Commission provided under the Plan which results in the reduction of incentive calculation prior to any incentive being earned. *Id.*

17

The Pennsylvania Supreme Court's decision in *Chevalier* and subsequent regulatory guidance establish that employers must pay overtime at 1.5 times the regular rate in addition to any incentive-based pay. 656 Pa. at 327-329; see also 43 P.S. § 333.104(c); ECF Doc. No. 448 at 12. There is no factual dispute that Plaintiffs were paid Standard Overtime by paying 0.5 times the base hourly rate in addition to the Plaintiffs' draw for the first five hours of overtime reported. *See* Ex. A-1 at ECF Page # 2-3, 5, 7-8, 10-11, 13, 15, 17, 19; Ex. B (ECF Doc. No. 179) at 15, fn. 8; Ex. C at 37:04-38:21, Ex. D (ECF Doc. No. 503) at 1-2. Accordingly, the only question is whether the draw is incentive-based pay to which the *Chevalier* rule applies, or a pure hourly wage such that the amount paid for each hour over 40 counts entirely as overtime pay, and therefore equals one-and-one-half the hourly rate.

In arguing that the draw is non-incentive-based hourly pay, Defendant argues that it is hourly pay because: (a) the sum was paid free and clear; (b) the sums tendered were never paid back to Defendant; (c) under prior rulings issued in this case, it was lawful under both the FLSA and PMWA for this amount to be used as a draw, i.e., an offset against gross commissions used to determine the amount of net commissions. In other words, Citizens argues that Plaintiffs' current PMWA regular rate claim fails for the same reason the Court held that the previous PMWA and FLSA claims failed—the draw is not an unlawful pseudo-bonus designed to evade Defendant's overtime obligations, and the draw can be used to satisfy Defendant's weekly minimum wage obligation because Defendant never recouped the draw.

But those rulings have no bearing on whether the draw is properly categorized as hourly or incentive-based pay for purposes of overtime compliance under Pennsylvania law. Because Defendant has failed to demonstrate that the draw is anything other than an advance on an incentive

payment, Defendant is not entitled to summary judgment that this pay amount should be treated as if it was simply the hourly pay of an hourly worker.

Three other factors contained in Citizens' compensation plans make clear that the Draw must be considered a component of Citizens' incentive pay, not a separate kind of compensation. First, Defendant itself recognizes that for purposes of aligning its incentive pay program and providing employees with a draw, that it is essentially irrelevant whether the Base Compensation is provided in salary form or as hourly pay up to 45 hours worked, noting that under either form, the Base Compensation works in exactly the same way. *See* Ex. A-1, at ECF Page # 14, CITIZENS0000671 (emphasis added). Second, Offsets are defined in the plan as essential elements of the incentive calculation, not a separate, distinct form of compensation. *Id.* Base Compensation, both in its salary form and in its hourly form, is designated in the plans as being one of these defined Offsets. *Id.* Finally, the Base Compensation is significantly divorced from any connection to the actual hours and workweeks being worked because it continues as a Draw and an Offset not simply in the Performance Period in which particular loans are being earned, but as a continuing negative offset on every single future incentive payment the MLO will **ever receive** when working for Defendant. Ex. A-1, at ECF Page # 13, CITIZENS0000660.

In *Chevalier,* the Pennsylvania Supreme Court held that where an employee is paid an hourly wage—i.e., a wage that increases based on a fixed hourly rate when more work is reported—the calculation of overtime is straightforward, and "merely requires application of the following simple formula: 1.5 x hourly rate x number of hours over forty." 646 Pa. at 317. Contrasted to this are "compensation structures [which] differ based upon the relevant work performed, and may involve, *inter alia,* salaries, commissions, payment based on the work completed, or a combination these compensation arrangements." *Id.* "These compensation

19

arrangements do not always easily convert to the hourly structure of the generic overtime formula."

*Id.*

Citizens' two-step process of paying a recoverable draw up to 45 hours and then only half-time premiums for overtime hours worked above 45 hours violates the PMWA's mandate that "not less than one and one-half times the employe[e]'s regular rate" be paid for hours worked over 40. 43 P.S. § 333.104(c). The regular rate must be based on an employee's actual hourly rate, not an artificial "draw" rate later reconciled against a commission. 34 Pa. Code § 231.43(d)(3). Defendant is no more permitted to allocate some of this draw to its overtime obligation than it would be permitted to allocate some of a salary to the overtime obligation. Rather, the overtime premium must be paid on top of and in addition to any incentive-based pay. Accordingly, the Court should deny Defendant's motion for summary judgment as to its standard overtime practices as well.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for summary judgment.

Respectfully Submitted,

*/s/ Joshua S. Boyette*
Joshua S. Boyette, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Tel: (856) 685-7420
Fax: (856) 685-7417

E-mail: jboyette@swartz-legal.com
E-mail: jswidler@swartz-legal.com

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**
7805 S.W. 6TH Court
Plantation, Florida 33324

20

Phone: (954) 472-0002
robert@solofflaw.com

DATED: May 11, 2024

21